## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVIS MULLINS, individually and on behalf of all others similarly situated. | Civil Case No.: |
| | **FIRST AMENDED CLASS ACTION COMPLAINT FOR FRAUD, RACKETEERING, CIVL CONSPIRACY, BREACH OF CONTRACT, VIOLATIONS OF THE SECURITIES LAWS**. |
| Plaintiff, | |
| -against- | |
| NOVATECH, a foreign company CYNTHIA PETION, an individual EDDY PETION, an individual RICARDO ROY, an individual JEAN MARTIN ZIZI, an individual TRAVIS BIEBERITZ, an individual NOVATECH, LTD, a foreign company NOVATECH ADVISORS, LLC a Florida Corporation NOVA PAY, LLC, a Florida Corporation NOVATRADING OÜ, an Estonia Corporation SMART BIT INC., a Florida Corporation DEBORAH BRASIL, an individual FRANTZ CICERON, an individual CICERON FRANTZ & ASSOCIATES INC., a New York Corporation PAUL J DeRENZO, an individual JOHN GAROFANO, an individual BOB ST. LOUIS, and individual JAMES CORBETT, and individual JOHN DOE 1-500, (are individuals at this time unknown to the Plaintiff). | **JURY TRIAL DEMANDED** |
| Defendants | |

PRELIMINARY STATEMENT

Plaintiff Avis Mullins ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by Plaintiff's undersigned attorneys, the Law Offices of Morris Legal, LLC

for Plaintiff's complaint against Defendants (defined below), alleges the following based upon

1

personal knowledge and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls, zoom calls and public announcements made by the defendants, published by and regarding NOVATECHFX ("NOVATECH" or the "Company"), and other information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Plaintiff brings this Complaint for fraud, civil conspiracy to commit fraud, civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1964(c)) ("Federal RICO"); civil violations of the New York Racketeer Influenced and Corrupt Organizations Act (NYS Article 460) ("New Civil York RICO"); , Breach of Contract, Breach of Fiduciary duty against Defendants Cynthia Petion, Eddy Petion ("Petions"), Ricardo Roy,  ("Roy"), Travis Bieberitz, Deborah Brasil, Novatechfx ("Novatech"), Martin Zizi ("ZIZI"), Frantz Ciceron ("Ciceron"), Ciceron Frantz & Associates ("CFA"), Bob Saint Louis ("Saint Louis"), Nova Pay, LLC, Nova Trading OU, Novatech Advisors, LLC, Smart Bit, Inc., Novatech, LTD, Paul J. DeRenzo and John Does 1-500.

## **NATURE OF THE ACTION**

1. This is an action alleging fraud, civil conspiracy to commit fraud, racketeering, breach of contract, breach of fiduciary duty, violations of the federal securities laws, the states of New York, California, Wisconsin and Washington on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired investment services from the Defendants between January 2019 and through January 2024, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the Racketeering Acts, state, and federal securities laws and to pursue remedies

under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

3. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiff and the Defendants.

4. This Court has jurisdiction over Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367. The claims asserted herein arise also under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district.

6. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts his affairs in this District given each defendant's participation in the NOVATECHFX Enterprise, as alleged above.

7. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3) or the alien-venue rule as codified in Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the subsequent damages took place in this Judicial District.

## THE PARTIES

8. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including

but not limited to, the United States mail, interstate telephone communications, and the Internet to facilitate the fraud.

9.  Plaintiff, Avis Mullins, is a citizen of the United States, a resident of New York City, and an investor of Novatechfx.

10. Defendant Cynthia Petion is a United States Citizen with a last known address in West Palm Beach Florida, at all times relevant, she is the co-founder and Chief Executive Officer of Novatechfx and owner of the company.

11. Defendant Eddy Petion is the husband of Cynthia Petion. Eddy Petion is a United States Citizen with a last known address in West Palm Beach, Florida. At all times relevant, Defendant was the co-founder and Chief Operation Officer of NovatechFx, and co-owner of the company.

12. Defendant Novatech, LTD, is a foreign corporation duly registered in Saint-Vincent and the Grenadines, and all times relevant operate a website (www.Novatech.com) which serves as a vehicle for the fraud.

13. Defendant Novatechfx, is a subsidiary of Novatech, LTD, and through its website purported to sale securities to the public.

14. Defendant Ricardo Roy, is a United States Citizen with a last known address in Miami, Florida. At all times relevant, Defendant served as the technology officer for Novatech in charge of the fraudulent enterprise.

15. Defendant Frantz Ciceron is a United States citizen residing in Brooklyn, New York and he is the chief executive officer of Ciceron Frantz and associates, Inc. At all times relevant to this action, Defendant serves as an Senior Director for Novatech raising millions of dollars from local investors.

16.  Defendant Jean Martin Zizi is a United States Citizen residing in Atlanta, Georgia. At all times relevant to this action, this Defendant served as a Senior Director for Novatech, LTD,

and advisor to Cynthia Petion. This Defendant raised millions of dollars from investors in the United States on behalf of the Novatechfx Criminal enterprise.

17. Defendant, Frantz Ciceron & Associates, Inc, is a New York Company located in Brooklyn, New York, and all times relevant to this action, Defendant served as a front to raise money from local investors on behalf of Novatech, LTD.

18. Defendants 1 to 500 are unknown co-conspirators who participated in the fraud, knowing this was a fraud, and whose assistance resulted in the loss of $2.3 billion dollars.

19. Novatech Advisors, LLC is a Florida Corporation, control and operated by Defendants Cynthia and Eddy Petion with offices in Boca Raton, Florida.

20. Nova Pay, LLC is a Florida Corporation, controlled, managed and operated by Defendants Cynthia Petion, Ricardo Roy and Eddy Petion with offices in Boca Raton.

21. Defendant, NovaTrading OÜ is an Estonian company with a principal place of business at Vana-Veerenni 4, 10135 Tallinn, Estonia. The company is owned and operated by Cynthia Petion and Eddy Petion.

22. Defendant Travis Bieberitz is a United States citizen residing in Nashville, Tennessee. At all times relevant Defendant was a distributor for Novatechfx, and a serial promoter of Ponzi Scheme.

23. Each of the Individual Defendants:

   (a) Directly participated in the management of Novatechfx and was directly involved in the day-to-day operations of the Company at the highest levels;
   (b) was privy to confidential proprietary information concerning the Company and its business and operations;
   (c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating false and misleading statements and information alleged herein;
   (d) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;
   (e) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or
   (f) approved or ratified these statements in violation of the federal securities laws.
   (g) Knew this was a fraud and intentionally participated in it.
   (h) Knew that this was a Ponzi Scheme, and that the money paid to investors were not from investment in crypto currency, but money from new investors.

(i) Knew that neither Cynthia Petion nor Eddy Petion had a license from any relevant authority to sale securities.

24. The Companies and the Individual Defendants are referred to herein, collectively, as the "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

A.  <u>Background Information</u>

25.  At all relevant times, Nova Tech Ltd. a/k/a NovaTech, is and was a business registered in Saint-Vincent and the Grenadines with a principal place of business at Griffith Corporate Centre, Suite 305, Beachmont, Kingstown, St. Vincent and the Grenadines.

26. At all relevant times, NovaTech Advisors, LLC is and was a Florida limited liability company with a principal place of business at 1825 Northwest Corporate Boulevard, #110, Boca Raton, Florida 33431.

27.  At all relevant times, Cynthia Petion and Eddy Petion are and were managers of NovaTech Advisors, LLC.

28. At all relevant times, NovaPay, LLC is and was a Florida limited liability company with a principal place of business at 1825 Northwest Corporate Boulevard, #110, Boca Raton, Florida 33431.

29. At all relevant times, Cynthia Petion and Eddy Petion are and were managers of NovaPay, LLC.

30. At all relevant times, NovaTrading OÜ is and was an Estonian company with a principal place of business at Vana-Veerenni 4, 10135 Tallinn, Estonia. At all relevant times, Cynthia Petion, Eddy Petion and Ricardo Roy were  officers of NovaTrading OÜ.

31. Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC, and NovaTrading OÜ (collectively, NovaTech) operated the website www.novatechfx.com.

32. At all relevant times, Cynthia Petion is and was NovaTech's co-founder and chief

executive officer. According to NovaTech, Cynthia Petion "is responsible for creating, planning, implementing and integrating the strategic direction of the organization, managing and implementing the Company's research and development of strategies, and overseeing the company's overall operations."

33. At all relevant times, Eddy Petion is and was NovaTech's co-founder and chief operating officer. According to NovaTech, Eddy Petion "oversees daily operations and trading for client accounts."

34. At all relevant times, Cynthia Petion and Eddy Petion controlled and induced or provided substantial assistance to NovaTech.

35. Beginning at least as early as 2019, NovaTech offered and sold securities in the form of investment contracts in the United States through general solicitations on its website. NovaTech referred to these investment contracts as "Packages."

36. NovaTech held itself out as a crypto asset and forex trading platform. The purported purpose of the securities offerings was for NovaTech to use investor funds to engage in crypto asset and forex trading, which in turn would generate returns for investors who purchased Packages.

37. NovaTech claimed to execute this trading activity using its percentage allocation management module ("PAMM") accounts. According to NovaTech, investors could invest their funds in NovaTech's master trading accounts, which NovaTech would then pool with other investors' funds to be managed and traded by NovaTech's "experienced traders and bots."

38. NovaTech specifically targeted investors like Plaintiff with little to no experience in trading crypto assets and forex, telling investors and prospective investors that NovaTech's "fully automated" investment products allow investors to "earn without having to trade" and that "no experience is needed."

39. The Packages were publicly available to investors of every state in the United States via NovaTech's website: www.novatechfx.com.

40. In addition to its purported trading activities, NovaTech claimed to generate additional revenue through the operation of Bitcoin ATMs by an affiliated entity, Smart Bit, Inc. NovaTech told investors that the profits from its Bitcoin ATM business would be included in the distributions it made to investors who had purchased Packages.

41. After investors created their accounts on the NovaTech website, investors could log into their account using their username and password to monitor their purported balance and returns, deposit funds, and request withdrawals.

42. NovaTech facilitated deposits and withdrawals using crypto assets, including Tether (USDT), Bitcoin (BTC), Ether (ETH), and Litecoin (LTC).

43. NovaTech did not provide financial statements to investors or potential investors instead NovaTech provided a simple line chart showing NovaTech's purported weekly profits and losses over time and a bar graph showing NovaTech's purported monthly profits over time. According to the charts, NovaTech averaged nearly 3% returns for investors per week and had never incurred a weekly loss.

44. As part of its solicitation efforts, NovaTech used a multi-level marketing scheme that would reward investors for inducing others to send money to NovaTech. According to this program, investors would be paid a referral bonus based on the amount of funds deposited by the investors that they recruited. Investors would also be paid additional referral bonuses when the investors that they recruited, in turn, recruited new investors.

45. Investors seeking to take advantage of NovaTech's referral program created and posted videos to YouTube, Facebook, Instagram, Tik Tok and posted content on other social media websites to recruit others to invest in NovaTech. Defendants Martin Zizi, Frantz Ciceron Bob

Saint Louis, John Garofano, posted several videos and other statements supporting and promoting the Novatech Ponzi Scheme.

46. In fact, NovaTech was luring investors into what is known as a High Yield Investment Program ("HYIP"). HYIPs are unregistered investments typically run by unlicensed individuals and are often frauds. The hallmark of a HYIP scam is the promise of high returns on an annual (or even monthly, weekly, or daily) basis at little or no risk to the investor. Another key element of most HYIPs is a referral program, in which the HYIP offers referral commissions or bonuses to investors to recruit new investors. This usually leads to investors sharing information about the HYIP with their friends and family and promoting HYIPs on social media.

47. The Packages offered by NovaTech, Cynthia Petion, and Eddy Petion were securities that were neither qualified nor exempt from the qualification requirement under the United States Securities Act, California Securities Act, Wisconsin Securities Act, New York Securities Act, and Washington State Securities Act. None of these jurisdiction ever issued a license, permit and or authorization to any of the Defendants to sell these securities.

48. In connection with the offer or sale of these securities, NovaTech, Cynthia Petion, Ricardo Roy, Eddy Petion, Dr. Jean Martin Zizi, Frantz Ciceron, Ciceron and Associates, Bob Saint Louis, NovaPay, Deborah Brazil and John Doe 1-500 made, or caused to be made, untrue statements of material fact and material omissions to investors and potential investors, including but not limited to the following:

(a) Defendants falsely representing that Novatech is registered hedge fund in the United States;

(b) falsely representing that NovaTech is a registered investment adviser;

(c) falsely representing that NovaTech is a registered broker;

(d) the Defendants failed to disclose that the offer or sale of NovaTech's securities were not qualified in anywhere in the United States.

(e) The Defendants, failed to provide any qualifications to substantiate claims that investors' funds are managed and traded by experienced traders.

(f) The Defendants failed to disclose that in March 2011, Cynthia Petion and Eddy Petion filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York.

(g) The Defendants failed to disclose that in August 2019, a debt buyer sued Cynthia Petion in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Civil Division, for breach of contract and unjust enrichment, alleging that Cynthia Petionfailed and/or refused to repay a loan.

(h) The Defendants failed to disclose that in July 2018, a mortgage lender sued Eddy Petion and Cynthia Petion in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Civil Division, in an action to foreclose a defaulted mortgage on residential real property held by Eddy Petion and Cynthia Petion.

(i) The Defendants failed to disclose that on August 9, 2022, NovatechFX received a securities fraud warning from the Central Bank of Russia.

(j) The Defendants failed to disclose that on October 11, 2022, British Columbia Securities Commission warned against NovatechFX as a Ponzi Scheme.

(k) The Defendants failed to disclose that on November 27, 2022 Novatechfx received a Cease and Desist Letter from California Department of Financial Protection & Innovation and cited the company and its officers for fraud.

49. On or about October 14, 2022 Novatechfx, Cynthia Petion and Eddy Petion received its second securities fraud warning from Canada. Again, Defendants failed to disclose the fraud securities warning to its investors.

50. On December 15, 2022 Ontario Securities Commission issued a fraud warning letter against NovatechFx and the officers of Novatechfx.

51. On December 13, 2022 Sasktchewan's financial and consumer affairs Authority issued a securities fraud notice against Cynthia Petion, Eddy Petion and Novatechfx.

52. On February 3, 2023 Alberta Securities Commission issued a public notice warning the public against Novatechfx as a Ponzi Scheme.

### VIOLATIONS OF ANTI-FRAUD PROVISION
### OF WASHINGTON STATE SECURITIES LAW

53. On October 27, 2023, the Securities Division of the State of Washington entered a Summary Order to Cease and Desist, a Statement of Charges, Notice of Intent to Impose a Fine and to Charge Costs against NovaTech Ltd., Cynthia Petion, and Eddie Petion.

54.  The Securities Division alleged that, beginning no later than September of 2019, and continuing through the present, Cynthia Petion, Eddie Petion, and NovaTech Ltd have been offering and selling unregistered securities in the form of percentage PAMMs.

55.  During this time, at least three Washington State residents (member of the class) purchased these securities and were unable to withdraw their investments from NovaTech Ltd.

56. The Securities Division alleged that the Defendants sold unregistered securities and violated the anti-fraud provision of the Securities Act of Washington.

57. The Securities Division ordered the Defendants to cease and desist from violating the Securities Act of Washington. The Securities Division gave notice of its intent to collect fines and charge costs.

58. Despite these warnings, the Defendants continued to offer PAMM account services to members of the class via its website, and refuse to cease and desist from offering these securities in violations of Washington Securities Act.

## VIOLATION OF WISCONSIN UNIFORM SECURITIES LAW

59. Paul J. DeRenzo ("DeRenzo") is an adult male resident of Pennsylvania with a last known address of 1634 Hawthorne Street, Pittsburgh, Pennsylvania 15201.

60. None of the above Respondents have ever been registered to offer or sell securities with the Division, Securities and Exchange Commission ("SEC"), or the Financial Regulatory Authority ("FINRA").

61. On or about November 11, 2022, DeRenzo posted an advertisement on the Craigslist/WI/services/financial website targeting residents of Milwaukee, Wisconsin. The heading stated: "We Trade For You-Get Paid Every Week." The body of the posting stated: "Let the professionals trade for you. They have a remarkable track record. You make steady profits that you can withdraw or let them compound. You have access to your funds the entire time. Completely passive income. It's free to join and you can get started with very low amounts. Get paid each week. Returns have averaged over 3% per week. Completely passive income, just takes a few minutes per week and you don't need any special knowledge. It's a very simple program. Email for more information."

62. Wisconsin Resident ME ("ME") is an adult male resident of Wisconsin. On or about November 16, 2022, ME emailed in response to the posting.

63. On or about November 16, 2022, ME received a telephone call from DeRenzo. DeRenzo told ME to log into a Zoom meeting that day to talk about the investment.

64. During the November 16, 2022 telephone call and Zoom meeting, DeRenzo represented to ME that Nova Tech involved earning passive income in which Nova Tech would trade cryptocurrency for ME and that Nova Tech's average weekly return for investors was almost 3% a week, and a chart displaying no losses whatsoever.

65.  DeRenzo told ME that even during the weeks when cryptocurrency lost value, Nova Tech investors still got paid because Nova Tech's traders "make money when the market is going up, down or sideways".

66.  DeRenzo told ME that Nova Tech had purportedly managed funds for investors which had purportedly earned 131 percent so far in 2022. DeRenzo said crypto went up in January, but is now down, but the Nova Tech traders always made money for investors.

67.  Regarding another chart displaying different levels of investment with Nova Tech and bonuses received by Nova Tech investors who brought other investors to Nova Tech, in response to ME's inquiry as to what the bonus would be for the person who brought ME in as a Nova Tech investor, DeRenzo said that for a $5,000 investment, the bonus would be $250 to $500. DeRenzo represented that the bonus was not taken from the money invested by the new investor to pay the referring investor.

68.  Upon information and belief, there are at least 500 Nova Tech accounts held by persons located in Wisconsin. Each Wisconsin investor invested at least $99.00 in an investment package offered by Nova Tech.

69.  Pursuant to Wis. Stat. § 551.102(28)(d)(1), an investment contract security includes an investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor.

70.  Pursuant to Wis. Stat. § 551.501(2), it is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71.  The investment packages offered by the Defendants are investment contract securities pursuant to Wis. Stat. § 551.102(28)(d)(1), because the Nova Tech investors' funds were to be

managed by third party traders to generate profits trading cryptocurrency and forex for the investors without any active involvement by the investors.

72. Nova Tech, Eddie Petion, and Cynthia Petion and Paul J. DeRenzo violated Wis. Stat. 551.501(2) when they offered securities in Wisconsin and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the Petions' bankruptcy and numerous civil suits, the securities fraud notices issued concerning Nova Tech by the Central Bank of Russia and the British Columbia Securities Commission, the California Desist and Refrain Order, and the fact that Nova Tech, Eddie Petion, and Cynthia Petion were not registered to offer or sell securities in Wisconsin.

73. Novatech, Eddie Petion, Cynthia Petion and Paul J. DeRenzo violated Wis. Stat. 551.501(2) when they offered securities in Wisconsin and made misrepresentations of material fact, including but not limited to the representations that NovaTech was registered as a hedge fund, broker-dealer, and investment advisor when it had never been registered in any of those capacities.

## VIOLATION OF CALIFORNIA ANTI-FRAUD SECURITIES LAW

74.  Beginning at least as early as 2021, NovaTech offered and sold securities in the form of investment contracts in California through general solicitations on its website. NovaTech referred to these investment contracts as "Packages."

75. NovaTech held itself out as a crypto asset and forex trading platform. The purported purpose of the securities offerings was for NovaTech to use investor funds to engage in crypto asset and forex trading, which in turn would generate returns for investors who purchased Packages.

76. NovaTech claimed to execute this trading activity using its PAMM accounts. According to NovaTech, investors could invest their funds in NovaTech's master trading accounts, which NovaTech would then pool with other investors' funds to be managed and traded by NovaTech's "experienced traders and bots."

77. NovaTech specifically targeted investors with little to no experience in trading crypto assets and forex, telling investors and prospective investors that NovaTech's "fully automated" investment products allow investors to "earn without having to trade" and that "no experience is needed."

78. The Packages were publicly available to investors in California via NovaTech's website: www.novatechfx.com.

79. In addition to its purported trading activities, NovaTech claimed to generate additional revenue through the operation of Bitcoin ATMs by an affiliated entity, Smart Bit, Inc. NovaTech told investors that the profits from its Bitcoin ATM business would be included in the distributions it made to investors who had purchased Packages.

80. After investors created their accounts on the NovaTech website, investors could log into their account using their username and password to monitor their purported balance and returns, deposit funds, and request withdrawals.

81. NovaTech facilitated deposits and withdrawals using crypto assets, including Tether (USDT), Bitcoin (BTC), Ether (ETH), and Litecoin (LTC).

82. NovaTech did not provide financial statements to investors or potential investors. Instead, NovaTech provided a simple line chart showing NovaTech's purported weekly profits and losses over time and a bar graph showing NovaTech's purported monthly profits over time. According to the charts, NovaTech averaged nearly 3% returns for investors per week and had never incurred a weekly loss.

83. As part of its solicitation efforts, NovaTech used a multi-level marketing scheme that would reward investors for inducing others to send money to NovaTech. According to this program, investors would be paid a referral bonus based on the amount of funds deposited by the investors that they recruited. Investors would also be paid additional referral bonuses when the investors that they recruited, in turn, recruited new investors.

84. Investors seeking to take advantage of NovaTech's referral program created and posted videos to YouTube and posted content on other social media websites to recruit others to invest in NovaTech.

85. In fact, NovaTech was luring investors into what is known as a HYIP. HYIPs are unregistered investments typically run by unlicensed individuals and are often frauds. The hallmark of an HYIP scam is the promise of high returns on an annual (or even monthly, weekly, or daily) basis at little or no risk to the investor. Another key element of most HYIPs is a referral program, in which the HYIP offers referral commissions or bonuses to investors to recruit new investors. This usually leads to investors sharing information about the HYIP with their friends and family and promoting HYIPs on social media.

86. The Packages offered by NovaTech, Cynthia Petion, and Eddy Petion were securities that were neither qualified nor exempt from the qualification requirement under the CSL. The Department has not issued a permit or other form of qualification authorizing NovaTech, Cynthia Petion, or Eddy Petion to sell these securities in California.

87. In connection with the offer or sale of these securities, NovaTech, Cynthia Petion, and Eddy Petion made, or caused to be made, untrue statements of material fact and material omissions to investors and potential investors, including but not limited to the following:

   a. falsely representing that NovaTech is a registered hedge fund in the United States;

   b. falsely representing that NovaTech is a registered investment adviser;

   c. falsely representing that NovaTech is a registered broker;

   d. failing to disclose that the offer or sale of NovaTech's securities was not qualified in
      California.

   e. failing to provide any qualifications to substantiate claims that investors' funds are managed and traded by experienced traders.

88. Based on the foregoing findings, the securities offered or sold by Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC,

NovaTrading OÜ, Cynthia Petion, and Eddy Petion were subject to qualification under the CSL and have been or are being offered or sold without first being qualified in violation of Corporations Code section 25110.

89.  Pursuant to California Corporations Code section 25532, Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC, NovaTrading OÜ, Cynthia Petion, and Eddy Petion were ordered to desist and refrain from the further offer or sale of securities in California, including but not limited to investment contracts known as Packages, unless and until the qualification requirements of the CSL have been met.

90. Nova Tech Ltd. a/k/a NovaTech, Ltd., Novatech Advisors, LLC, NovaPay, LLC

NovaTrading OÜ, Cynthia Petion, and Eddy Petion offered or sold securities in California by means of oral or written communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Corporations Code section 25401.

91. Pursuant to Corporations Code section 25532, Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC, NovaTrading OÜ, Cynthia Petion, and Eddy Petion were ordered to desist and refrain from offering or selling or buying or offering to buy any security in California, including but not limited to investment contracts known as Packages, by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

92. Pursuant to Corporations Code section 25403, any person who controls or induces another

person to violate a provision of the Corporate Securities Law of 1968, or any person who provides substantial assistance to another person in violation of the Corporate Securities Law of 1968, shall be liable for the violations.

### *Nature of the Novatech Ponzi Scheme*

93. The Novatech Enterprise Ponzi Scheme was created as a pyramid, where those who came first and invested recruited others to invest.

94. For example, Person A invested a sum money and was told by the Defendants to recruit three people who would also invest under them as a pyramid as shown below:



95. Once these three people invested their money, Person A received 10% of the money invested. As more people signed up and became investors, the initial investors or head of the team made more money at the expenses of later investors.

96. The Plaintiff invested money in the Novatech Enterprise Ponzi Scheme upon the false representations and the coercions of the individual defendants.

97. Each investor had an online crypto account through which was designed to lead them to believe that their investment returns were growing on a daily basis, but each account depicted false earnings.

98. The collected funds were never actually invested as represented and the fraudulent scheme continued until Novatech Enterprise Ponzi Scheme collapsed at which time the investors began to realize that had been scammed.

**B.** **_False Material Representations Regarding the Novatech Enterprise Ponzi Scheme_**

99. Each Defendant falsely represented in materially identical fashion and/or conspired to willfully and knowingly assist other members of the Novatech Enterprise Ponzi Scheme to falsely represent that (1) Novatech had dedicated trading desks, computers and strategies that gave investors access to investment returns they would not otherwise have access to; (2) Novatech uses "bots and experience traders" (3) investor moneys would be invested in cryptocurrency through an automated investment trading platform; (4) potential investors would earn a 3% weekly return on their investment and would double their money within five months using the "Bots Assisted account" to conduct trading; (5) Novatech would guarantee 3% weekly return on their investments; (6) actual investors had earned, and were continuing to earn, at least 3% each week on their investments.

**C.** **_Material Omissions Regarding the Novatech Enterprise Ponzi Scheme_**

100. Each Defendant materially omitted in materially identical fashion and/or conspired to willfully and knowingly assist other members of the Novatech Enterprise Ponzi Scheme to materially omit, when they had a duty to disclose, that (1) that none of the investors' funds were invested as represented but instead diverted for the personal use and benefit of the defendants; (2) each investors had not earned, and were not earning, 3% each week on their investments as promised; (3) Novatech did not have bots-assisted advisor account; (4) returns that some investors received were not from returns on their investments but instead from fraudulent disbursements from investments that subsequent investors made under the pyramid style Novatech Enterprise Ponzi Scheme.

## **DEFENDANT-SPECIFIC FACTUAL ALLEGATIONS**

### A. *Defendants Jean Martin Zizi, Bob Saint Louis and Frantz Ciceron*

101. Defendant Jean Martin Zizi is a serial promoter of Ponzi Scheme, having promoted several Ponzi Schemes. He resides in Atlanta, Georgia. At all times relevant Defendant joined the Ponzi Scheme in 2019 knowing that Novatech was a Ponzi Scheme designed to defraud investors. Defendant did intentionally defraud thousands of members of the class.

102. The Defendant joined the Scheme for the sole purpose of making money defrauding members of the class.

103. At all times relevant, this Defendant held public meetings in Long Island via Zoom and in person via his organization Trinity of Success to recruit members of the Class.

104. In return for his fraudulent work, Defendant was compensated 10% of the money collected under false pretenses.

105. Defendant targeted and recruited people who are unsophisticated and new very litte about crypto currency. In recruiting these people defendant held several zoom calls, and meetings in Long Island, New Yor and other places in the City of New York many times between 2019 and 2023.

106. Defendant Bob Saint Louis is a self-titled Christian pastor, a Baptist minister who resides in Long Island, New York.

107. At all times relevant to this action, Defendant, Saint Louis and his wife Sophia Saint Louis joined the Novatech Ponzi Scheme for the sole purpose of defrauding investors. The husband-and-wife pair worked together with other Defendants to recruit investors under them.

108. In or about 2022, the Saint-Louises, became senior directors of Novatech, having recruited more than a thousand people. They joined Defendant Zizi and held several large public meetings at hotels in New York City for the purpose of recruiting and defrauding members of the class.

109.  In promoting the Novatech Ponzi Scheme these Defendants made several fraudulent statements outlines herein, knowing that those statements were false, and were made for the sole purpose of inducing members of the class to invest in the Ponzi scheme.

110. Defendant Frantz Ciceron resides in Brooklyn, New York and owns a Frantz Ciceron and Associates, Inc.

111. At all times relevant to this action, Ciceron joined the Ponzi scheme, knowing that Novatech was a Ponzi scheme designed to defraud investors who knew very little about crypto currency.

112. Defendant use his influence in the Haitian American community in Brooklyn to recruit local investors, lying to them about the investment and the source of the return they will receive.

113. Defendant joined other Defendants (Jean Martin Zizi, and Bob Saint Louis) in several zoom calls and public meetings in Brooklyn, Long Island and other places to recruit members of the class to invest. This Defendant intentionally lied to the investors about guaranteed return of 3%, the source of the investment, and that Novatech never sustained a loss.

114. The Defendant failed to tell the members of the class the truth about Novatech. In exchange for his participation in the Ponzi Scheme, the Defendant received 10% of all the money he raised from local investors.

### B. *Defendant Deborah Brazil and Roy Ricardo*

115. Defendant, Deborah Brazil resides in Miami, Florida, and serves as President of Novatech, LTD.

116.  In or about 2021, according to Florida Department of Corporations, Defendant joined Novatech knowing it was a Ponzi scheme. Since then, the Defendant has served as Cynthia Petion's advisor.

117.  Between 2022 and 2023 Defendant participated in several zoom meetings with members of the class and other in person meetings promoting the Ponzi scheme.

118.   Brazil has recruited several hundreds of people to invest in the Ponzi scheme, but for her participation members of the class would not have sustain such economic loss.

119. Defendant Ricardo Roy Sr. is the brother of Cynthia Petion. From 2019 to present, the Defendant has served as the architect of the Ponzi scheme, designing the computer system that reports the fake returns.

120. Defendant Ricardo Roy has been an integral part of the Ponzi Scheme in charge of the directors and the Senior directors of Novatech.

### C. *Defendants: Paul J. DeRenzo, John Garofano, James Gorbett, Travis Bieberitz and John Doe 1-500*

121.   Defendant Paul J. DeRenzo, is a senior director of Novatech, in charge of recruitment of members in the class in Pennsylvania.

122.   From or about 2021 Defendant has recruited many members of the class using Craig's List and other social media platforms to recruit members of the class.

123.   On or about November 2022, Defendant recruited MK, who is a resident of Wisconsin, after MK responded to an advertisement about Novatech. During that telephone conversation between Defendant and MK, Defendant consistently lied to MK about the nature of the investment; misrepresented the facts, and lied about the return on investment.

124. Defendant knew that Novatech was a Ponzi scheme and participated in the crime because the Defendant received a percentage of the money invested.

125. Defendant John Garofano joined Novatech in or about July 2021, and for the last two years, Defendant has used YouTube to promote the Ponzi Scheme. In a YouTube posted on November 10, 2022, Defendant claimed that "while every crpto platforms lost money, Novatech was up 40%".

126.   Defendant knew that statement was false, and that Novatech never invested any of the class members'money, and that the promise 3% return was not from profits but investor's money.

127. The Defendant recruited hundreds of class members to invest in the Ponzi Scheme. In exchange for his work, Defendant received a percentage of the money invested.

128.  Defendant knew that Novatech was a fraudulent company and agreed to be part of the criminal enterprise in violation of the law.

129. Defendant James Gorbett is a citizen of the United States, whose residence is unknow. At all times hereinafter mentioned, Defendant, since at least 2022 has been a senior director of Novatech.

130. From 2022 to present, this Defendant recruited hundreds of class members to invest in the Ponzi scheme. During the course of the recruitment, Defendant consistently lied to members of the class about Novatech's licenses as a seller of securities, profits, investment, and a guaranteed 3 percent Weekly.

131. This Defendant knew that Novatech was a Ponzi scheme designed to defraud investors of their money, and that none of the money collected was actually invested in crypto, and that Novatech did not and never at anytime between 2019 and present held a license to sale securities, and that Novatech had received many cease and desist letters from several jurisdiction cited Novatech as a fraud.

132. Defendants 1-500 are John Does who served as ambassadors for Novatech. Novatech maintains a list of all its ambassadors around the world and with discovery, the Plaintiff will be able to identify those ambassadors who assisted in the recruited of over a million people and the collection of over $2.3 billion dollars.

133.  The scam would not have been nearly as successful without the participation of each named Defendant and the John Does.

134. Defendant Travis Bieberitz is a serial promoter of Ponzi Scheme having promoted several other PonziScheme. Between 2019 and 2023, Defendant promoted the Novatech Ponzi Scheme by targeting and recruiting people who are unsophisticated and know very nothing about

investment in Crypto currency. The Defendant held several meetings via zoom, and in-person for the purpose of recruiting members of class. Defendant, served as a distributor for Novatech, and was involved in several other similar Ponzi Scheme like "Crypto Program" and "Amsys".

135. Bieberitz, assured prospective investors that unlike the investment that he had promoted in the past, Novatech was neither a scam nor a Ponzi Scheme, and that investors could be confident that the anonymous individuals managing Novatech would never "pull the rug" and steal investors' funds.

136. Defendant knew his statement was false, and that Novatech was a Ponzi Scheme and that none of the money collected from investors was invested, and that Defendant Cynthia Petion and Jean Martin Zizi used new investors' money to pay old investors.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

137. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased an investment package (PAMM) from the company between January 2019 and December 2023 the Class Period (the "Class"); and were financially damaged when Novatechfx refused to return the money and blocked Plaintiffs accounts.

138. Excluded from the Class are Defendants herein, the officers and directors of Novatechfx, Novatech, LTD, NovaPay, Novatech Advisors, LLC, Novatrading OU, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

139. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in similar class action lawsuit.

140. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

141. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

142. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- Whether Federal securities laws were violated by Defendants' acts as alleged herein
- Whether Defendants engaged in a pattern of Racketeering in violation of the Federal Racketeering Act, Civil RICO in New York, California, Wisconsin and Washington
- Whether Defendants violated the Securities laws of Wisconsin, California, New York and Washington.
- Whether statements made by Defendants to the investing public misrepresented material facts about the conditions of the investment, business, operations, and management of Novatech;
- Whether Defendants' public statements to the investing public during omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Individual Defendants caused Novatechfx to issue false and misleading statement to the public;
- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements during;
- whether the Defendants engaged in a Ponzi Scheme using the money of new investors to pay old investors;
- Whether or not Defendants use commerce and communication such as internet, email and other form of wire to communicate the fraudulent statements to the public; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

143. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

144. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud- on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

145. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance.

146. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## CAUSES OF ACTION AND RELIEF REQUESTED

### COUNT 1
### Conduct or Participation in a RICO Enterprise
### through a Pattern of Racketeering Activity
### under 18 U.S.C. §§ 1961(5), 1964(c)

147. Plaintiff re-alleges and incorporate by reference paragraphs 1-146. Each of the Defendants, at all times relevant, is and has been a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1096 (c).

148. At all times relevant, the Corporate Defendants collectively constitutes a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise-the Novatechfx Enterprise Ponzi Scheme – within the meaning of 18 U.S.C. §§ 1961(4) and 1096 (c).

149. The Novatechfx Enterprise Ponzi Scheme was formed on or about January 2019 and is an organization that functioned as a continuing unit.

150. The purpose of Novatechfx Enterprise Ponzi Scheme was to defraud the members of Class of billions of dollars in investments under false pretence, to illegally funnel the vast portion of the proceeds of their unlawful activity into the Defendants' personal accounts, assets, and property, to conduct financial transactions with the remaining proceeds to promote their Ponzi scheme, and to conceal their ongoing fraud from the members of the Class.

151. Each of the individual corporations listed in above are distinct persons for the purposes of 18 U.S.C. § 1962(c), and distinct from the association constituting the enterprise Ponzi Scheme. Thus, the collective group of Corporate Defendants constitute an entity distinct from each individual corporate defendant and is an "enterprise" within the meaning 18 U.S.C. § 1962(c).

152. The individual corporations were incorporated in numerous different states, had different customer and/or membership bases and ongoing businesses or organizations, and could act independently to advance their own interests.

153. The individual corporations performed different roles within the enterprise and/or used their separate legal incorporations to facilitate the racketeering activity.

154. For instance, Defendants working together and in concert utilized the corporate defendant Novatech Advisors, LLC , one of the Novatech Enterprise Ponzi Scheme members, to:

    a. Launch a crypto platform that allowed investors to invest their money in the NOVATECHFX Enterprise Ponzi Scheme;

   b. Operate a website which made several claims and promises, among them that the investors would receive a weekly profit of 3% percent on their investment;

   c. falsely claim that Novatech is a licensed hedge fund manager.

155. Similarly, Defendants working together and in concert utilized the numerous distinct corporate defendants, also NOVATECHFX Enterprise Ponzi Scheme members, to: (a) Solicit members of the public to participate in the weekly investor zoom  meetings, invest in the Novatechfx Enterprise Ponzi Scheme, and persuade their family, friends and associates to also invest in the Novatechfx Enterprise Ponzi Scheme;

156. The Defendants used the mail and interstate wire communications facilities to facilitate and execute the Novatech Enterprise Ponzi Scheme.

157. At all times relevant, the Novatechfx Enterprise Ponzi Scheme was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. §1962(c).

158. All of the Defendants, at all relevant times, were employed by or associated with the Novatechfx Enterprise Ponzi Scheme.

159. At all times relevant, beginning on or around January 2019 and continuing through the Present the Defendants knowingly and wilfully conducted or participated, directly or indirectly, in the conduct of the affairs of the Novatechfx Enterprise Ponzi Scheme and did so through a pattern of racketeering activity, i.e., mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

160. In violation of those laws, from about January 2019 through January 2024, all Defendants cooperated jointly and severally in the commission of the following acts: (a) Wilfully and knowingly devised, and intending to devise, a scheme and artifice to defraud to obtain money and property by means of false and fraudulent pretenses, that is they created and implemented the  Novatech Enterprise Ponzi Scheme to solicit investments in a cryptocurrency

exchange platform by false and fraudulent pretences and promises to current and prospective investors about, among other things, the manner in which their funds would be invested and the performance of their investments, and misappropriated investor funds for uses inconsistent with their representations to investors and for their own benefit; (b) acted with intent to defraud Plaintiffs; (c) mailed something or caused other people to mail something through the United States Postal Services or private or commercial interstate carriers for the purpose of carrying out their scheme; (d) used interstate wire communication facilities, and caused others to use interstate and foreign wire communication facilities, for the purpose of carrying out their scheme and to conceal their ongoing fraudulent activity.

161. To achieve their common goals, Defendants knowingly and wilfully concealed from the public, and Plaintiffs the unlawfulness of Defendants' conduct, which was committed at the instruction of, and through the directions of the individual Defendants: Cynthia Petion, Eddy Petion, Deborah Brasil, Ricardo Roy, Martin Zizi, Frantz Ciceron and Paul J. DeRenzo and John Doe 1-500.

162. During the period from at least January 2019 through and including January 2024, all Defendants cooperated jointly and severally in the commission of two or more of the RICO predicate acts under 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(b).

163. Such predicate acts included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957). These acts constitute a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(a).

164. The Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(b).

165. The Novatech Enterprise Ponzi Scheme was "close-ended" in that the thousands of

predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

166. The Novatech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

167. As a direct and proximate result of the Defendants' orchestration and operation of the Novatech Enterprise Ponzi Scheme, Plaintiffs have been injured in their property, causing Plaintiffs to suffer monetary losses in the amount of not less than 5 billion dollars with said damages to be proven at trial.

168. There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors would double their money within five months of investing by earning 3% weekly return on their investments using a "bots" to conduct trading, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the Novatech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

169. Pursuant to 18 U.S.C. § 1962(c), the Plaintiffs are entitled to three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

**COUNT 2**
**Acquisition and Maintenance of an Interest in and Control of**
**an Enterprise Engaged in a Pattern of Racketeering Activity**
**under 18 U.S.C. §§ 1961(5), 1964(b)**

170.  Plaintiff incorporates by reference all the prior allegations stated herein. At all relevant

times, the Corporate Defendants as listed in paragraph 83, supra,

collectively constituted an enterprise (the Novatechfx Enterprise Ponzi Scheme) as defined in

18 U.S.C. § 1961(4), engaged in and whose activities affected interstate and foreign commerce.

171.  At all relevant times, the Defendants individually were agents of, employed by or

associated with the Novatech Enterprise Ponzi Scheme and were persons within the meaning

of 18 U.S.C. § 1961(3).

172.  In committing the acts plead herein, the Defendants received income derived from a

pattern of racketeering activity.

173.  Defendants used the income or proceeds therefrom in their operation and maintenance

of Novatech Enterprise Ponzi Scheme, an enterprise which operates in and affects interstate

and foreign commerce.

174.  At various times and places detailed in this complaint and in the accompanying exhibits,

Defendants acquired and/or maintained, directly or indirectly, an interest in or control of a

RICO enterprise-in-fact composed of persons who were associated in fact and who engaged in,

and whose activities affected, interstate and foreign commerce, all in violation of 18 U.S.C. §§

1961(4), (5), (9), and 1962(b).

175.  During the period from at least January 2019 through present, all Defendants cooperated

jointly and severally in the commission of two or more of the RICO predicate acts under 18

U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(b). Such predicate acts

included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money

laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering

activities (18 U.S.C. § 1957).

176. Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(b).

177. The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

178. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in her property, causing Plaintiff to suffer monetary losses in the amount of not less than $ 2 billion dollars, with said damages to be proven at trial.

179. Pursuant to 18 U.S.C. § 1962(c), the Plaintiff is entitled to three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.


## COUNT 3
### Use of Income Derived from a Pattern of Racketeering Activity in the Operation of an Enterprise Engaged in Activities Which Affect Interstate or Foreign Commerce under 18 U.S.C. §§ 1961(5), 1964(a)

180. Plaintiff incorporates by reference all the allegations stated herein. In committing the acts plead herein, the Defendants received income derived from a pattern of racketeering activity.

181. Such predicate acts included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

182. At all times relevant hereto, all Defendants agreed to and did use income or proceeds received from a pattern of racketeering activity to form, control, establish, and operate the Novatechfx Enterprise Ponzi scheme, which was formed for the purpose of defrauding Plaintiffs, and which was engaged in and affected interstate and foreign commerce.

183. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in their property, causing Plaintiffs to suffer monetary losses in the amount of not less than $ 2 billion with said damages to be proven at trial.

184. Pursuant to 18 U.S.C. § 1962(c), the Plaintiffs are entitled to three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

**COUNT 4**
**Conspiracy to Engage in a Pattern of Racketeering Activity**
**under 18 U.S.C. §§ 1961(5), 1964(d)**

185. Plaintiff incorporates by reference all the allegations stated herein. Upon information and belief, the Defendants knew that they were engaging in conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.

186. At all times relevant, beginning in or around January 2019 and continuing at least through present, the Defendants unlawfully, knowingly, and wilfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(a) and (c) as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d).

187. Upon information and belief, the Defendants agreed to the overall objectives of the conspiracy - to defraud the class of Plaintiff of millions of dollars in investments under false pretenses, to illegally funnel the vast portion of the proceeds of their unlawful activity into their personal accounts, assets and property, to conduct financial transactions with the remaining proceeds to promote their Ponzi scheme, and to conceal their ongoing fraud from the Class of Plaintiffs.

188. Defendants agreed to the commission of at least two predicate acts. Specifically, they

agreed to engage in to engage in: (i) a scheme to defraud by transmitting or causing to be transmitted writings, signs, signals, pictures, or sounds in interstate or foreign commerce through the use of the mails and wires, as proscribed by 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1349; (ii) a financial transaction that they knew involved funds that were the proceeds of some unlawful activity and that those funds were in fact the proceeds of that unlawful activity, in violation of 18 U.S.C. § 1956 and (iii) a financial transaction that they knew involved funds that were the proceeds of some unlawful activity and was designed in whole or in part to disguise or conceal the source, ownership, or control of the proceeds, and that those funds were in fact the proceeds of that unlawful activity, in violation of 18 U.S.C. § 1956. These acts constitute a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(a).

189. Defendants have knowingly, wilfully, and intentionally conspired and agreed on multiple occasions to receive income derived from a pattern of racketeering activity (mail fraud and wire fraud) and launder the proceeds of the illegal acts to promote the continued operation of the Novatechfx Enterprise Ponzi Scheme, and to disguise or conceal the source, ownership, or control of the proceeds.

190. Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

191. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

192. As a direct and proximate result of the Defendants' conspiracy, the acts of racketeering activity of the Novatechfx Enterprise Ponzi Scheme, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in her property, including loss of funds, and loss of financial opportunity related to those funds, the

attorney's fees and costs associated with exposing Defendants' pervasive fraud and in recovering the funds stolen by Defendants, causing Plaintiff to suffer monetary losses in the amount of not less than $ 2 Billion said damages to be proven at trial.

193. Pursuant to 18 U.S.C. § 1962(c), the Plaintiff is entitled to recover at least three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

## COUNT 5
## Breach of Contract

194. Plaintiff incorporates by reference all the allegations stated herein. As set forth above, the Defendants solicited and entered into an implied contract by which the members of the Class agreed to entrust, pay, transmit, turn over and/or wire not less than $ 2 billion dollars in investment property and funds to the Defendants, and the Defendants agreed to invest that property and funds in cryptocurrency through an automated investment trading platform which the Defendants guaranteed to earn at least 3% each week.

195. The members of the Class did entrust, pay, transmit, turn over and/or wire not less than $ 2 billion dollars in investment property and funds to the Defendants as agreed, and fully performed all terms and conditions of the implied contract.

196. Defendants materially breached the express and implied terms of the contract by failing to invest the property and funds as agreed.

197. The Defendants made demands to Defendants that Defendants refund their investment funds and property. Despite those demands, Defendants have refused and continue to refuse to refund the investment funds and property to the members of the Class.

198. Defendants, through their actions described above, breached their contract with the

members of the Class in several other material respects, including, but not limited to, engaging in a Ponzi scheme and defrauding and embezzling millions of dollars from the members of the Class as well as taking from them for Defendants' own benefit investment opportunities.

199. As a direct and proximate result of the Defendants' breaches, the members of the Class have suffered substantial damages in the amount of not less than $ 2 billion and  said damages to be proven at trial.

200. The Plaintiffs have also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendants' conduct.

### COUNT 6
### Breach of Implied Covenant of Good Faith and Fair Dealing

201. Plaintiff incorporates by reference all the allegations stated herein. The above-referenced implied contract, as with all contracts, contains an implied covenant of good faith and fair dealing.

202. The implied covenant of good faith and fair dealing applies to the parties' performance and rights under the contract.

203. Through the conduct described above, Defendants denied the members of the Class the benefit of the bargain originally intended by the parties and provided by the contract.

204. Through the conduct described above, Defendants acted in bad faith and have breached their implied covenant of good faith and fair dealing.

205. As a direct and proximate result of Defendants' violations of their implied covenant of good faith and fair dealing, the members of the Class have and will suffer significant financial harm, including consequential and other damages, in the amount not less than $ 2 billion said damages to be proven at trial.

206. The Plaintiffs have also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendants'

conduct.

## COUNT 7

### Unjust Enrichment

207. At Defendants' request, and in reliance on their promises -- that (i) investor moneys would be invested in cryptocurrency through an automated investment trading platform (ii) potential investors would earn a 3% weekly return on their investment and would double their money within five months using the "Bots Assisted account" to conduct trading (iii) Novatechfx would guarantee 3% weekly return on their investments and (iv) actual investors had earned, and were continuing to earn, at least 3% each week on their investments -- the members of the Class entrusted, paid, transmitted, turned over and/or wire not less than $ 2 billion in investment funds to the Defendants.

208. Only a portion of the investment funds provided to the Defendants were actually invested by the Defendants, and none were invested as represented, and the vast portion of the funds were stolen or converted by the Defendants for the Defendants' own benefit to the great detriment of the members of the Class.

209. Defendants failed to invest the vast portion of the investment funds provided to them by the members of the Class as set forth above.

210. Defendants received and retained the benefit of the Plaintiff's performance, including their money and property, in direct violation of Defendants' obligations to the Plaintiffs and without performing in accordance with the Defendants' promises and pretences.

211. Defendants must be required to return to the members of the Class all of their money Defendants wrongfully retained.

212. Defendants have been unjustly enriched, and the Plaintiffs are entitled to be compensated for the benefit they have conferred on the Defendants.

213. The value of the money and property unjustly retained by Defendants is in excess of

$2 billion dollars, the exact amount of which will be proven at trial.

214. The Plaintiff has also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendants' conduct.

## COUNT 8
## Conversion / Theft / Embezzlement

215. The Defendants received the above-referenced investment funds from the members of the Class, to be invested in accordance with the Defendants' promises and representations.

216. The Defendants did not invest the investment funds as promised and have failed and refused to return the investment funds provided to them by the members of the Class, despite demand, therefore.

217. Instead, the Defendants knowingly obtained or used, or endeavored to obtain or to use, the Plaintiffs' property (i.e., the investment funds) with intent to permanently appropriate the property for the Defendants' own use and benefit through fraud and deceit.

218. As a direct and proximate result of this theft, conversion and/or embezzlement of the Plaintiffs' investment funds, the Plaintiffs have suffered substantial damages in the amount of at least $ 2 billion plus consequential damages consisting of, among other things, attorneys' fees and costs of investigating and discovering Defendants' fraud and pursuing this action.

219. The Defendants' actions have been wilful and outrageous and undertaken with reckless indifference to the rights of the Plaintiffs. Such conduct warrants an award to the Plaintiff of punitive or exemplary damages in an amount sufficient to punish the Defendants and deter similar wrongdoing by others.

## COUNT 9

## FRAUD

220. From January 2019 through January 2024, the Defendants promised and represented to

the members of the Class that their money would be, and/or had been invested in cryptocurrency through an automated investment trading platform.

221. From January 2019 through January 2024, the Defendants committed fraud when they intentionally and falsely represented to the members of the Class that their money would be, and/or had been invested in cryptocurrency.

222. From January 2019 through January 2024, the Defendants held virtual weekly investment meetings ("weekly meetings") in which they promised and represented to the members of the class that:  had dedicated trading desks, computers and strategies, that gave investors access to investment returns they would not otherwise have access to: (a) investor moneys would be invested in cryptocurrency through an automated investment trading platform; (b) potential investors would earn a 3% weekly return on their investment and would

double their money within five months using the "bots".

223. The Defendants' above promises and representations were false, and Defendants knew they were false when made, and they made the false promises and representations specifically intending for the members of the Class to rely upon the false promises and representations, and to induce them to invest, to send them money and property, and to stay invested, as part of a scheme to defraud the members of the Class.

224. The Defendants purposely and intentionally did not invest, as promised, or represented, or at all, the moneys and property provided to them by the members of the Class.

225. The Defendants did not intend to invest, at promised or represented, , the moneys and property provided to them by the members of the Class.

226. The members of the Class justifiably relied on the Defendants' representations, and based on this reliance, entrusted, paid, transmitted, turned over and/or wire not less than $

2 billion in investment funds to the Defendants.

227. The members of the Class have been substantially harmed by the Defendants' conduct.

228. As a direct and proximate result of Defendants' deliberate, intentional and vile conduct, all done with malice, fraud and/or oppression, the members of the Class have incurred and will continue to incur damages in the amount of at least $ 2 billion said damages to be proven at trial, plus consequential damages consisting of, among other things, attorneys' fees and costs of investigating and discovering Defendants' fraud and pursuing this action.

229. Such conduct was done in furtherance of their own private interests, and was wilful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm, and therefore further warrants an award to the members of the Class of punitive or exemplary damages in an amount to be proven at trial and sufficient to punish the Defendants and deter similar wrongdoing by others.

## COUNT 10

### Intentional Misrepresentation

230. The Defendants did not perform as promised and at all times did not intend to perform.

231. The Defendants intended to enrich themselves at the expense of the members of the Class, and to defraud them by falsely claiming that (i) investor moneys would be invested in cryptocurrency through an automated investment trading platform (ii) potential investors would earn a 3% weekly return on their investment and would double their money within five month using the "Bots Assisted account" to conduct trading (iii) Novatechfx would guarantee 3% weekly return on their investments and (iv) actual investors had earned, and were continuing to earn, at least 3% each week on their investments.

232. The Defendants false promises and representations were designed to deceive investors such as the members of the Class and cause them to send large sums of money to Defendants for investments.

233. The sophisticated virtual weekly investor meetings ("weekly meetings) nationwide and

worldwide via was intended by the Defendants to defraud investors such as the members of the Class and to cause them to reasonably rely on the Defendants' representations and send, wire, transmit, large sums of moneys and property to the Defendants for investment.

234. The members of the Class did reasonably rely on those representations and they entrusted, paid, transmitted, turned over and/or wire not less than $ 2 billion in investment funds to the Defendants.

235. The reliance by the members of the Class on the promises of the Defendants was reasonable and a substantial factor in the harm the members sustained.

236. The Defendants did not invest the investment funds as promised and have failed and refused to return the investment funds provided to them by the members of the Class, despite demand therefore.

237. Instead, the Defendants knowingly obtained or used, or endeavored to obtain or to use, the Plaintiff's property (i.e., the investment funds) with intent to permanently appropriate the property for the Defendants' own use and benefit through misrepresentations, deceit and fraud.

238. As a result of the intentional misrepresentations and fraud by the Defendants, the members of the Class suffered damages in the amount of at least $ 2 billion dollars, plus consequential damages consisting of, among other things, attorneys' fees and costs of investigating and discovering Defendants' fraud and pursuing this action.

239. Defendants' misconduct was wilful, intentional, malicious and fraudulent, entitling the Plaintiffs to an award of exemplary or punitive damages in an amount sufficient to punish the Defendants and deter similar wrongdoing by others.

## COUNT 11

### Civil Conspiracy

240. Plaintiff incorporates by reference all the prior allegations stated herein. Upon information and belief, the Defendants agreed, combined and acted with a common plan and purpose to

defraud and embezzle money from the members of the Class, and convert the Plaintiff's property to themselves and for their own benefit, by engaging in the unlawful acts described above.

241. Upon information and belief, the Defendants agreed, combined and acted with a common plan to breach their fiduciary and common law duties owed to the members of the Class by engaging in the unlawful acts described above.

242. At all times relevant, the Defendants committed overt acts, as described above, including, but not limited to, engaging in a Ponzi scheme and defrauding and embezzling millions of dollars from the members of the Class for their own benefit in pursuance of the common purpose described above.

243. As a direct and proximate result of the Defendants' acts done in furtherance of the conspiracy, the members of the Class have been damaged in their businesses and properties, causing Plaintiffs to suffer monetary damages in an amount not less than $ 2 billion said damages are to be proven at time of trial. The Plaintiffs have suffered, and will continue to suffer, these injuries.

244. The Defendants' actions have been wilful, malicious, wanton, and oppressive, and done with conscious and reckless indifference to the rights of the Plaintiffs and to the consequences and with specific intent to harm the Plaintiffs, warranting an award of exemplary or punitive damages in an amount sufficient to be proven at trial to punish the Defendants and deter similar wrongdoing by others.

## COUNT 12

### Use of Income Derived from a Pattern of Racketeering Activity in the Operation of an Enterprise under New York Organized Crime Control Act Article 460

245. At least three of the following incidents occurred, creating a pattern of racketeering:

  (a). In connection with the rendering of investment advice or in connection with the

offer, sale, or purchase of any investment or security in NOVATECHFX as defined by article 460, directly or indirectly, the Defendants employed devices, schemes, or artifices to defraud, in violation of Article 460. The Defendants operated the Novatechfx Enterprise Ponzi Scheme beginning on or about January 2019 to present.

(b). The Novatechfx Enterprise Ponzi Scheme, as alleged above, was structured so as to give the appearance to potential/existing investors that was positioned to reap profits from investment in Crypto Currency.

(c). The Defendants employed false material representations to perpetrate their scheme and conceal their ongoing fraudulent activity; to wit, at all times relevant, Cynthia Petion together with the named Defendants, held virtual weekly investor meetings ("weekly meetings), to induce investors to invest and stay invested, by falsely representing via wires In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security of NOVATECHFX as defined by Chapter 460, directly or indirectly, the Defendants obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Article 460.

246. From January 2019 to present, the Defendants knowingly and wilfully concealed or covered up, by their scheme, a material fact that there were operating a scheme in violation of New York Article 460.

247. The incidents described above occurred every Friday of the month between January 2019 and January 2024, during video zoom calls, calls "Investors' meeting). All of these meetings had the same or similar intents (repeatedly encouraging people to invest money or money based on lies, misrepresentations), resulting in members of the Class invested millions of dollars based on those intentional misrepresentations.

248. Defendants, with intent to defraud members of the class received proceeds derived, directly or indirectly, from the pattern of racketeering activity, from investors.

249. Defendants used or invested, directly or indirectly, such proceeds or the proceeds derived from the investment or use thereof, in the establishment and operation of the Novatechfx Enterprise Ponzi Scheme in violation of article 460, including but not limited to creating accounts with financial institutions, paying salaries, creating investor documents, creating business plans, travelling, etc., the further descriptions of which cannot be ascertained by Plaintiffs at the time of filing this Complaint.

250. The Novatechfx Enterprise Ponzi Scheme was an ongoing organization, formal or informal, and functioned both as a continuing unit and has a common purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their monies, and hiding their conduct.

251. At all times relevant hereto, all Defendants agreed to and did use income or proceeds received from a pattern of racketeering activity to form, control, establish, and operate the Novatechfx Enterprise Ponzi Scheme, which was formed for the purpose of defrauding Plaintiffs, and which was engaged in and affected interstate and foreign commerce.

252. All of the Defendants acted on behalf of Novatechfx Enterprise Ponzi Scheme and each other in conducting the affairs of the businesses, have engaged in conduct in violation of article 460.

253. As a proximate result of the Defendants' fraudulent actions, the Class suffer damages in the amount of billion dollars, for which each of the Defendant, individually or severally liable to class members.

## COUNT 13

### Conduct or Participation in an Enterprise through a Pattern of
### Racketeering Activity under the New York Crime Controlled (RICO)Act, Article 460

254. Plaintiff incorporates by reference all the prior allegations stated herein. The above - named Defendants were employed by and/or associated with Defendant

NOVATECHFX.

255. At all times relevant, the Defendants conducted, participated in, directly or indirectly in

such enterprise by engaging in all the incidents and predicate acts alleged above.

256. Each incident described above had the same or similar intents (repeatedly lying, and

misleading investors for the purpose of getting them to invest in the Ponzi Scheme).

257. All the Defendants worked together as accomplices of each other and developed methods

of commission that compensate them for each investor they brought into NOVATECHFX.

258. The Criminal Enterprise, Novatechfx Enterprise Ponzi Scheme, was an ongoing

organization, formal or informal that functioned both as a continuing unit and has a common

purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their

monies, and hiding it, and misusing it.

259. As a proximate result of the Defendants' illegal acts, members of the class sustained

damages for which each Defendant is individually and severally liable to the class.

## COUNT 14

### Acquisition and Maintenance of an Interest in or Control over any Enterprise
### under New York Crime Controlled Act of 1986 - Article 460 Section 20.00

260. At all relevant times, the Corporate Defendants collectively constituted an enterprise (the

Novatechfx Enterprise Ponzi Scheme).

261. At all relevant times, the Defendants individually were agents of, employed by or

associated with the Novatechfx Enterprise Ponzi Scheme.

262. In committing the acts plead herein, the Defendants received income derived from a pattern of racketeering activity.

263. Defendants used the income or proceeds therefrom in their operation and maintenance of Novatechfx Enterprise Ponzi Scheme, an enterprise which operates in and affects interstate and foreign commerce.

264. At various times and places detailed in this complaint and in the accompanying exhibits, Defendants acquired and/or maintained, directly or indirectly, an interest in or control of the Novatechfx Enterprise Ponzi Scheme.

265. During the period from at least January 2019 through and including January 2024, all Defendants cooperated jointly and severally in the commission of two or more of the RICO predicate acts.

266. Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities.

267. The Plaintiff is a  person who has been injured by the fraudulent and racketeering activities of the Defendants.

268. As a proximate result of the Defendants' illegal acts, members of the class sustained damages for which each Defendant is individually and severally liable to the class.
at law or in equity.

## COUNT 15

### Conspiracy to Violate the Provisions of Article 460 et seq.,
### of New York Crime Control Act.

269. The above Defendants in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, namely, to engage in a pattern of racketeering activity described above.

270. The Defendants knowingly and wilfully became members of such conspiracy. At the

time they joined the conspiracy, they did so with the specific intent to participate in the affairs of the criminal enterprise with the knowledge and intent that Cynthia and Eddie Petion or their agents would engage in many incidents of racketeering described in paragraph above, as part of a pattern of racketeering activity. The following Defendants: Cynthia Petition, Jean Martin Zizi, Frantz Ciceron, Travis Bieberitz, Eddy Petion, Paul J DeRenzo, Deborah Brasil participated in the affairs of NOVATECHFX.

271. From January 2019 to about January 2024 by the above Defendants invited several investors to weekly investors' meeting. The purpose of the meetings was to discuss the performance of NOVATECHFX. The Defendants told investors that the company had bots to assist in investment and that the rate of returns was between five to ten percent weekly, and that their money was earning interest daily when the Defendants knew this was not true.

272. The above Defendants participated in the Fraudulent Scheme, executing documents they knew to be false, including fake reports on return on investment.

273. As a proximate result of the Defendants' wilful participation in the fraudulent scheme, and recruiting investors, members of the class sustained economic damages for which the Defendants are severally and individually liable to the Plaintiffs.

COUNT 18

**Intentional Infliction of Emotional Distress**

274. Plaintiff realleges allthe prior allegations stated herein. Defendants' actions toward the Plaintiffs and other members of the Class constitute extreme and outrageous conduct and was done intentionally.

275. Defendants fraudulently coerced members of the class to invest their entire life saving with a false promise of being millionaires in 9 months. Most of the members of class are not rich and are every-day immigrant who works very hard to save a little bit of money. The

defendants recklessly with total disregard for their wellbeing took their money for their own personal use.

276. Defendants' extreme and outrageous conduct subjected the class members to emotional trauma, humiliation, severe emotional distress.

277. Defendants' actions and the ensuing damages to class members were foreseeable. Upon information and believe some class members have committed suicide upon finding out that NOVATECHFX was a Ponzi Scheme.

278. As a result of Defendants' intentional actions, the Plaintiffs sustained injuries and damages for which each Defendant is individually and severally liable to Plaintiffs.

## COUNT 19

### Negligent Infliction of Emotional Distress

279. Plaintiffs owe a duty of care to the members of the class, that duty is an affirmative duty to tell the truth with regard to the nature of the investment in the Novatechfx.

280. Defendants working together and in concert breach that affirmative duty by repeatedly lying to the Plaintiffs about the nature of the business, the company, the platform, its functionality, and the return on investment. These lies were material because without them, members of the class would not have invested in Novatech.

281. Plaintiffs sustained emotional and economic damages because of the Defendants' actions. Those damages were foreseeable, and they are the direct result of Defendants' actions.

282. Defendants' actions are the proximate cause of Plaintiff's injuries, "but for" Defendants actions Plaintiff would not have sustained the damages.

283. Each named Defendant is individually and severally liable to Plaintiffs for all their damages.

## Exemplary Punitive Damages

284. Defendants' actions alleged above were malicious, wilful and wanton, and were made with specific intent to harm Plaintiffs.

285. Defendants' actions alleged above violated 18 U.S.C. § 1343 and New York Crime Controlled Act of 1986 – (New York Rico)

286. Defendants' actions alleged above constitute fraud and conspiracy to commit fraud.

287. In order to deter such conduct in the future, Plaintiff should be awarded exemplary punitive damages in an amount of not less than $ 2 billion.

288. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

## COUNT 21

### Statutory Claim for Fraudulent Conveyance

289. Upon information and belief, Defendants developed and implemented a scheme to transfer assets to each other and others to place them outside of the reach of their creditors, including each member of the Class.

290. The aforesaid transfers were made with actual intent to hinder, delay, or defraud the members of the Class and without receiving a reasonable equivalent value in exchange for the transfer or obligation.

## COUNT 22

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants

291. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

292. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

293. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

294. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

• employed devices, schemes and artifices to defraud;

• made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

• engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

295. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Novatech were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts about Novatech, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with

the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

296.  Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

297. As a result of the foregoing, the Plaintiff and investing public believed that Novatech was licensed by the SEC and other state authorities.  In ignorance of the falsity of Novatech's and the individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above to invest in Novatech.

298. Had Plaintiff and the other members of the Class been aware that Novatech was not licensed by the SEC or any other financial authorities, and that the Defendants lied to the Plaintiff and members of the class and the Individual Defendants' misleading statements and by the material adverse information which Novatech and the Individual Defendants did not disclose, they would not have invested in Novatech.

299. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

300. By reason of the foregoing, Novatech and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their investment in Novatech.

## COUNT 23

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

301. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

302. During Period of January 2019 the Individual Defendants participated in the operation and management of Novatech, and conducted and participated, directly and indirectly, in the conduct of the Novatech's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Novatech business practices.

303. As officers and/or directors of Novatech, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Novatech operations, and to correct promptly any public statements issued by Novatech which had become materially false or misleading.

304. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings disseminated by Novatech and the Individual Defendants exercised their power and authority to cause Novatech to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged herein.

305. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Novatech, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Novatech to engage in the unlawful acts and conduct complained of herein.

306. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

307. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## COUNT 24

### Injunctive Relief

308. Unless Defendants are temporarily, preliminarily, and permanently enjoined from improperly and unlawfully depriving the members of the Class of their rights under the above-referenced implied contract, and from transferring assets to each other and others to place them outside of the reach of their creditors, the members of the Class will be immediately and irreparably harmed by present and/or future economic loss, which is presently incalculable.

309. The members of the Class have no complete or adequate remedy at law.

310. The members of the Class will suffer greater injury if an injunction is not granted than Defendants will incur if the injunction is granted.

311. The public interest will be served by an injunction against Defendants by the enforcement of the requirements of the contract.

312. By virtue of the foregoing, the Plaintiff has demonstrated a likelihood of success on the merits and that the balancing of equity favors issuance of an injunction against Defendants.

## COUNT 25

### Accounting and Insurance

313. Defendants must account for all transactions regarding their fraudulent scheme.

314. Defendants must also provide the names, policy numbers, and contact information for their insurance companies, including but not limited to policies providing for general liability,

professional liability, and errors and omissions, so the members of the Class can submit claims against the Defendants.

315. The members of the Class demand that Defendants be required to produce a full and complete accounting of all transactions regarding their fraudulent scheme, including, but not limited to, all transfers of funds to accounts and/or third parties wherever they may be, as well as their insurance companies, insurance contact information, policy numbers, and coverage.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable that are raised herein, or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.  Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

2. Finding that all defendants are jointly and severally liable for all damage caused to Plaintiffs;

3. Awarding Plaintiffs monetary damages in an amount not less than $ 2 billion said amount to be proven at trial;

4. Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c) And New York Article 460);

5. Awarding Plaintiffs its litigation expenses, including reasonable attorneys' fees, costs, and disbursements.

6. Awarding Plaintiffs punitive damages in the sum of not less than $ 6 billion or an amount otherwise to be decided by a jury; and

7. Granting such other relief as the case may require or as may be deemed proper and equitable.

Dated this 5th Day of February 2024

Respectfully submitted,

*/s/ W.J Morris.*
MORRIS LEGAL, PC
2800 Biscayne Blvd, Suite 530
Miami, Florida 33137
OSC # 8728 /JWM
Telephone: 305-444-3437
Facsimile: 305-444-3457
Email: Wilm@MorrislegalFla.com