IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

AVIS MULLINS, Individually and on behalf
of all others similarly situated. and
UNITED INVESTOR COMMUNITY,

                       Plaintiff,

-against-

NOVATECH, a foreign company,
CYNTHIA PETION, an individual,
EDDY PETION, an individual,
CROWNED ONE MINISTRIES,
areligious corporation,
STEVAN CUNNINGHAM, an individual,
GEORGE C FRASER, an individual,
AWS MINING PTY, LTD, a company,
RICARDO ROY, an individual,
NOVATECH, LTD, a foreign company,
NOVATECH ADVISORS, LLC
a Florida Corporation,
NOVA PAY, LLC, a Florida Corporation,
NOVATRADING OÜ, an Estonian
Corporation,
SMART BIT INC., a Florida Corporation,
DEBORAH BRASIL, an individual,
FRANTZ CICERON, an individual,
CICERON FRANTZ & ASSOCIATES, INC.,
a New York company,
KING MULTI SERVICE AGENCY, INC.,
a New York company,
POSITIVE VISION MARKETING, LLC,
a Georgia company,
THE CATHOLIC DIOCESE OF FLORIDA,
a religious corporation,
RONI JOSE PINHEIRO DOS
SANTOS JUNIOR, aka RONI SANTOS
an individual,
DAPINULU DUNBAR, an individual,
MARTIN JEAN ZIZI, an individual,
SEAN HUBBARD, an individual,
SCOTT BREWSTER, an individual,
PAUL J DE RENZO, an individual,
JOHN GAROFANO, an individual,

Civil Case No.: 1:24-CV-00824-VSB

**PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

BOB ST. LOUIS, an individual,
ALLEN MULLINS, and individual,
JOEL SCOTT WHITNEY, an individual,
DWAYNE EDDINGS, an individual,
STAN RICHARDS, an individual,
ANDRELLE CALIXTE, an individual,
ANTONIO ARNOLD, an individual,
ANTHONY DELOATH, an individual,
JAMES CORBETT, an individual,
ALBERT JULES, an individual,
BERTHA CICERON, an individual,
DESMOND BWALA, an individual,
GWENDA CLARK, an individual,
ROBERT BEARDEN, an individual,
CORRIE J. SAMPSON, an individual,
NEWMAN BATANAYI MADZIKWA,
an individual,
KYLE FARMA, an individual,
JEMS MOISE, an individual,
HEINZ P. DUBINI, an individual,
MICHELE MCNEELEY, and individual,
ROSIE HAMMOND, an individual,
OWENS BROWN, an individual,
RANULFO NETO, an individual,
SAMANTHA ZIZI, an individual,
BRUNO MAZALI, an individual,
PERAL SAINT JEAN, an individual,
HEATHER J. BELANGER, an individual,
ATUKUZWE MARIA NYIRENDA,
an individual,
MARY GRAIG-BROWN, an individual,
JAMES SIMEON, an individual,
STEVE BLIZNICENKO, an individual,
LARRY GOLDEN, an individual,
STEVEN GREENE, an individual,
SHIRLEY XAVIER, an individual,
VINCENT THOMAS, an individual,
KYLE M. FARMAN, an individual,
SHENA MCHENRY, and individual,
HEINZ PETER DUBININ, an individual,
DAVID SCHOMBERG, an individual,
JOHN NINAN, an individual,
ARLEIGH MATTHEW, an individual,
MARIE JOSEE JEAN-BART, an individual,
MICHELINE THOMAS, an individual,
THOMAS ODARIS, an individual
AGGEE VETIAQUE, an individual,
DENNIS O. CUNNINGHAM, an individual,
YVONNE MURREN, an individual,
EDENS JOSEPH, an individual,

JEAN ST. LOUIS, an individual,
MARSHA HADLEY, an individual,
GOLDENTASTIC CONSULTING LLC,
SERA ORION, LLC, a Limited Liability Corp.,
INTEGRITY ACCOUNTING SERVICES, INC.,
SOCIETY OF ST. AGNES, a corporation,
MT SOLUTIONS, a corporation,
BGTi, LTD, a corporation, and
JOHN DOE 1-500, (are individuals
at this time unknown to the Plaintiff).

                    Defendants

_____/

## **PLAINTIFF'S SECOND AMENDED COMPLAINT**

## I.    PRELIMINARY STATEMENT

Plaintiff Avis Mullins ("Plaintiff"), individually and on behalf of all other persons similarly situated, through undersigned counsel, the Law Offices of Morris Legal, LLC, respectfully submits Plaintiff's Second Amended Complaint ("SAC"). The allegations contained herein are made upon personal knowledge and information, and upon belief as to all other matters, based on, *inter alia*, an investigation conducted by counsel which included, among other things, a review of the defendants' public documents, conference calls, zoom calls and public announcements made by the defendants, published by and regarding NOVATECHFX ("NOVATECH" or the "Company"), and other information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support for the allegations set forth herein will be unearthed after a reasonable opportunity for discovery.

Plaintiff brings this Complaint for money laundering, fraud, civil conspiracy to commit fraud, civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1964(c)) ("Federal RICO"), civil violations of the New York Racketeer Influenced and Corrupt Organizations Act (NYS Article 460) ("New York RICO"), breach of contract, breach of fiduciary duty, unjust enrichment, intentional and negligent infliction of emotional

distress, negligence, fraud, aiding and abetting fraud, embezzlement, and misappropriation against the Defendants.

This is an action alleging the causes of actions listed above on behalf of a class consisting of all persons and entities (other than Defendants, and any and all promoters, directors or anyone who has withdrawn more money than they initially invested) who purchased or otherwise acquired investment services from the Defendants between August 2017 and through January 2024 (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the Racketeering Acts.

Defendants Cynthia Petion and her husband Eddy Petion (together, "Defendants Petion") defrauded thousands of investors worldwide out of over 50 billion dollars by promoting two consecutive fraudulent investment schemes.[1] The first was a fraudulent investment scheme called AWS Mining PTY LTD ("AWS Mining") and the second, a larger fraudulent scheme, called NovaTechFX ("NovaTech"). Each was a pyramid scheme where promoters who invested in the scheme earned cryptocurrency for recruiting others to do the same. In the NovaTech scheme, investors were promised profits from cryptocurrency trading but were paid from the cryptocurrency assets of other investors.[2]

Defendants' also employed affinity fraud by promoting the schemes to investors in their respective languages.[3] For example, in New York, the scheme was promoted in Creole

---

[1]    In 2015, Defendants Petion, Zizi, Ciceron participated in AWS mining collecting millions of dollars from hundreds of thousands of victims worldwide promising 200% return on their money. https://www.linkedin.com/company/awsmining/?originalSubdomain=au

[2]    A pyramid scheme is a fraudulent and unsustainable investment pitch that relies on promising unrealistic returns from imaginary investments. The early investors actually get paid those big returns, which leads them to recommend the scheme to others. Investors' returns are paid out of the new money flowing in. Eventually, no new investors can be found and the pyramid collapses. https://www.investopedia.com/insights/what-is-a-pyramid-scheme/

[3]    Affinity fraud is a type of investment fraud in which a con artist targets members of an identifiable group based on things such as race, age, religion, etc. The fraudster either is or pretends to be, a member of the group. Often the fraudster promotes a Ponzi or pyramid scheme. https://www.investopedia.com/terms/a/affinityfraud.asp#:~:text=What%20Is%20Affinity%20Fraud%3F,a%20Ponzi%20or%20pyramid%20scheme.

language to prey on their victims' religious faith.  The victims trusted Defendants, most of whom came from the Haitian community themselves. In South America, the scheme was promoted in Spanish by recruiting Spanish speakers to lure Spanish speaking persons to invest in the scheme.

Defendants marketed to investors most in need of income and least able to afford a loss by advertising their schemes as a train to "financial freedom" and "freedom from the plantation."  Defendant Cynthia Petion knew that "[i]t's never the ones who grew up rich who invest in these programs."

**A.    AWS Mining**

1.    Defendant AWS Mining was an illegal pyramid scheme which guaranteed a 200% return on investment ("ROI") from mining cryptocurrency.  Cryptocurrency mining is a process by which specialized computers verify transactions in cryptocurrency and generate new cryptocurrency.

2.    From approximately 2017 to 2019, Defendants Petion, and Defendants James Corbett ("Corbett"), Martin Zizi ("Zizi"), and Frantz Ciceron ("Ciceron") promoted AWS Mining by promising 15-20% monthly returns and 200% returns on investment in 13-15 months.

3.    AWS Mining rewarded its participants for recruiting new investors (or "downlines"), by awarding them 10% of amounts invested by their downlines, additional bonuses, and ceremonial titles.   The more investors recruited, the more grandiose the promoter title.  Investors were required to purchase mining contracts to be eligible to receive recruitment bonuses.

4.    Defendant AWS Mining's promises of guaranteed 200% returns were fraudulent and its scheme was unsustainable.

5.     AWS Mining did not generate sufficient returns from mining to pay the promised monthly profits and lucrative recruitment commissions.

6.     By April 2019 the scheme collapsed, with the majority of investors losing most of their investments, and by August of 2019 AWS Mining ceased to exist.

## B.    NOVATECH

7.     After the collapse of AWS Mining, Defendants Petion decided to start another fraudulent scheme, and by August of 2019, they founded and promoted what was to become an even larger fraudulent investment scheme called NovaTech.

8.     Through NovaTech, Defendants defrauded hundreds of thousands of investors, including at least 11,000 New Yorkers, with Defendants Corbett, Zizi, and Ciceron rising as NovaTech's top promoters.

9.     NovaTech promised to generate profits primarily from trading cryptocurrency and currency pairs on the foreign exchange (Forex) using NovaTech's own trading platform. Like in AWS Mining, NovaTech paid lucrative bonuses to promoters for recruiting new investors.  It too was an illegal pyramid scheme.

10.     Defendants preyed upon the same victims of AWS Mining when recruiting for NovaTech, capitalizing on the exclusion of these communities from traditional markets.

11.     Defendant Cynthia Petion wrote, in one of her many private communications to Defendant Zizi, that "Man, [investors] were heated when AWS closed lol. But where else are they going to go to?"

12.     Upon establishing NovaTech, Defendant Cynthia Petion rebranded herself as "Reverend CEO," called NovaTech's founders "the visionaries behind NovaTech", and proclaimed to investors that NovaTech was "God's vision".

13.     However, in private chats with Defendant Zizi, Cynthia Petion called herself the "zookeeper," her investors "a cult," and rejected Zizi's suggestion that NovaTech was like a country club because, she said, "in a club people know what they are signing up for**" while in NovaTech "people join and follow mindlessly… They don't think. They just agree with everything you say."

14.     While praising the "vision" of NovaTech, Defendant Zizi wrote to Defendant Cynthia Petion that "some people will never see the vision you see in NovaTech… focus and recruit the visionaries." Defendant Cynthia Petion replied: "they see it when you drive by in that Bentley."

15.     Defendants falsely marketed NovaTech as "a registered hedge fund broker" and a financial advisor.

16.     Defendants fraudulently misrepresented that NovaTech was licensed to trade cryptocurrency in the United States and in Forex abroad, that it maintained consistent profits from trading of 2-4% per week (i.e., over 140% per year), and that investors could withdraw their capital and profits at any time.

17.     Defendants promised "easy" income with weekly ROI, as advertised, in written and verbal form, including postings on the NovaTech FX Official Telegram channel.  As an example, a November 21, 2022, posting is displayed below:



18.     The Defendants' representations about Novatech, however, were materially false and misleading.  NovaTech was not licensed by any regulatory entity in the United States or abroad and did not generate profits from trading sufficient to pay the announced weekly ROI or recruitment bonuses.

19.     Investors worldwide deposited over 50 billion dollars' worth of cryptocurrency with NovaTech from August 2019 through April 2023, but only a fraction - less than $26 million in total - was ever traded on NovaTech's trading platform.

20.     Yet, throughout the entirety of the scheme, NovaTech announced and paid investors positive weekly ROI, even when cryptocurrency markets around the world uniformly plunged in the spring of 2022.

21.     On the NovaTech portal, investor account balances falsely purported to continually grow and compound, reaching over three billion dollars by May 5, 2023, bearing no relation to the real dollar value of investor cryptocurrency held by NovaTech

22.     In June 2022, Defendants Petion secretly sold their house in Florida and fled to Panama. Defendant Cynthia Petion wanted "everyone to still think [they] we[]re in FL," and told Defendant Zizi to "leave the country [because] they can't serve you if they can't find you lol."

23.     Shortly after Defendants Petion fled, the NovaTech scheme began to unravel.

24.     In the fall of 2022, Canadian and United States' securities regulators served cease and desist orders on NovaTech for selling and promoting unregistered securities and for fraud.

25.     By December 2022, a growing number of investors requested to withdraw their funds from NovaTech.

26.     Unable to keep up with payments to investors, in February 2023, the Defendants halted all withdrawals from investors' "trading" accounts in Novatech, and in May 2023, they shut NovaTech down.

27.     NovaTech failed to return cryptocurrency deposited by investors and tens of thousands of investors were left with hundreds of millions of dollars in losses.

28.     At the same time, Defendants Petion transferred tens of millions of dollars' worth of cryptocurrency out of NovaTech.

29.     Defendants Zizi, Corbett, Ciceron, Fraser and others, individually and through their entities, made off with millions of dollars in recruitment payments and profits.

30.     Defendants' scheme to defraud investors by luring them into AWS Mining and their scheme to defraud investors by founding and selling investments in NovaTech, including

their material misstatements and omissions, constitute fraudulent practices in violation of New York General Business Law.

31.     Defendants promoted or granted participation in AWS Mining and NovaTech, which were illegal pyramid schemes known in New York as chain distributor schemes, in violation of GBL § 359.

32.     Defendants fraudulently offered or sold securities in AWS Mining and NovaTech while unregistered in violation of GBL § 359-e.

33.     Additionally, Defendants Zizi and Ciceron illegally used the term "university" while promoting NovaTech, in violation of Education Law § 224.

34.     Defendants repeated fraudulent and illegal acts in the carrying on, conducting, and transacting of business violated New York Executive Law § 63(12).

35.     This action seeks, inter alia, an order permanently enjoining Defendants from engaging in deceptive, fraudulent and illegal acts and practices in violation of the Martin Act and Executive Law; from engaging in any business relating to the issuance, advertisement, or sale of securities or commodities in New York; from participation in any chain distributor schemes or multi-level marketing companies; from serving as directors or officers of any company doing business in New York; and directing Defendants to pay restitution, disgorgement and damages.

## II.    THE PARTIES

**A.    The Plaintiffs**

36.     Plaintiff Avis Mullins is a citizen of the United States, a resident of New York City, and an investor of NovaTechFX and AWS.

37.     Plaintiff, United Investor Community Inc, is a not-for-profit membership organization duly incorporated in the State of Florida, and represents the interest of its members who collectively invested hundreds of millions of dollars with NovaTech and AWS Mining.

**B.    The Individual Defendants[4]**

38.    Defendant Cynthia Petion is NovaTech's co-founder and Chief Executive Officer overseeing the company's operations.  Prior to NovaTech, Defendant Cynthia Petion was a promoter at AWS Mining, where she held the highest ceremonial title of President, to reflect her level of success in recruiting new investors.  From 2016 through 2023, Defendant Cynthia Petion was a resident of the country of Panama and the State of Florida. Defendant Cynthia Petion currently resides in Panama.

39.    Defendant, Eddy Petion is NovaTech's co-founder and Chief Operating Officer overseeing daily operations and trading for client accounts.  Prior to NovaTech, Defendant, Eddy Petion, was a promoter at AWS Mining, where he also held the highest ceremonial title of President, to reflect his level of success in recruiting new investors.  From 2016 through 2023, Defendant, Eddy Petion, was a resident of the country of Panama and the State of Florida. Defendant, Eddy Petion, is Defendant, Cynthia Petion's, husband.  Defendant, Eddy Petion, owns real property in West Islip, New York, and he currently resides in Panama.

40.    Defendant, Frantz Ciceron, was a promoter of AWS Mining and NovaTech.  He held the ceremonial title of Director at AWS Mining and the highest ceremonial title of Two-Star Ambassador at NovaTech, to reflect his level of success in recruiting new investors. Defendant, Ftrantz Ciceron, is a resident of the State of New York.

41.    Defendant, James Corbett, is a resident of the State of New York and was a promoter of AWS Mining and NovaTech.  He held the ceremonial title of Director at AWS Mining and the highest ceremonial title of a Two-Star Ambassador at NovaTech to reflect his level of success in recruiting new investors.  He operated a now-defunct website, www.yourprofitservant.com, to promote various marketing enterprises, including NovaTech.

---

[4]    The Individual Defendants and Corporate Defendants (*see* C., supra) are collectively referred to herein as the "Defendants."

42.     Defendant, Martin Zizi, was a promoter of AWS Mining and NovaTech. Through his entity Defendan,t Trinity of Success Club, Inc., he held the highest ceremonial title of a Two-Star Ambassador at NovaTech, to reflect this level of success in recruiting new investors. He is a resident of the State of Georgia, former resident of the State of New York, and owns real property in Queens County, New York, State of Georgia and the Country of Panama.

43.     Defendant, Scott BREWSTER, is a United States citizen residing in Pennsylvania. At all relevant times, he served as Senior director of the criminal enterprise targeting church members and recruiting people to invest in the Ponzi scheme.

44.     Defendant, Allen MULLINS, is a United States citizen residing in Virginia. At all relevant times, he served as a senior director and distributor for the criminal enterprise.

45.     Defendant, Dwayne EDDINGS, is a United States citizen residing in the state of New Jersey. At all relevant times, he served as senior director and trainer for the criminal enterprise from 2019 to 2023.

46.     Defendant, J. Scott WHITNEY, is a United States citizen residing in Pennsylvania. At all relevant times, he was a master distributor for the criminal enterprise of NovaTech.

47.     Defendant, Stan RICHARDS, is a United States citizen and reside in Dallas Texas. At all relevant times, he was a distributor for the criminal enterprise and, since at least 2020, he recruited thousands of members of the class to invest in the Ponzi scheme.

48.     Defendant, Andrelle CALIXTE, is a United States citizen and resides in Coral Springs, Florida. At all relevant times, he was a senior director of the criminal enterprise and recruited hundreds of people to invest in Novatech.

49.     Defendant, Antonio ARNOLD, self-titled "reverend", is a United States citizen residing in Chester, Virginia. At all relevant times, he was a trainer, master distributor, and ambassador representing the criminal enterprise.

50.     Defendant ,Anthony T. DELOATCH, is a United States citizen and resident of New Jersey. At all relevant times, he served as a senior serial promoter of several Ponzi schemes, including NovaTechFX.[5]

51.     Defendant, John NINA, is a Canadian citizen residing in Ontario, Canada. At all relevant times, he served as a "human trader" at NovaTech and participated in the criminal enterprise

52.     Defendant, Albertson L. JULES ,is a citizen of the United States and resident of Florida.  At all relevant times, he was an ambassador of the Ponzi scheme and promoted the scheme on his social media platform.

53.     Defendant, Desmond BWALA, is a United State citizen of African descent.  At all times, he served as a promoter of the Ponzi scheme and, between 2020 and 2023, he recruited hundreds of investors to the Ponzi scheme.

54.     Defendant, Dwenda CLARK ,is a United States Citizen and resident of the state of Georgia.  Between 2021 and 2023, she recruited hundreds of people to invest in the Ponzi Scheme.

55.     Defendan,t Corrie J. SAMPSON, is a United States citizen residing in Fairburn, Georgia.  At all relevant times, he served as a promoter, ambassador, and advisor to the NovaTech criminal enterprise.[6]

---

[5]     Defendant Deloatch promoted NovaTechFX on YouTube Channel which he maintained for more than three years. See https://www.youtube.com/watch?v=eN-1zPXnPaw.

[6]     Defendant Sampson is currently being investigated by the Federal Trade Commission for violation of securities laws.

56.     Defendant, Edens JOSEPH, is a United States citizen, residing in Lakeland, Florida.  At all relevant times, he served as a promoter and ambassador of NovaTech.

57.     Defendant, Jean Ernsto EXANTUS, is a United States citizen residing in Lakeland, Florida. At all relevant, he served as senior director of NovaTech and recruited thousands of members of the class to invest in the criminal enterprise.

58.     Defendant, Kyle FARMA, is a United States citizen residing in California. He is a manager of Sera Orion, LLC in California. At all relevant times, he served as a promoter, recruiter, and senior director of NovaTech.

59.     Defendant, Heather J. BELANGER-JOHANNESSEN, is a Canadian Citizen, residing in Ontario, Canada. At all relevant times, he served as a promoter and director of the Criminal Enterprise.  He also recruited thousands of people to invest in the Ponzi Scheme.

60.     Defendant, Shena McHENRY, is a United States citizen residing in the State of Colorado. At all relevant times, she served as a promoter and director of the criminal enterprise.

61.     Defendant, Jems MOISE, is a United States citizen residing in Florida. At all relevant times, he, through his 13 companies, served as a senior promoter, director, and ambassador recruiting members of the public to invest in the Ponzi Scheme.

62.     Defendant, Heinz DUBINI, is a United States citizen residing in New York City, New York.  At all relevant times, he was a promoter and ambassador of the Ponzi Scheme, recruiting hundreds of people to participate in the scheme.

63.     Defendant, Michele McNEELEY, is a United States citizen residing in Florida. At all relevant times, she served as an ambassador, promoter, and director of the Ponzi Scheme.

64.     Defendant, Samantha ZIZI, is a United States citizen residening in Long Island, New York. At all relevant times, she worked with Defendant, Martin ZIZI, to recruit members of the Haitian community to participate in the Ponzi scheme.

65.     Defendant, Bruno MAZALI, is a United States citizen residing in Maryland. At all relevant times, he served as a promoter of the Ponzi scheme and recruited thousands of people to invest in it.

66.     Defendant, Atukuzwe NYIRENDA, is a United States citizen residing in Lakeland City, Florida. At all relevant times, she used her position as a Catholic nun to recruit thousands of victims to the Ponzi Scheme.

67.     Defendant, Larry GOLDEN, is a United States citizen residing in Atlanta, Georgia. At all relevant times, he was a promoter, director and ambassador of the criminal enterprise.

68.     Defendant, Steven GREENE, on information and belief, is a physician residing in Pennsylvania.  At all relevant times, he was responsible for "NovaTech University" and conducted hundreds of hours of online training promoting the Ponzi Scheme.[7]

69.     Defendant, Shirley XAVIER, is a United States citizen residing in Savannah, Georgia. At all relevant times, he served as a promoter, operator, and ambassador of the criminal enterprise, recruiting thousands of class members to invest in the Ponzi Scheme.

70.     Defendant, David SCHOMBERG, is a United States citizen residing in Israel. At all relevant times, he served as an ambassador of NovaTechFX, promoted the Ponzi scheme and recruited thousands of people to invest in the criminal enterprise.

71.     Defendant, Dr. Sean T. HUBBARD, is a neurologist residing in Cherry Hill New Jersey.  At all relevant times, he served as a team leader, ambassador, and promoter of the criminal enterprise.

72.     Defendant, Dapinulu DUNBAR, is a United States citizen residing in Miami, Florida.  At all relevant times, he served as an advisor to Cynthia Petition, the CEO of the

---

[7]   Dr. Steven Greene promoted passive income opportunities on Youtube and Facebook "Watch this video of my friend Dr. Steven Greene presenting NovaTechFX. This life changing opportunity is not to be missed." https://Youtube/NTYE06uccAs.

criminal enterprise, promoted the enterprise and is currently being investigated by the Federal Trade Commission for violations of security laws.

73.    Defendant, Ricardo ROY, is a United States Citizen with a last known address in Miami, Florida. At all relevant times, Defendant served as the technology officer for NovaTech in charge of the fraudulent enterprise.

74.    Defendant, Frantz CICERON, is a United States citizen residing in Brooklyn, New York.  He is the chief executive officer of Ciceron Frantz and associates, Inc., a corporate defendant in this action. At all relevant times, he served as a Senior Director for NovaTech raising millions of dollars from local investors.

75.    Defendant, Jean Martin ZIZI, resides in Atlanta, Georgia.  At all relevant times, he served as a Senior Director for NovaTech, LTD, and as an advisor to Cynthia Petion. He raised millions of dollars from investors in the United States on behalf of the NovaTechFX Criminal enterprise.[8]

76.    Defendant, George C. FRASER, is a United States Citizen residing in the State of Ohio. He served as a high-profile promoter for the criminal enterprise. He is a recipient of President Barack Obama Lifetime achievement award.  He used his influence and political contacts to lure thousands of people to invest in Novatech knowing it was a fraudulent scam.[9]

## C.    Corporate Defendants

77.    Defendant, AWS Mining Pty Ltd., was an Australian organization and a business name holder for Automated Web Services Mining (together "AWS Mining"). AWS

---

[8]    Defendant Zizi has a long history of participating in multiple Ponzi Schemes.  He was initially part of AWS, another Ponzi Scheme that he and defendant Cynthia and Eddy Petion participated in together with Defendant Frantz Ciceron.

[9]    Dr. George C. Fraser was a high-profile promoter of Novatech and appeared on many Youtube Video with Defendant Corie Simpson promoting Novatech, telling Cynthia Petion that she was "doing God's work" knowing fully well that Novatech was a Ponzi scheme. *See e.g.*, https://hopeglobalforums.org/speaker/george-fraser-2/.                    and https://www.youtube.com/watch?v=9YZDJLwS-c&t=1s  On the second video, Dr. George Fraser tells Cynthia Petion that she is "saving lives."

Mining was co-founded by Daniel Beduschi and Alexandre Campos and located at Level 57, MLC Centre, 19-29 Martin Place, Sydney, NSW 2000, Australia. AWS Mining appears to have ceased to exist in August 2019 and no longer owns its website domain at www.awsmining.com.

78.    Defendant, NovaTech, LTD, is a foreign corporation duly registered in Saint-Vincent and the Grenadines, and all relevant times operated a website (www.NovaTech.com and www.Nova-TechFx.com ) which served as the vehicle for the fraud. NovaTech LTD was created by Cynthia and Eddy Petion as way to launder money.

79.    Defendant, NovaTech Ltd ("NovaTech"), is a Saint Vincent and the Grenadines entity formed on September 26, 2019, with its principal place of business in Royal Palm, Florida. NovaTech represented itself as a crypto asset and Forex trading platform. It operated under the domain name: Novatechfx.com.  NovaTech LTD was created by Cynthia and Eddy Petion as a vehicle to perpetrate the Ponzi Scheme and launder money generated by the scheme. Nova Tech's registered agent was Wilfred Services Ltd. with a mailing address of P.O. Box 1510, Suite 305, Griffith Corporate Centre, Beachmont, Kingstown, St. Vincent and the Grenadines.

80.    Defendant, Novatech Advisors, LLC, is a Florida limited liability company formed on August 10, 2019, with its principal place of business in Royal Palm, Florida. The company is controlled by Eddie Petion, Cyntia Petion and Deborah Brazil.

81.    Defendant, Nova Pay, LLC is a Florida Corporation, controlled, managed and operated by Defendants Cynthia Petion, Ricardo Roy and Eddy Petion with offices in Boca Raton. Nova Pay was incorporated by the Petions to launder money from the Ponzi Scheme.

82.    Defendant, NovaTrading OÜ, is an Estonian company with a principal place of business at Vana-Veerenni 4, 10135 Tallinn, Estonia. The company is owned and operated by Cynthia Petion and Eddy Petion.

83. Defendant, Frantz Ciceron & Associates, Inc., is a New York company located in Brooklyn, New York, and all relevant times to this action, Defendant, Frantz Ciceron & Associates, Inc., served as a front to raise money from local investors on behalf of NovaTech, LTD.[10] This Defendant became a high-profile promoter in the Haitian American community in Brooklyn recruiting thousands of people who in turn recruited others to join in the scheme.

84. Defendant, Crowned-One Ministry, is a religious organization duly organized under the laws of the state of Oklahoma, with its headquarters in the City of Oklahoma. At all relevant times, Defendant was a distributor and promoter for the NovaTech Criminal enterprise under ID Number: 186832. Reverend Stevan Cuningham is the pastor of the ministry. He used his influence to convince thousands of people to join the scheme and recruit others as well.

85. Defendant, Integrity Accounting Services, Inc., is a corporation duly organized in the state of New York. At all times hereinafter mentioned, this Defendant was an ambassador for the Ponzi Scheme. This corporation is owned and controlled by Defendant, Jean Zizi

86. Defendant, MT Solutions, is a New York Limited Liability company. At all times hereinafter mentioned, this Defendant was an ambassador of the Ponzi Scheme, and promoted the scheme by recruiting thousands of people to participate.

87. Defendant, Sera Orion, LLC, is limited liability company duly registered in the State of Florida, control and operated by Defendant, Kyle Farman. At all times hereinafter mentioned, this Defendant participated in the Ponzi Scheme by recruiting thousands of people to invest in the criminal enterprise.

88. Defendant, the Catholic Diocese of Florida, is part of the Catholic Church and is a religious organization. At all times hereinafter mentioned, this Defendant through at least one nun (Sister NYIRENDA) participated in the Ponzi Scheme by allowing Diocese employees to recruit members of the church to invest in the Ponzi Scheme.

---

[10]  This company is owned and controlled by Defendant, Frantz Ciceron.

89.     Defendant, Society of St. Agnes, is a non-profit organization owned and operated by the Catholic Church. This Defendant is located in Lakeland, Florida. At all times hereinafter mentioned, the Defendant allowed sister NYIRENGA to use her position in the church as a trusted religious leader to recruit members of the church to invest in the Ponzi Scheme.

90.     Defendant, Trinity of Success Club, Inc., ("Trinity of Success") is owned by Defendant, Zizi and is registered in the State of Georgia. Defendant, Trinity of Success, had an account with NovaTech and held the highest ceremonial title of Two-Star Ambassador to reflect Defendant, Zizi's level of success in recruiting new investors to sign up under the account of his entity. Defendant, Trinity of Success, received funds from NovaTech for the benefit of Defendant, Zizi. Defendant, Trinity of Success, is Defendant, Zizi's alter ego.

91.     Defendant, Positive Vision Marketing, LLC ("Positive Vision Marketing") is owned by Defendant, Zizi and is registered in the State of Georgia. Defendant, Positive Vision Marketing, had an account with NovaTech and held the ceremonial title of One-Star Ambassador to reflect Defendant, Zizi's level of success in recruiting new investors to sign up under the account of his entity. This Defendant received funds from NovaTech for the benefit of Defendant, Zizi and is Defendant Zizi's alter ego.

## III.    JURISDICTION AND VENUE

92.     This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

93.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiff and the Defendants.

94.    This Court has jurisdiction over Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

95.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

96.    Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts her affairs in this District given each defendant's participation in the NOVATECHFX Enterprise, as alleged above.

## III.    FACTUAL ALLEGATIONS

**A.    AWS Mining Fraudulent Scheme**

97.    Defendant, AWS Mining, was incorporated in Australia in or around May 2017, by foreign nationals Daniel Beduschi and Alexandre Campos. AWS Mining's website (https://awsmining.com) invited investors to "[e]arn daily passive income by participating in one of the world's biggest and most profitable crypto mining operation (sic)!"[11]

98.    Defendant AWS Mining, together with each of the Individual Defendants listed above, promoted AWS Mining's cryptocurrency mining contracts which entitled investors to profits from cryptocurrency purportedly mined with the mining power they purchased.

99.    AWS Mining promised to distribute monthly mining profits to investors and stated on its website that "your contract is guaranteed to 200% return of purchase price."

100.    Until returns equaled 200%, investors were able to withdraw their monthly payments, but the original investment was locked on AWS Mining's platform and could not be withdrawn.

---

[11]    A mining operation, also known as a mining farm, is a facility which hosts and maintains specialized computers and hardware for mining cryptocurrency.

101.    Defendants targeted unsophisticated investors, many of whom did not know about cryptocurrency, its volatility, or the risks involved.

102.    Defendants helped these investors, especially the elderly, to create email accounts, open accounts with a cryptocurrency platform, such as Gemini or Coinbase, purchase cryptocurrency on those platforms, and to transfer cryptocurrency from a platform to AWS Mining.

103.    All investors who purchased mining contracts were eligible to recruit new investors, receive a 10% direct referral bonus for each new investor recruited and each new investment made, and additional recruitment bonuses.

104.    Defendants Petion each became top promoters in AWS Mining with the highest ceremonial title of "President," having recruited 200,000 investors who collectively invested at least $10 million.

105.    Defendants Petion enticed others to recruit new investors by advertising that payments for recruitment were much more lucrative than mining profits.

106.    The structure of the scheme was such that the referral bonuses, based on each of the investor's own efforts and profiting from the recruited investments, played a primary role in each investor's own anticipated success and profitability.

107.    In a May 21, 2018, YouTube video titled Full Interview with AWS VP Cynthia Petion, Defendant, Cynthia Petion, bragged: "I [bought a] $2,000 plan, it's made over $5,000 in mining bonuses … but it's made $300,000 in six months' time in the affiliate [recruiting] program." The video was viewed hundreds of times.

108.    Defendant, AWS Mining, prepared slide decks it made available through its investor portal on its website. These slide decks contained promises about AWS Mining returns, including 15% monthly returns, return of original investment in six months, and 200% returns in 13-14 months.

109.    Defendants, Petion and Ciceron, Corbett and Zizi, presented these slide decks to prospective investors, repeating the misrepresentations contained therein.

110.    For example, in a YouTube video dated May 21, 2018, titled Full Interview with AWS VP Cynthia Petion, Defendant, Cynthia Petion, called AWS Mining a "virtual ATM" and promised that "people can make [a] ridiculous amount of passive income" including a monthly return of 15% and a 200% return on investment. She stated that "with a $40 investment you can literally go on to make hundreds or thousands of dollars a week, or in a day, it's totally in your control."

111.    On February 17, 2019, Defendant, Cynthia Petion, presented the AWS Mining slide deck to prospective investors at a conference organized by Defendant, Ciceron in Brooklyn, New York, promising a monthly return of 15% and a 200% return on investment.

112.    On or around February 17, 2019, Defendant, Cynthia Petion,, also hosted a meeting at her house in West Islip where she promoted AWS Mining.

113.    Defendant, Eddy Petion, presented the AWS Mining slide deck to new investors, including in New York on or around March 28, 2019, promising monthly returns of 15% and a 200% return on investment.

114.    Defendants Petion recruited Defendant, Corbett, into AWS Mining in 2017. By spring of 2019, Defendant Corbett received the ceremonial title of Director with his downlines investing at least $500,000.

115.    Defendant, Corbett, presented the AWS Mining slide deck during Zoom meetings he organized with potential investors, where he promised a monthly return of 15% and a 200% return on investment.

116.    Defendant, Corbet,t participated in a WhatsApp group chat with his downlines where he signed his WhatsApp messages with "AWS MINING [IS] REAL MINING NOT FAKE MINING!!!!" (emphasis in original).

117.    Defendant, Ciceron, joined AWS Mining in 2018 and by February 2019 received the ceremonial title of Director with approximately 200 investors in his downline, mostly from Haitian communities in New York and New Jersey. Collectively his downlines invested at least $900,000 into the AWS Mining scheme.

118.    Defendant, Ciceron, advertised AWS Mining in the Creole language on his weekly business segments on Haiti Premiere Class television in 2018 and 2019.

119.    On October 14, 2018, Defendant, Ciceron, told his viewers about a mining company which gave investors "a rate of 15% per month," and doubled their money in 14 to 15 months. He repeated those same statements in his segment on January 6, 2019. When investors contacted Defendant, Ciceron, about the investment, he directed them to AWS Mining.

120.    Defendant, Ciceron, also met with investors in person in his Brooklyn office and presented the AWS slide deck to them, including the slides promising a monthly return of 15% and a 200% return on investment.

121.    Defendant, Ciceron, helped some investors open an account with cryptocurrency trading platforms and took them to their bank to help them transfer funds to these platforms to facilitate their investments in AWS Mining.

122.    Defendant, Zizi, promoted AWS Mining to investors through emails and Zoom calls, where he presented slides promising a monthly return of 15% and a 200% return on investment.  Defendant, Zizi, recruited at least ten to fifteen investors into AWS Mining directly and those investors recruited additional investors.

123.    Defendants' Petion, Corbett, Zizi, and Ciceron's promises that AWS Mining generated a 15% monthly return and 200% return on investments in 13 to 15 months from mining cryptocurrency, as well as AWS Mining's guarantee of 200% return on investment on its website, to which these Defendants referred investors, were false.

124.    These promised investment returns were not guaranteed, and many investors lost money.  While repeatedly promising consistent high returns, Defendants failed to inform investors about the risks inherent in their investment, including that cryptocurrency is extremely volatile, that its price is subject to fluctuations affecting the value of mining rewards, that miners face stiff competition, that mining is expensive and can be unprofitable, or that they could lose their entire savings in the AWS Mining scam.

125.    In April 2019, Defendant AWS Mining informed investors that it terminated "unprofitable" mining contracts. Most contracts were deemed "unprofitable," and AWS Mining stopped making the promised monthly payments to investors and refused to return their original investment.

126.    According to Defendant, Cynthia Petion, AWS Mining was using outdated mining machines despite promising to use "the newest hardware," and ran out of money because it "paid too high revenues for too long."

127.    In a January 10, 2023, YouTube interview with Ponzi Patrol, Defendant Corbett admitted that AWS Mining's contract terms "basically … guaranteed x amount of money which they shouldn't have."

128.    Yet, Defendant AWS Mining blamed the termination of its contracts on a purported fire which it claimed had burned down a Paraguay mining farm. In dramatic, and coincidental, fashion while in the middle of giving an AWS Mining presentation in New York, Defendant, Eddy Petion, received a phone call informing him about the supposed fire.

129.    A similar scene occurred a few days later at a cryptocurrency conference in Dubai, attended by Defendants Eddy Petion and Corbett, where a cellphone video of the purported fire was shown. Defendant, Eddy Petion, acted surprised by the news of the fire even though he had already heard and announced it days earlier in New York.

130.    Investors and even some promoters accused Defendant, AWS Mining, of breaking promises of guaranteed returns. As one promoter wrote on April 30, 2019, in a WhatsApp group chat with other AWS Mining promoters, "We always sold AWS on the basis of an ROI of 200%.  Profitability was not in question. I don't think we'd have grown the teams we have had we quoted 'as long as its profitable.'"

131.    After Defendant, AWS Mining, failed, investors turned to top promoters for answers.  An investor from Defendant, Corbett's, WhatsApp group chat wrote: "James, we ask you all this question cox you use to tell us AWS real Mining not Fake Mining" (sic).

132.    Defendants Petion, Corbett, Zizi, and Ciceron disclaimed any responsibility for misleading investors, claiming that they themselves were merely investors in the scheme. Yet Defendants Ciceron, Zizi, and Corbett made tens of thousands, and Defendant Cynthia Petion made $3 million from AWS Mining, mostly from recruitment bonuses, while most investors recruited by them lost almost the entirety of their investments.

133.    For example, a retiree from Stamford, CT, who learned about AWS Mining from Defendant, Ciceron's, segment on Haitian TV, met Defendant, Ciceron, in his Brooklyn office to consult about the advertised AWS Mining investment. During the meeting, Ciceron advised him that AWS Mining was a better investment than his 401K, with higher returns and a guaranteed 200% return on investment. The investor moved almost $38,000 of his retirement savings and $6,000 of his wife's savings into AWS Mining in January and February 2019. The investor also attended a Brooklyn meeting on February 17, 2019, where Cynthia Petion presented about AWS Mining. The investor was able to withdraw $5,800 in March of 2019 (13.5% of his total investment) but was unable to withdraw anything more thereafter. As a result of AWS Mining's collapse, he and his wife lost the remainder of their investment.

134.    A New York investor who invested $119,000 was similarly promised a 200% return and 12% monthly payments. He received two monthly returns in February and March

of 2019, but none thereafter, and on June 1, 2019, was informed via email that his mining contract was cancelled. He lost the rest of his investment.

135.    Another New York family of a retired school bus driver on disability invested approximately $200,000 into AWS Mining and were told that the money would double in 14-16 months. The family received monthly payments on their investment until April 2019 and lost the remainder.

136.    Defendant, Ciceron, summarized a private conversation between himself and Defendant, Cynthia Petion, about the failure of AWS Mining as follows:

> So I did ask her in the meeting who was the genius behind the compensation program? If they're paying ten percent to almost everybody, how did they expect the company to survive because if you take a hundred from me and in 13 months you're going to give me two hundred, but you pay almost everything in commissions, so what was going to work and how that was going to work? And she said …they were competing against a lot of scams, so they had to come up with something more appealing to the masses in order to sell AWS Mining. And I'm like, oh, okay, then this was destined to fail.

## B.    Defendants Conceived A New Fraudulent Novatech Investment Scheme

137.    In the wake of the AWS Mining's collapse, in June 2019, Defendants Petion conceived of a new fraudulent scheme of their own called "NovaTechFX" or "NovaTech," which they launched in August of 2019. Having learned from AWS Mining, they advertised returns averaging 2-4% per week from Forex and cryptocurrency trading, along with lucrative returns for recruiting new investors. NovaTech re-victimized many investors who joined hoping to recover their losses from AWS Mining.

## C.    How the Novatech Ponzi Scheme Worked

138.    The NovaTech Enterprise Ponzi Scheme was created as a pyramid, where those who came first and invested recruited others to invest and profited from the investments of

those they brought in. Recruiters received 10 percent of the money invested. And as they bottom-line grew, investors made more and more money from the investors they brought in, who also recruiting others.

139.    For example, Person A invested a sum money and was told by the Defendants to recruit three people who would also invest under them as a pyramid as shown below:



140.    Once these three people invested their money, Person A received 10% of the money invested. As more people signed up and became investors, the initial investors or head of the team made more money at the expense of later investors.

141.    The structure of the pyramid scheme was such that the referral bonuses, based on each of the investor's own efforts in recruiting others to invest and profiting from the recruited investments, played a primary role in each investors own anticipated success and profitability.

142.    The Plaintiff invested money in the NovaTech Enterprise Ponzi Scheme upon the false representations and the coercions of the individual defendants.

143.    Each investor had an online crypto account through which was designed to lead them to believe that their investment returns were growing on a daily basis, but each account depicted false earnings.

144.    The collected funds were never actually invested as represented and the fraudulent scheme continued until NovaTech Enterprise Ponzi Scheme collapsed at which time the investors began to realize that had been scammed.

**D.    The Structure of the Novatech Scheme**

145.    Defendants Petion and Defendant Ricardo Roy Sr. (who is Defendant Cynthia Petion's brother and NovaTech's Chief Technology Officer ("CTO")) were the founders and the "visionaries" behind NovaTech.

146.    Defendants Petion lured investors by promising profits from trading their cryptocurrency and touting themselves as "some of the Industry's Top Leading Professionals worldwide."

147.    According to the NovaTech website, Defendant, Cynthia Petion, was "responsible for creating, planning, implementing and integrating the strategic direction of [NovaTech]…and overseeing the company's overall operations," including NovaTech's finances.

148.    Defendant, Cynthia Peition, however, did not disclose to investors her financial history, including her personal bankruptcy in 2011 and various lawsuits filed by creditors due to her failure to pay her debts between 2017 and 2019.

149.    According to the NovaTech website, Defendant, Eddy Petion, oversaw "daily operations and trading for client accounts" including managing "investment and trading programs," despite having no experience in trading client assets.

150.    Defendant, Ricardo Roy Sr., was responsible for managing NovaTech's information technology and trading technology, including securing a software license for NovaTech's trading platform. He also worked with software developers on developing and maintaining the NovaTech website, which ultimately facilitated the transfer of over one billion dollars of investors' cryptocurrency to NovaTech.

151.    In furtherance of her scheme, Defendant Cynthia Petion, rebranded herself as "Reverend CEO" and filled her NovaTech videos and Zoom calls with references to religion

152.    Defendant, Cynthia Petion, proclaimed that "Jesus was … the best affiliate marketer in the world" and declared that "the idea to form Nova Tech came to me in a vision, a message from God…" and that "literally this came to me while brushing my teeth because [God] likes to speak to me when he thinks I am listening."

153.    Defendant, Zizi, reinforced the idea of Defendant, Cynthia Petion, being a "visionary" and a hero to his downlines and even likened her to Harriot Tubman freeing people from slavery:

> "Remember that NovaTech has opened the door to financial freedom for us. Cynthia had a vision that has turned into reality and has helped thousands to see the light and follow the [trading platform to financial freedom] … Cynthia is our Harriett [Tubman] and through her vision has created ways within the wilderness."

154.    Some investors learned about NovaTech during prayer meetings from trusted religious leaders. Defendants Zizi and Ciceron promoted regular prayer meetings for their NovaTech downlines under the NovaTech logo using fliers which claimed that "A team that prays together stays together & grows together." An example of one such flier is set forth below:



155.    Defendants' recruiting efforts proved highly successful and, in 2022, according to Defendant, Cynthia Petion, NovaTech doubled in size every sixty days. From August 2019, through April 2023, over 200,000 investors, including at least 11,000 from New York State, had transferred over one billion dollars in cryptocurrency to NovaTech.

156.    Defendants Petion and NovaTech operated the website (www.NovaTechFX.io) and subsequently (www.NovaTechFX.com). Defendants Petion drafted the contents of the NovaTech website which advertised NovaTech as a "Forex & Crypto Trading Platform" that promised "Weekly Payouts."

157.    After opening an account with NovaTech through its website, investors could invest any amount of cryptocurrency for "trading," but NovaTech incentivized them to invest more by waiving monthly service fees: investments from $99 to $24,999 incurred a $25 monthly fee, while investments over $25,000 incurred no monthly fee.

158.    The dollar amount of cryptocurrency deposited by investors with NovaTech was reflected in their "trading" accounts on the NovaTech investor portal accessed through the NovaTech website.

159.    In actuality, however, NovaTech directed investors through its website to send their cryptocurrency, intended for trading by NovaTech, to a payment processor that did not trade cryptocurrency for NovaTech but merely stored it in NovaTech's wallets.

160.    Defendants represented to investors that NovaTech pooled their cryptocurrency and that its "experienced team of traders" traded it on NovaTech's own trading platform.

161.    NovaTech's trading platform was a trading software called "White Label MetaTrader 5" which NovaTech licensed from Prime Brokerage Services, doing business as B2Broker ("B2Broker").

162.    NovaTech exercised total discretion over investor cryptocurrency and promised investors consistent passive income and that they could "earn without having to trade…No experience needed."

163.    Defendants Petion decided how much, if any, investor cryptocurrency was traded on the NovaTech trading platform.

164.    NovaTech represented that it calculated its trading profits on a weekly basis and that it retained 30% of the weekly profits as a "performance fee" and divided the remaining 70% among investors.

165.    Every Friday on its investor portal NovaTech posted ROI purportedly derived from weekly trading profits for the prior week.

166.    Every Saturday, NovaTech posted recruitment bonuses on the same investor portal, which NovaTech claimed were paid out of its 30% share of the weekly trading profits.

167.    Weekly ROI and commissions for recruiting new investors were added on NovaTech's investor portal into investors' "bonus" accounts.

168.    Investors could reinvest their funds from the "bonus" accounts by moving them into their "trading" account, known as "compounding," or withdraw them into an outside cryptocurrency wallet.

169.    Starting in the fall of 2022, investors could choose to automatically direct their weekly bonus into their "trading" account.

170.    Defendants' key selling point was that, unlike other similar investment schemes, including AWS Mining, NovaTech allowed investors to withdraw any amount of their funds, including their original investment, at any time. Cynthia Petion touted that "access to your capital" was "the crown jewel of NovaTech."

171.    NovaTech promoters received referral bonuses for recruiting new investors. They were also given ceremonial titles that reflected the amount of money they convinced others to invest. These ceremonial titles ranged from Platinum Associate, with $25,000 in downline investments to 2-Star Ambassador with downline investments of $100,000,000.

172.    The structure of the scheme was such that the referral bonuses, based on each of the investor's own efforts and profiting from the recruited investments, played a primary role in each investor's own anticipated success and profitability.

173.    Defendants used social media such as Facebook, YouTube, WhatsApp, Telegram groups, and Zoom meetings, in-person meetings, and other means to promote NovaTech.

174.    Defendants Petion created slide decks describing the NovaTech investment and marketing scheme and uploaded them to the NovaTech investor portal on the NovaTech website together with various other information about the company, including the weekly performance reports.

175.    Defendants Zizi, Corbett, and Ciceron used these slide decks and the weekly performance reports to recruit new investors without modifying them and presented them "as is" because, according to Defendant, Cynthia Petion, "how you say things and the verbiage that's used is extremely important." During their training sessions aimed at recruiting new

investors, Defendant Ciceron, Zizi, and Corbett repeated all the misstatements contained in the slide decks.

176.    Defendant, Zizi, one of the top promoters of NovaTech, opened an account in his name and two additional accounts for the entities he owned and controlled, and strategically placed recruited investors under his three accounts to maximize his recruitment bonuses. Defendant, Zizi, received all the ROI payments and recruitment bonuses awarded to his entities by NovaTech.

177.    Through this design, his entity Defendant, Trinity of Success, became a Two-Star Ambassador, Defendant, Positive Vision Marketing, became a One-Star Ambassador, and together with the account in his own name, they signed up approximately 140,000 investors into NovaTech, including investors from New York. These investors deposited billions of dollars' worth of cryptocurrency with NovaTech.

178.    Defendant, Zizi, operated a WhatsApp chat group called Trinity of Success, which included approximately 500 investors in his downline, many of whom, in turn, operated their own WhatsApp chat groups, passing on information, Defendant Zizi, conveyed to them through his chat.

179.    Defendant, Ciceron, was recruited by Defendant, Zizi, and quickly became one of the top promoters himself. Like Defendant, Zizi, Defendant, Ciceron, opened an additional account for the entity he owned and controlled, Defendant Kings Multi Services Agency, which became a Two-Star Ambassador. Defendant, Ciceron, received all the ROI payments and recruitment bonuses that NovaTech awarded to Defendant, Kings Multi Services Agency.

180.    Together with his entity, Defendant, Ciceron, recruited over 60,000 investors into NovaTech. Defendant, Ciceron, operated a WhatsApp chat for his group where he communicated with his downlines. Defendant, Zizi, received indirect referral bonuses for each of Defendant Ciceron's recruits.

181.    Defendant, Corbett, had over 100,000 investors in his downline, with whom he communicated through his weekly Zoom training sessions.

182.    In 2021 and 2022, Defendants Zizi and Ciceron hosted Zoom meetings for new investors twice a week in English and Creole, where they presented NovaTech's slide deck and all the misstatements contained therein. These Zoom meetings were recorded and circulated on Defendant, Zizi's, WhatsApp group chat.

183.    Defendants Zizi and Ciceron used fliers with their likeness, like the one below, to advertise their Zoom meetings:



184.    Defendant, Zizi, promised to teach his downlines during these weekly Zoom meetings "how to become a multi-millionaire."

185.    Similarly, Defendant Ciceron, advertised these Zoom meetings by promising to "do a SPECIAL TRAINING ON HOW TO MAKE IT TO 2 STAR AMBASSADOR AND BECOME A millionaire." He called on his team to invite new investors:

> "IF YOU WANT TO BUILD A BIG TEAM, YOU MUST
> INVITE!!! IF YOU WANT TO BECOME FINANCIALLY FREE,
> YOU MUST INVITE!! IF YOU WANT TO BECOME THE 1ST
> MILLIONAIRE IN YOUR FAMILY, INVITE, INVITE … NEW
> GUESTS TO THE MEETINGS…IF YOU WANT TO LEAVE A
> LEGACY, YOU MUST INVITE!!!" (emphasis in original).

186.    From March 2021 through the end of 2022, Defendants Zizi and Ciceron also
held a weekly session called "University of Trinity of Success," which they advertised together
with the NovaTech training sessions.  The goal of this "crypto University" was to "change lay
person (sic) into educated crypto folks" and to "educate" investors about NovaTech.

187.    For example, Defendant Zizi, stated in his WhatsApp chat to his downlines on
August 21, 2021:

> "One leader asked us last week during our University class, how to
> maximize the potential with NovaTech? We will be answering the
> multiple facets of this question today and tomorrow in our
> University classes. Bring your new recruits to learn. Remember
> [LEARN=L+EARN]."[12]

**E.    Defendants Made Material Misstatements and Omissions to Promote Novatech as
a Legitimate Business**

188.    Defendant, Cynthia Petion, was aware that trading cryptocurrency on behalf of
investors required registration and shared with AWS Mining promoters in an April 15, 2019,
WhatsApp chat that "SEC is not a fan of our business model. They don't like that we sell in
pools, and that AWS controls which coins to mine, how much, etc."

189.    To assure investors that their new scheme was legitimate and compliant with all
applicable laws, Defendants made material misstatements about NovaTech's licenses and
registrations.

---

[12] Defendants Zizi and Ciceron did not possess a special charter from the legislature or the regents of the State of
New York to use the name "university."

190.    From 2020 through January 2022, NovaTech's slide deck stated that NovaTech was a "legally registered Hedge Fund company."

191.    Defendant, Cynthia Petion, continued to misrepresent NovaTech as a registered hedge fund through at least June 22, 2022, including in a January 12, 2022, YouTube video NovaTech New Year Zoom, and a June 22, 2022, YouTube video NovaTechFX CEO Cynthia Petion Breaks It Down.

192.    Defendants Zizi, Ciceron, and Corbett presented the same NovaTech slide decks to potential NovaTech investors during their weekly Zoom meetings and misrepresented that NovaTech was a registered hedge fund.

193.    Additionally, in a video uploaded on YouTube on February 20, 2022, titled James Corbett on NovaTech, Defendant, Corbett, stated that NovaTech was a "licensed hedge broker." That video was viewed at least 1,700 times.

194.    Defendants' statements that NovaTech was a "registered hedge fund company" or a "registered hedge fund broker" or a "licensed hedge fund broker" were materially false and misleading.

195.    NovaTech had no licenses or registrations to solicit investments or to trade on behalf of investors and was not registered with FINRA, the SEC, or any state securities regulators.

196.    Defendant, NovaTech, and Defendants Petion also misrepresented NovaTech Advisors, LLC's registration with the Florida Secretary of State as a "license" to do business as an investment adviser or as a financial advisor.

197.    In a 2019 YouTube video titled NovaTech Leader Discussion with Early Leaders, Defendant Cynthia Petion stated that "we have the U.S. entity which is NovaTech Advisors and that is … what makes us a hedge fund company which allows us to be able to give financial advice."

198.    From at least October 23, 2020, through July 16, 2022, NovaTech's website falsely represented that NovaTech Advisors, LLC was registered in Florida as an "Investment Advisor."

199.    However, the registration with the Florida Secretary of State was not a "license" to do business as an investment adviser or a financial advisor. NovaTech Advisors, LLC was not registered as an investment advisor in Florida or anywhere else and Defendants' statements to the contrary were false.

200.    In September 2022, after NovaTech raised hundreds of millions of dollars, Defendant Cynthia Petion instructed promoters that, while NovaTech started as a hedge fund in 2019, it was no longer to be called a "hedge fund" because it did not "qualify" investors or collect their information. Defendant, Cynthia Petion, also told investors that NovaTech was to be called a "trading advisor," while assuring investors that this change in title did not represent a change in NovaTech's operations.

201.    Defendant NovaTech and Defendants Petion also misrepresented that NovaTech was licensed to trade cryptocurrency in the U.S. and Forex abroad. For example, in a January 5, 2020, YouTube video titled NovaTech CTO Interview on Trading Forex & Crypto, posted on the NovaTech Official YouTube channel, NovaTech's CTO (Defendant, Ricardo Roy Sr.) when interviewed by Defendants Petion, falsely stated that NovaTech was licensed to trade cryptocurrency in the U.S.

202.    Defendants Petion failed to correct Defendant, Ricardo Roy Sr.'s, misrepresentations and caused the video to be posted online. This video was viewed over 64,000 times.

203.    Defendant, Corbett, similarly stated in a February 20, 2022, YouTube video titled James Corbett on NovaTech that:

> NovaTech is licensed to do trading for you here in the United States in crypto, not Forex. The Forex license they have is for international people to get involved with the Forex

trade and they're licensed for Forex trading in The Grenadines and in St. Vincent's and in the United States they're licensed to do crypto trading as a MetaTrader 5 crypto hedge Broker.

204.    These statements were false. NovaTech was not licensed or registered with any state or federal securities or commodity regulators in the U.S. to trade cryptocurrency for investors.

205.    Nor was NovaTech "licensed" to trade Forex abroad. Nova Tech Ltd was registered as a "business company" in St. Vincent and the Grenadines.

206.    The FSA of St. Vincent and the Grenadines does not license companies to engage in Forex trading or brokerage and did not issue Forex or brokerage licenses to NovaTech.

207.    NovaTech was not licensed or registered to trade Forex elsewhere. Statements that NovaTech was licensed to trade Forex outside of the U.S. were false.

## F.    Defendants Made Material Misrepresentations About Training and Profits at Novatech

208.    Defendants advertised NovaTech as a trading platform that generated profits from trading investors' cryptocurrency.  But that was false.

209.    In reality, from August 2019 through April 2023, NovaTech took in over one billion dollars' worth of investor cryptocurrency but the vast majority of it remained in NovaTech's wallets with the payment processor.

210.    Only a tiny fraction, $26 million, was ever deposited by Defendants Petion with the NovaTech trading platform for trading.

211.    The ROI posted weekly to investors' accounts was entirely fabricated by Defendants Petion.

212.    In Ponzi scheme fashion, the "profits" and recruitment bonuses NovaTech paid to investors did not come from trading profits but from deposits of other investors.

### G.    Defendants Misrepresented Novatech's Trading Profits

213.    Defendants represented that NovaTech paid out returns on investments from the weekly profits it generated primarily by trading investor cryptocurrency on the NovaTech trading platform.

214.    For example, in a YouTube video dated April 7, 2021, titled ROI Training, posted on NovaTech Official channel, Cynthia Petion stated that weekly profits or ROI were "based on trading activity taking place during the week." That video was viewed thousands of times.

215.    Defendant, Zizi, similarly stated in a January 21, 2022, YouTube video titled NovaTech FX: Presentation with Dr. Zizi and Pastor Bob, that "we only get paid on profit made." This video was viewed over a thousand times.

216.    Defendant, Corbett, also stated in a May 12, 2022, video titled Why NovaTech is the BEST opportunity in under 5 minutes by Global Ambassador James Corbett that NovaTech "profits are generated through the… hedge fund…"

217.    In a January 10, 2023, YouTube interview with Ponzi Patrol, Corbett similarly stated that NovaTech is "paying out of the trade profits that they make each week."

218.    NovaTech promised that payments for recruiting new investors would come from the company's share of the weekly trading profits. According to Defendant, Zizi's, YouTube video titled NovaTech FX: Presentation with Dr. Zizi and Pastor Bob, NovaTech "takes a percentage of the trading generated every week" to pay for recruiting new investors.

219.    Throughout the NovaTech scheme, Defendants emphasized consistency of returns despite such consistency being at odds with live trading, especially in volatile cryptocurrency and Forex markets. In an April 7, 2021, YouTube video titled ROI Training, Defendant Cynthia Petion explained that "our practice is to make sure that over a period of time that you have some steady progression of income or profit."

220.    Similarly, in a January 17, 2023 NovaTech New Year 2023 Zoom YouTube video, Defendant, Cynthia Petion, explained that "we pay consistently only because people like consistency" and that NovaTech makes sure "that we provide profits so that people don't think … there's something wrong."

221.    Defendants Ciceron, Zizi, and Corbett similarly marketed consistent returns, promising investors weekly payouts, and downplaying any risk of loss. A flier promoting an October 18, 2020, Zoom meeting for NovaTech featuring Defendants Zizi and Ciceron called on prospective investors to "discover how to … earn DIVIDENDS every FRIDAY" (emphasis in the original).

222.    On March 24, 2021, Defendant, Zizi, sent a WhatsApp chat to his downlines, promising weekly "Friday PAY" "in your sleep" (emphasis in the original).

223.    In a WhatsApp group chat on January 27, 2022, Defendant Zizi quizzed his downlines: "How do I make 2500 a week…if I don't want to sponsor anyone?" One investor replied: "The answer is easy, invest $100,000 in average of 2.5% that will get you $2500 a week." Zizi responded: "Wow! Great! The group is learning. Fabulous…That is $10k a month. Halfway to becoming financially independent."

224.    Defendant, Ciceron, stated in a January 21, 2022, YouTube video titled NovaTech Fx: Presentation with Dr. Zizi and Pastor Bob, that "we always [receive] two to three [percent] and high threes, low threes, and when the market is bad too" and "we have never had even one negative return."

225.    Defendant, Corbett, similarly stated in a February 2, 2022, YouTube video titled James Corbett on NovaTech, that NovaTech paid "two to four percent roughly each week," that NovaTech had never had losses, that upon investing, "you're immediately successful, never in the red, always in the black," and that "in this program everybody generates a profit day,

226.    Similarly, in a January 5, 2020, YouTube interview titled NovaTech CTO Interview on Trading Forex & Crypto, NovaTech's CTO stated that while a loss of investment in NovaTech "is always possible, the probability is highly unlikely.

227.    NovaTech publicized fake performance reports depicting purported weekly trading profits on the investor portal on its website.

228.    Below is an example of a performance report announcing 3.3% ROI for the week ending September 30, 2022. The bar graph depicts only positive monthly returns ranging from 7.7% to 16% between February 2022 to September 2022, while the chart shows purported weekly trading profits for January 2022 to September 2022, again with only positive returns.



Sep 30, 2022 - 3.3%
Past performance not indicative of future earnings.

229.    Defendants advertised that in over three years, NovaTech had never had even one losing week.

230.    From October 2, 2020, through November 19, 2021, NovaTech reported that no trading week yielded profits below 2.14%.

231.    During 2022, NovaTech continued to publicize weekly profits averaging 2.84% yielding an annual return of 147% as compiled and disseminated in January 2023 by one promoter and depicted below:

| JAN | % | % Comp | FEB | % | % Comp | MAR | % | % Comp |
|---|---|---|---|---|---|---|---|---|
| Jan 07 | 2.36% | 102.36% | Feb 04 | 3.01% | 115.43% | Mar 04 | 3.07% | 128.98% |
| Jan 14 | 4.10% | 106.56% | Feb 11 | 3.14% | 119.05% | Mar 11 | 3.21% | 133.12% |
| Jan 21 | 3.25% | 110.02% | Feb 18 | 3.30% | 122.98% | Mar 18 | 3.45% | 137.71% |
| Jan 28 | 1.85% | 112.06% | Feb 25 | 1.75% | 125.13% | Mar 25 | 3.18% | 142.09% |
| **APR** | **%** | **% Comp** | **MAY** | **%** | **% Comp** | **JUN** | **%** | **% Comp** |
| Apr 01 | 2.98% | 146.32% | May 06 | 2.79% | 168.43% | Jun 03 | 3.06% | 182.15% |
| Apr 08 | 1.85% | 149.03% | May 13 | 0.65% | 169.52% | Jun 10 | 2.97% | 187.56% |
| Apr 15 | 2.85% | 153.28% | May 20 | 1.38% | 171.86% | Jun 17 | 3.14% | 193.45% |
| Apr 22 | 3.71% | 158.96% | May 27 | 2.84% | 176.74% | Jun 24 | 2.87% | 199.00% |
| Apr 29 | 3.08% | 163.86% | | | | | | |
| **JUL** | **%** | **% Comp** | **AUG** | **%** | **% Comp** | **SEP** | **%** | **% Comp** |
| Jul 01 | 4.03% | 207.02% | Aug 05 | 3.64% | 244.13% | Sep 02 | 3.26% | 275.40% |
| Jul 08 | 3.27% | 213.79% | Aug 12 | 3.12% | 251.74% | Sep 09 | 3.10% | 283.94% |
| Jul 15 | 3.30% | 220.85% | Aug 19 | 2.85% | 258.92% | Sep 16 | 3.08% | 292.69% |
| Jul 22 | 3.19% | 227.89% | Aug 26 | 3.01% | 266.71% | Sep 23 | 2.78% | 300.82% |
| Jul 29 | 3.36% | 235.55% | | | | Sep 30 | 3.30% | 310.75% |
| **OCT** | **%** | **% Comp** | **NOV** | **%** | **% Comp** | **DEC** | **%** | **% Comp** |
| Oct 07 | 3.26% | 320.88% | Nov 04 | 2.73% | 358.97% | Dec 02 | 2.68% | 393.54% |
| Oct 14 | 2.14% | 327.75% | Nov 11 | 1.18% | 363.21% | Dec 09 | 2.13% | 401.93% |
| Oct 21 | 3.40% | 338.89% | Nov 18 | 2.55% | 372.47% | Dec 16 | 2.73% | 412.90% |
| Oct 28 | 3.11% | 349.43% | Nov 25 | 2.90% | 383.27% | Dec 23 | 2.40% | 422.81% |
| | | | | | | Dec 30 | 1.25% | 428.09% |
| **YTD Total Return 147.59%** | | | | | **YTD Weekly Average 2.84%** | | | |
| **YTD Compounded Weekly Total Return 428.09%** | | | | | | | | |
| **(If you compound your investment every week)** | | | | | | | | |
| **Past performance not indicative of future earnings.** | | | | | | | | |

232.    Meanwhile, in 2022 most major cryptocurrencies plunged during what many described as the "crypto winter:" Bitcoin: -63%; Ether: -67%; Cardano: -80%; Solana: -93%; and Terra: -100%.

233.    Yet, Defendant, Eddy Petion, boasted in the January 17, 2023, NovaTech New Year 2023 Zoom, posted on the NovaTech Official YouTube Channel, that notwithstanding

market turmoil, NovaTech had never failed to pay a weekly ROI, stating that "we haven't missed one payment yet, not one, and I'll leave it at that." That video was viewed over 80,000 times.



234.    NovaTech traded a miniscule amount of the investor cryptocurrency it solicited.

235.    NovaTech also, despite claims of never having a losing week, lost $18 million in trading from August 2019 through April 2023.

236.    In a private conversation, Defendant, Cynthia Petio,n admitted to Defendant, Zizi, that while trading "wasn't always profitable…she always [had] some funds set aside for rainy days." This explanation is contrary to repeated statements to investors that weekly ROI was "based on trading activity taking place during the week."

237.    Furthermore, the returns from trading during positive weeks were so small as to be negligible compared to the amounts of cryptocurrency in investors "trading" accounts on which NovaTech promised to pay ROI.

238.    Defendants' statements about NovaTech's consistent returns from trading and profits were false. As stated above, NovaTech solicited over one billion dollars' worth of investor cryptocurrency but traded only $26 million dollars' worth of cryptocurrency from August 2019 through April 2023.

239.    The remainder of those billion dollars' worth of cryptocurrency sat in NovaTech's wallets at a payment processor and was distributed at Defendant, Cynthia Petion's, direction either as payouts to investors and bonuses to promoters or for the benefit of Defendants Petion.

240.    The graph below demonstrates the amount of investor cryptocurrency held in NovaTech's wallets with the payment processor over time as compared to the negligible amount of cryptocurrency on NovaTech trading platform over that same time, with the traded amount never exceeding $5 million at any given time and most weeks trading significantly less than $500,000.

| | |
|---|---|
| 3/24/2023 | 2.80% |
| 3/31/2024 | 2.63% |
| 4/14/2023 | 0.05% |
| 4/21/2023 | 2.68% |
| 5/5/2023 | 1.98% |
| 5/12/2023 | 0.03% |
| 5/19/2023 | 0.03% |

241.    The week ending May 5, 2023, is illustrative. NovaTech announced ROI of 1.98% for that week. NovaTech's internal ledger indicated that as of May 5, 2023, NovaTech had over $3 billion of cryptocurrency in investors' "trading" accounts from their deposits and reinvested "profits." To pay ROI on that amount, NovaTech would have needed to generate trading profits for that week (after the deduction of 30% company profit share) of over $60 million.

242.    NovaTech never made $60 million from trading in any one week (or in total trading over almost 4 years).

243.    On March 17, 2023, B2Broker terminated NovaTech's license to its trading software. As a result, NovaTech ceased what little trading it did on its trading platform. NovaTech concealed the loss of its trading platform and continued to announce weekly ROI.

244.    The ROI was entirely fabricated by Defendants Petion. They manually keyed in the fake weekly ROI percentage into NovaTech's internal accounting software, which then calculated and allocated ROI for each investor based on the balance in his "trading" account for that week.

245.    To further perpetuate the fraud, Defendants Petions made it appear that the weekly ROI was moving up and down together with the fluctuations in the performance of the cryptocurrency markets, further misleading investors into believing that NovaTech actually traded their cryptocurrency.

246.    Additionally, NovaTech did not make weekly cryptocurrency withdrawals from its trading platform to pay investors the announced weekly profits and only withdrew funds from the trading platform a handful of times in almost four years.

247.    In reality, the funds used to pay investors came from NovaTech's wallets at its payment processor and were not profits from trading but funds deposited by other investors.

**H.    Defendants Misrepresented that a Portion of Novatech's Profits Came from Cryptocurrency ATMs and Debit Card Sales**

248.    Defendants misrepresented that NovaTech had other sources of income that contributed to its weekly ROI.

249.    For example, Defendant, Cynthia Petion, informed NovaTech's top promoters in her WhatsApp group chat on September 18, 2021, that "as a hedge fund our profits are

generated from a number of different resources including multiple trading accounts, ATM Profits, [debit] card sales, and crypto investments."

250.    Defendant Zizi repeated this message to his downlines in a WhatsApp chat the same day.

251.    During the New Year Zoom 2022 meeting on January 12, 2022, Defendant, Cynthia Petition, stated that while cryptocurrency and Forex trading were the main source of profits, there were other sources of revenue, such as bitcoin ATMs in Florida, debit card transactions, and mining.

252.    The NovaTech slide deck she presented on the same day and posted on the NovaTech's investor portal similarly stated that NovaTech's products and services are "backed by ATM's, crypto and debit card transactions" in addition to cryptocurrency and Forex trading.

253.    Defendants Zizi, Corbett, and Ciceron repeated these statements every time they presented NovaTech slide decks to new investors. These statements were materially false and misleading.

254.    NovaTech made no profits from cryptocurrency ATMs. Defendants Petion, through their company SmartBit, purportedly licensed cryptocurrency ATMs, but SmartBit's website at https://www.smartbit.solutions/find-an-atm only listed one ATM location. Cryptocurrency ATMs did not generate any profit for NovaTech's monthly ROI.

255.    Yet, Defendant Corbett, stated that NovaTech's crypto "ATM" machines were "up and down the coast" of Florida and all were "generating profit for the company." Defendant Corbett has subsequently admitted to the Office of the New York Attorney General which filed a lawsuit against some of the defendants that ATM machines did not generate any profit for NovaTech.

256.    Similarly, Defendant Zizi admitted to the OAG that he did not know whether cryptocurrency ATMs generated profits.

257.    The debit card, which was supposed to be a pre-paid card funded by investors' cryptocurrency on NovaTech's platform, was launched on or around May 1, 2021, and discontinued the following month on June 28, 2021, allegedly due to problems with a vendor.

258.    The debit card also did not generate any profit for the company despite statements by Defendants Cynthia Petion, Zizi, Ciceron, and Corbett to the contrary as late as January 2022.

259.    Defendant Corbett and Zizi subsequently admitted to the OAG that the debit card did not generate any profits.

## I.    Defendants Concealed that Novatech was an Illegal Ponzi Scheme on the Verge of Collapse

260.    The walls began to close in on NovaTech when a cryptocurrency platform, Gemini, used by many investors to transfer cryptocurrency to NovaTech became suspicious in the summer of 2021 of investors' large and frequent transfers of cryptocurrency to NovaTech's payment processor.

261.    By February 2022, Gemini alerted customers that they were sending funds to "a scam called NovaTechFX," that NovaTech was a "Ponzi" scheme, that sending funds to NovaTech from Gemini was not permissible, and that any transaction with NovaTech would result in closure of the investor's account.

262.    Below is a sample of one such email to a NovaTech investor from Gemini on March 18, 2022:

> Based on our review, it appears that you have fallen victim to an investment scam by **NovaTech**. These investment scams (also known as "get rich quick" or "ponzi" schemes) can be rather elaborate…If you would like to continue with **NovaTech** despite these warnings, we kindly ask that you withdraw your funds from Gemini and please use a different platform.

263.   Gemini froze the assets of many investors who transferred and received cryptocurrency to and from NovaTech. In response, Defendant, Cynthia Petion, suggested that users whose accounts were frozen should find another platform because Gemini "doesn't stop us from doing what we do. We just find other people to do it with."

264.   Defendant, Zizi, advised his downlines to hide from the platforms that they were transferring money to NovaTech. On January 27, 2022, he wrote in his WhatsApp group chat:

> "When asked where the money is going…keep it vague…Remember we use a payment processor. They have no idea where that payment processor is sending it. You can be funding a housing project, buying a new car, or filling your swimming pool with bitcoin to swim in."

265.   Defendants Corbett, Zizi, and Ciceron went to great lengths to assure investors of NovaTech's legitimacy. They dismissed allegations that NovaTech was a fraud and a Ponzi scheme and told investors to ignore all criticism of NovaTech as "fear, uncertainty, and doubt" emanating from competitors, and some promoters appealed to the piety of their investors proclaiming, "Faith over Fear!" Investors critical of NovaTech were summarily removed from WhatsApp group chats.

266.   Defendants continuously assured investors that NovaTech was not a fraud but a "sustainable" program which paid its investors out of trading profits and not out of the funds of other investors.

267.   For example, in a January 21, 2022, YouTube video titled NovaTech FX: Presentation with Dr. Zizi and Pastor Bob, Defendant Zizi stated that "we only get paid on profit made, it's not a company that [is] paying Peter to pay Paul."

268.   In the same video, Defendant, Ciceron, advised investors "don't let people who are not here tonight attending the presentation to discourage you to say, oh it is a scam, oh it is a pyramid."

269.    Similarly, in a May 12, 2022, video titled Why NovaTech is the BEST opportunity in under 5 minutes by Global Ambassador James Corbett, Defendant, Corbett, denied that NovaTech was a fraudulent scheme, stating that

> "it's a self-sustainable vehicle, meaning that no new money coming in is going to pay out anybody in profits; the profits are generated through the… hedge fund…"

270.    In a January 10, 2023, YouTube interview with Ponzi Patrol, Corbett similarly stated that "they're not running a Ponzi scheme, I know these people, I know they're trading with the funds."

271.    Defendants' statements about sustainability of NovaTech and their denial that it was a Ponzi scheme were materially false and misleading because NovaTech was, in fact, a Ponzi scheme. Defendants Zizi, Ciceron, and Corbett had no basis for their representations to investors that NovaTech generated profits and that ROI was paid from trading profits.

272.    Defendants' statements were no more based in fact or credible than the following exchange recorded in a September 22, 2022, YouTube video, titled NovaTech CEO Cynthia Petion Answers Questions, where Cynthia Petion suggested that an FBI agent prepared a 700- page report regarding NovaTech's legitimacy and gave NovaTech a clean bill of health:

> *Promoter*:          And the bottom line of that whole story is that after 700 pages they said yes, the [FBI] investigator said this is a good company to move forward with and so we're really happy.
>
> *Cynthia Petion:*     Girl, you just messed up saying that because now everybody's gonna write support asking for that report, I don't have it, don't ask me, don't come looking for that report, I burned it … after I read the final, the bottom line, I was, like, oh, thank you for telling me what I already know.

273.    The video about the alleged but now destroyed FBI report declaring NovaTech "a good company" was viewed almost 16,000 times.

274.     In late summer and fall of 2022, various securities regulators began to sound alarms about the scheme. Mounting actions by regulators rattled investors who rushed to withdraw their cryptocurrency from NovaTech.

275.     NovaTech fell behind on payments and investors complained about long delays.

276.     On January 26, 2023, Defendant, Zizi, told investors unable to withdraw to stop "whining" because their money now belonged to NovaTech:

> For those of you with 6 months and older … saying "MY MONEY". It is no longer "YOUR MONEY", it is "THEIR MONEY". Now, you might say, I did not withdraw my seed money. Well, that is your choice, you can withdraw it if you want but you are the one who decided to leave it there…

## J.     Novatech Suspends Withdrawals From "Trading" Accounts

277.     On February 5, 2023, NovaTech announced on its investor portal that it was suspending withdrawals from "trading" accounts until April 1, 2023.

278.     This "temporary freeze" was intended to "protect our customers from making erratic decisions that can affect the integrity of our program..."

279.     Nevertheless, NovaTech assured investors that its "business model is not only strong, but completely sustainable into the unforeseeable future."

280.     NovaTech reminded investors that it "has always produced, performed, and paid every customer since its inception in June of 2019, regardless of the adversity we may have faced in every market condition in the last 4 years."

281.     On February 28, 2023, Defendant, Ciceron, stated in a WhatsApp chat to his group that "NovaTech is stronger than ever" and promised "[w]e have NovaTech for many many more years to come."

282.     Defendants' statements that NovaTech was "strong" and "sustainable" were materially false and misleading because NovaTech's Ponzi scheme was collapsing.

283.    Around this time, NovaTech's payment processor held a total of approximately $94 million in investor funds while NovaTech's internal accounting of money owed to investors was approaching $3 billion.

284.    NovaTech's unilateral suspension of withdrawals from investors' trading accounts violated NovaTech's key promise to investors that they would have access to their capital at all times.

285.    Investors voiced their immediate frustration.  One investor wrote in Defendant, Ciceron's, WhatsApp group chat:

> We did not sign up or agree to have funds in our Trading accounts being held for 90 days or any period without access to it. This is unlawful at most…I have school tuition that cannot wait until April 1st. This is horrible. Horrible. What prevents NovaTech to say the same in April for another 90 days.

286.    Defendants became increasingly desperate to secure additional investor assets.

287.    Despite that desperation, Defendant, Cynthia Petion, stated in a Zoom message to promoters on or around February 24, 2023, that NovaTech would pay new investor's requests for withdrawal before others, because such a tactic "also encourages the new people coming in to know that we are paying."

288.    Defendants' strategy worked and from February 5, 2023, through March 21, 2023, NovaTech's successfully convinced investors to deposit at least another $43.4 million with NovaTech.

289.    On April 1, 2023, the day NovaTech promised to resume withdrawals from "trading" accounts in its February 5, 2023, announcement, NovaTech instead unilaterally announced significant changes to its policies, including limiting times and amounts of bonus withdrawals and limiting withdrawals from the "trading" accounts to 5% for April, 10% for May, and 15% for June.

290.    However, to incentivize new recruitment, direct referral fees for recruiting new investors were increased by 50%. This was an effort by the Defendants to perpetuate the Ponzi scheme for as long as possible.

291.    Investors were devastated.  One investor wrote on Defendant, Zizi's, WhatsApp group chat on April 2, 2023: "This is a travesty…Hope we will have clearer directives as to when withdrawal from trading can be made...Heaven help us."

292.    Defendant, Ziz,i was dismissive, replying: "Heaven already helped you that the company decided to stay in business with some adjustments. If Heaven was not helping you, you would have seen a company closure…You make it sound like the sky is falling."

## K.    Novatech Loses its Trading Platform

293.    As a result of frequent inquiries and complaints about NovaTech, including questions from U.S. regulators, on December 1, 2022, Nova Tech Ltd.'s registered agent in St. Vincent and the Grenadines resigned.

294.    Following that resignation, on January 30, 2023, the FSA of St. Vincent and the Grenadines cancelled the registration of Nova Tech Ltd, which was the licensee of NovaTech's trading platform from B2Broker.

295.    On March 17, 2023, after learning about various actions by the U.S. and Canadian regulators and that NovaTech Ltd was no longer registered with the FSA, B2Broker terminated NovaTech's White Label MetaTrader 5 software agreement.

296.    On April 17, 2023, the owner of MetaTrader 5, issued a cease-and-desist notice to NovaTech's website host against NovaTech's use of the MetaTrader 5 trademark.

297.    After NovaTech lost its license to use MetaTrader 5 and its trading software, Defendants Petion continued to falsely market NovaTech as a "Forex & Crypto Trading

Platform" and a registered MetaTrader 5 broker through at least April 24, 2023, and failed to inform investors that NovaTech no longer had a trading platform.

## L.    Novatech Causes Devastating Losses to Investors

298.    On May 12, 2023, NovaTech suspended all new accounts in the U.S. and Canada, which made up the majority of its investors.

299.    In addition, NovaTech continued to restrict withdrawals from trading accounts and in June 2023, allowed requests for withdrawal of only 5% instead of 15% as promised on April 1, 2023.

300.    In response to Defendant, Zizi's, question asking what to tell his downlines, Defendant, Cynthia Petion, replied, "Withdraw 5%" and followed up with "Or tell them to quit f---ing withdrawing.

301.    Since June 2023, U.S. investors have been unable to withdraw their funds from the NovaTech.

302.    Another New Yorker informed a regulatory agency that his parents invested $50,000 of their savings into NovaTech in February 2023, were unable to withdraw, and are facing financial hardship as a result. He stated "it is heartbreaking to see my parents struggle and worry about their financial future. Seeing my mom cry because of NovaTech is something I can never forget…My father's friend has also invested over 75K in it and she has been suffering as well."

303.    A New York investor, a single parent with two children who is also taking care of his parents, invested approximately $20,000 in NovaTech because it "was deemed to be operating as an investment bank thus paying its consumers at a rate of 4% interest weekly." He had been unable to withdraw any money from NovaTech since November 2022.

304.     Another New Yorker invested $131,000 in NovaTech in November 2022, after learning about the "passive income platform" with 3% weekly ROI from YouTube, Telegram and Zoom platform, resulting in hundreds of millions of dollars in losses.

305.     One New York nurse invested a total of $25,000 into NovaTech from March 2022 through March 2023, believing it to be a Christian investment group. She was promised 3% returns compounded weekly with an option to withdraw her cryptocurrency at any time without meetings. She stated that the "CEO is a former pastor. I trusted them that's why I joined." She had not been able to withdraw her money from NovaTech.

306.     While most investors lost the majority of their investments, Defendants Petion transferred hundreds of millions of dollars' worth of investor cryptocurrency out of NovaTech.

307.     Defendant, Ciceron, invested $7,500 over time and withdrew over $3 million from NovaTech.

308.     Defendant, Corbett, invested approximately $25,000 and withdrew over $800,000 from NovaTech.

309.     Defendant, Ziz,i invested approximately $200,000 and withdrew over $3 million from NovaTech.

**M.     AWS Mining and Novatech were Illegal Pyramid Schemes**

310.     AWS Mining and NovaTech were pyramid schemes, known as chain distributor schemes which are illegal in New York. GBL 359-fff prohibits initiating and participating in chain distributor schemes. GBL § 359-fff (1) provides that it is "illegal and prohibited for any person, partnership, corporation…or any agent or employee thereof, to promote, offer or grant participation in a chain distributor scheme." GBL § 359-fff (2) defines "chain distributor scheme" as "a sales device whereby a person, upon condition that he make an investment, is granted a license or right to solicit or recruit for profit or economic gain one or more additional

persons who are also granted such license or right upon condition of making an investment and may further perpetuate the chain of persons who are granted such a license…" The term "investment" under the statute means "any acquisition, for a consideration…of property…and includes…business opportunities and services." GBL § 359-fff (2).

311.   Defendants AWS Mining and NovaTech were illegal chain distributor schemes under GBL § 359-fff (2) and constituted securities under GBL § 359-fff (3). In both schemes, participants had to turn over property (cryptocurrency) to obtain the right to recruit and when they signed up new investors who purchased "trading" packages or mining contracts, these investors received the right to recruit others, and so on. Only investors who had purchased a mining contract for AWS Mining or a "trading" package for NovaTech2 were able to recruit other investors and receive recruitment bonuses. A purchase of an AWS mining contract or a NovaTech trading package automatically enabled investors to solicit others.

312.   Defendants violated GBL § 359-fff (1) of the Martin Act by promoting, offering, or granting participation in NovaTech and AWS Mining.

313.   Defendants Zizi and Corbett promoted other pyramid schemes as well. Defendant, Zizi, promoted a pyramid Ponzi scheme called ZeekRewards, which collapsed in 2012. Defendant, Zizi, was one of the top promoters in ZeekRewards with approximately $1.5 million in net winnings, with a judgment against him of $700,000, which he has "not considered paying."

314.   Defendant,, Corbett, promoted RNetwork and its Revvcard after AWS Mining's collapse in June of 2019. Revvcard, a debit card promoted by illegal chain distributor scheme Digital Vault, was advertised to work with fiat and cryptocurrency, but it never launched, and investors lost their funds.

**N.    Defendants Violates New York State Registration Laws**

315.    Defendants AWS Mining and NovaTech required investments in cryptocurrency. Defendants lured investors into converting their hard-earned funds into cryptocurrency to invest it with NovaTech. Investors deposited cryptocurrency, including Tether, Bitcoin, Ether, and Litecoin, into AWS Mining and NovaTech and received payments from them in cryptocurrencies

316.    Investors deposited cryptocurrency for investment with AWS Mining which promoted "passive income." Defendant AWS Mining represented that it pooled investor cryptocurrency into "mining groups" and used it to mine cryptocurrency. AWS Mining had absolute discretion over which cryptocurrency to mine, if any, and absolute control over the success of mining and crypto that it collected from investors. AWS Mining claimed to distribute monthly mining profits to investors until returns equaled 200% of their original investment. Accordingly, the AWS Mining's mining contracts constituted securities under the Martin Act.

317.    NovaTech stated that it pooled cryptocurrency deposited by investors for trading.

318.    NovaTech exercised total discretion over investors' deposits and promised investors consistent passive income from NovaTech's trading. Defendants emphasized that NovaTech traders did all the trading and that investors did not need to have any trading experience. NovaTech announced and paid purported weekly profits from trading investor cryptocurrency. NovaTech "trading" packages were securities under the Martin Act.

319.    Cryptocurrencies, including those that Defendants recommended investors purchase for transfer to NovaTech, are commodities under the Martin Act and may also constitute securities.

320.    Under New York State law, a dealer is a person or entity that is engaged in the business of selling securities to the public within or from New York for its own account and selling or offering for sale to the public securities issued by it. GBL § 359-e(1)(a).

321.    Defendant AWS Mining issued, offered, promoted, and sold mining contracts to investors in New York. Defendant AWS Mining was a dealer under New York law and issued, promoted, and sold securities for its own account within the meaning of GBL § 359-e(1)(a).

322.    Defendants NovaTech and the Petions issued, offered, promoted, and sold "trading" packages to investors in New York. At all times, Defendants Petion owned NovaTech and exercised full control over investor cryptocurrency sent to NovaTech for "trading" packages. Defendants NovaTech and the Petions were dealers under New York law and issued, promoted and sold securities for their own account within the meaning of GBL § 359-e(1)(a).

323.    A salesperson is a person employed by a dealer for the purpose of representing them in the sale of securities to or from the public within or from New York. Defendants Cynthia and Eddy Petion, Zizi, Corbett, Fraser, Simpson, Ciceron and each and every defendant named above received payments in the form of recruitment bonuses for offering for sale to investors mining contracts for AWS Mining. Defendants Zizi, Corbett, and Ciceron received payments in the form of recruitment bonuses for offering for sale to investors "trading" packages for NovaTech. Defendants Cynthia and Eddy Petion, Zizi, Corbett, Ciceron and each of and every defendants named herein were salespersons within the meaning of GBL § 359-e(1)(c).

324.    Defendants Cynthia and Eddy Petion, Zizi, Corbett, Ciceron and all other defendants named herein acted as salespersons without successfully completing the required examinations known as the "Series 63" or the "Series 66" that cover securities industry regulations and ethical practices and obligations.

325.   As dealers and salespersons of securities under New York law, Defendants were required to file a registration statement with the Office of the Attorney General prior to engaging in such conduct. In a lawsuit filed by the New York State, Office of the Attorney General, the complaint states that none of the Defendants named in this lawsuit were ever registered with the office of the Attorney General.

326.   Defendants were not exempted from the filing requirements.

327.   Defendants failed to file registration statements with the OAG prior to engaging in conduct that required such filing, in violation of GBL § 359-e(3).

328.   Each sale, offer to sell AWS Mining and NovaTech securities in New York State while unregistered is a violation of the Martin Act and a fraudulent practice under GBL § 352. Defendants repeated offer and sale of securities while unregistered also constitutes persistent fraud and illegality under Executive Law § 63(12).

329.   Beginning at least as early as 2019, NovaTech offered and sold securities in the form of investment contracts in the United States through general solicitations on its website. NovaTech referred to these investment contracts as "Packages."

330.   NovaTech held itself out as a crypto asset and Forex trading platform. The purported purpose of the securities offerings was for NovaTech to use investor funds to engage in crypto asset and Forex trading, which in turn would generate returns for investors who purchased Packages.

331.   NovaTech claimed to execute this trading activity using its percentage allocation management module (PAMM) accounts. According to NovaTech, investors could invest their funds in NovaTech's master trading accounts, which NovaTech would then pool with other investors' funds to be managed and traded by NovaTech's "experienced traders and bots."

332.    NovaTech specifically targeted investors like Plaintiff with little to no experience in trading crypto assets and Forex, telling investors and prospective investors that NovaTech's "fully automated" investment products allow investors to "earn without having to trade" and that "no experience is needed." Meanwhile, very little of the money collected was invested. The Defendants encouraged people to recruit others and paid them 10% of the money invested and then use the invested money to pay previous investors. Investors were told to recruit others as a way to make money.

333.    The Packages were publicly available to investors of every state in the United States via NovaTech's website: www.NovaTechFX.com.

334.    In addition to its purported trading activities, NovaTech claimed to generate additional revenue through the operation of Bitcoin ATMs by an affiliated entity, Smart Bit, Inc. NovaTech told investors that the profits from its Bitcoin ATM business would be included in the distributions it made to investors who had purchased Packages.

335.    After investors created their accounts on the NovaTech website, investors could log into their account using their username and password to monitor their purported balance and returns, deposit funds, and request withdrawals. NovaTech facilitated deposits and withdrawals using crypto assets, including Tether (USDT), Bitcoin (BTC), Ether (ETH), and Litecoin (LTC).

336.    NovaTech did not provide financial statements to investors or potential investors instead NovaTech provided a simple line chart showing NovaTech's purported weekly profits and losses over time and a bar graph showing NovaTech's purported monthly profits over time. According to the charts, NovaTech averaged nearly 3% returns for investors per week and had never incurred a weekly loss.

337.    As part of its solicitation efforts, NovaTech used a multi-level marketing scheme that would reward investors for inducing others to send money to NovaTech. According to this

program, investors would be paid a referral bonus based on the amount of funds deposited by the investors that they recruited. Investors would also be paid additional referral bonuses when the investors that they recruited, in turn, recruited new investors.

338.    Investors seeking to take advantage of NovaTech's referral program created and posted videos to YouTube, Facebook, Instagram, Tik Tok and posted content on other social media websites to recruit others to invest in NovaTech. Defendants Martin Zizi, Frantz Ciceron Bob Saint Louis, John Garofano, and other defendants listed herein posted several videos and other statements supporting and promoting the NovaTech Ponzi Scheme.

339.    In fact, NovaTech was luring investors into what is known as a High Yield Investment Program (HYIP). HYIPs are unregistered investments typically run by unlicensed individuals and are often frauds. The hallmark of an HYIP scam is the promise of high returns on an annual (or even monthly, weekly, or daily) basis at little or no risk to the investor. Another key element of most HYIPs is a referral program, in which the HYIP offers referral commissions or bonuses to investors to recruit new investors. This usually leads to investors sharing information about the HYIP with their friends and family and promoting HYIPs on social media.

340.    The Packages offered by NovaTech, Cynthia Petion, and Eddy Petion were securities that were neither qualified nor exempt from the qualification requirement under the United States Securities Act, California Securities Act, Wisconsin Securities Act, New York Securities Act, and Washington State Securities Act. None of the Jurisdiction listed above has ever issued a license, permit and or authorization to any of the Defendants to sell these securities.

341.    In connection with the offer or sale of these securities, NovaTech, Cynthia Petion, Ricardo Roy, Eddy Petion, Dr. Jean Martin Zizi, Frantz Ciceron, Ciceron and Associates, Bob Saint Louis, NovaPay, Deborah Brazil and John Doe 1-500 made, or caused

to be made, untrue statements of material fact and material omissions to investors and potential investors, including but not limited to the following:

  a.  Defendants falsely representing that NovaTech is registered hedge fund in the United States;

  b.  falsely representing that NovaTech is a registered investment adviser;

  c.  falsely representing that NovaTech is a registered broker;

  d.  defendants failed to disclose that the offer or sale of NovaTech's securities was not qualified in anywhere in the United States.

  e.  defendants, failed to provide any qualifications to substantiate claims that investors' funds are managed and traded by experienced traders.

  f.  defendants failed to disclose that in March 2011, Cynthia Petion and Eddy Petion filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York.

  g.  Defendants failed to disclose that in August 2019, a debt buyer sued Cynthia Petion in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Civil Division, for breach of contract and unjust enrichment, alleging that Cynthia Petion had failed and/or refused to repay a loan.

  h.  Defendants failed to disclose that in July 2018, a mortgage lender sued Eddy Petion and Cynthia Petion in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Civil Division, in an action to foreclose a defaulted mortgage on residential real property held by Eddy Petion and Cynthia Petion.

  i.  Defendants failed to disclose that on August 9, 2022, NovaTechFX has received a securities fraud warning from the Central Bank of Russia.

  j.  Defendants failed to disclose that on October 11, 2022, British Columbia Securities Commission warned against NovaTechFX as a Ponzi Scheme.

k.      Defendant failed to disclose that on November 27, 2022, NovaTechFX received a Cease-and-Desist Letter from California Department of Financial Protection & Innovation and cited the company and its officers for fraud.

342.    On or about October 14, 2022, NovaTechFX, Cynthia Petion and Eddy Petion received its second securities fraud warning from Canada. Again, Defendants failed to disclose the fraud securities warning to its investors.

343.    On December 15, 2022, Ontario Securities Commission issued a fraud warning letter against NovaTechFX and the officers of NovaTechFX.

344.    On December 13, 2022, the Province of Sasktchewan, Canada, Financial and Consumer Affairs Authority issued a securities fraud notice against Cynthia Petion, Eddy Petion and NovaTechFX.

345.    On February 3, 2023, the Province of Alberta, Canada, Securities Commission issued a public notice warning the public against NovaTechFX as a Ponzi Scheme.

**O.      Violations of Anti-Fraud Provisions of Washington State Securities Law**

346.    On October 27, 2023, the Securities Division of the State of Washington entered a Summary Order to Cease and Desist, a Statement of Charges, Notice of Intent to Impose a Fine and to Charge Costs against NovaTech Ltd., Cynthia Petion, and Eddie Petion.

347.    The Securities Division alleged that, beginning no later than September of 2019, and continuing through the present, Cynthia Petion, Eddie Petion, and NovaTech Ltd have been offering and selling unregistered securities in the form of percentage allocation management module accounts (PAMM Accounts).

348.    During this time, at least three Washington state residents (member of the class) purchased these securities and were unable to withdraw their investments from NovaTech Ltd.

349.    The Securities Division alleged that the Respondents sold unregistered securities and violated the anti-fraud provision of the Securities Act of Washington.

350.    The Securities Division ordered the Respondents to cease and desist from violating the Securities Act of Washington. The Securities Division gave notice of its intent to collect fines and charge costs.

351.    Despite these warnings, the Defendants continue to offer PAMM account services to members of the class via its website and refuse to cease and desist from offering these securities in violations of Washington Securities Act.

## P.    Violations of Wisconsin Uniform Securities Law

352.    Paul J. DeRenzo ("DeRenzo") is an adult male resident of Pennsylvania with a last known address of 1634 Hawthorne Street, Pittsburgh, Pennsylvania 15201.

353.    None of the above Respondents have ever been registered to offer or sell securities with the Division, Securities and Exchange Commission ("SEC"), or the Financial Regulatory Authority ("FINRA").

354.    On or about November 11, 2022, DeRenzo posted an advertisement on the Craigslist/WI/services/financial website targeting residents of Milwaukee, Wisconsin. The heading stated: "We Trade For You-Get Paid Every Week." The body of the posting stated: "Let the professionals trade for you. They have a remarkable track record. You make steady profits that you can withdraw or let them compound. You have access to your funds the entire time. Completely passive income. It's free to join and you can get started with very low amounts. Get paid each week. Returns have averaged over 3% per week. Completely passive income, just takes a few minutes per week and you don't need any special knowledge. It's a very simple program. Email for more information."

355.    Wisconsin Resident ME ("ME") is an adult male resident of Wisconsin. On or about November 16, 2022, ME emailed in response to the posting.

356.    On or about November 16, 2022, ME received a telephone call from DeRenzo. DeRenzo told ME to log into a Zoom meeting that day to talk about the investment.

357.    During the November 16, 2022, telephone call and Zoom meeting, DeRenzo represented to ME that Nova Tech involved earning passive income in which Nova Tech would trade cryptocurrency for ME and that Nova Tech's average weekly return for investors was almost 3% a week, and a chart displaying no losses whatsoever.

358.    DeRenzo told ME that even during the weeks when cryptocurrency lost value, Nova Tech investors still got paid because Nova Tech's traders "make money when the market is going up, down or sideways".

359.    DeRenzo told ME that Nova Tech had purportedly managed funds for investors which had purportedly earned 131 percent so far in 2022. DeRenzo said crypto went up in January, but is now down, but the Nova Tech traders always made money for investors.

360.    Regarding another chart displaying different levels of investment with Nova Tech and bonuses received by Nova Tech investors who brought other investors to Nova Tech, in response to ME's inquiry as to what the bonus would be for the person who brought ME in as a Nova Tech investor, DeRenzo said that for a $5,000 investment, the bonus would be $250 to $500. DeRenzo represented that the bonus was not taken from the money invested by the new investor to pay the referring investor.

361.    Upon information and belief, there are at least 500 Nova Tech accounts held by persons located in Wisconsin. Each Wisconsin investor invested at least $99.00 in an investment package offered by Nova Tech.

362.    Pursuant to Wis. Stat. § 551.501(2), it is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to make an untrue statement

of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

363.    Nova Tech, Eddie Petion, and Cynthia Petion and Paul J. DeRenzo violated Wis. Stat. 551.501(2) when they offered securities in Wisconsin and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to the Petions' bankruptcy and numerous civil suits, the securities fraud notices issued concerning Nova Tech by the Central Bank of Russia and the British Columbia Securities Commission, the California Desist and Refrain Order, and the fact that Nova Tech, Eddie Petion, and Cynthia Petion were not registered to offer or sell securities in Wisconsin.

364.    NovaTech, Eddie Petion, Cynthia Petion and Paul J. DeRenzo violated Wis. Stat. 551.501(2) when they offered securities in Wisconsin and made misrepresentations of material fact, including but not limited to the representations that NovaTech was registered as a hedge fund, broker-dealer, and investment advisor when it had never been registered in any of those capacities.

## Q.    Violations of California Anti-Fraud Securities Law

365.    Beginning at least as early as 2021, NovaTech offered and sold securities in the form of investment contracts in California through general solicitations on its website. NovaTech referred to these investment contracts as "Packages."

366.    NovaTech held itself out as a crypto asset and Forex trading platform. The purported purpose of the securities offerings was for NovaTech to use investor funds to engage in crypto assetand Forex trading, which in turn would generate returns for investors who purchased Packages.

367.     NovaTech claimed to execute this trading activity using its percentage allocation management module (PAMM) accounts. According to NovaTech, investors could invest their funds in NovaTech's master trading accounts, which NovaTech would then pool with other investors' funds to be managed and traded by NovaTech's "experienced traders and bots."

368.     NovaTech specifically targeted investors with little to no experience in trading crypto assets and Forex, telling investors and prospective investors that NovaTech's "fully automated" investment products allow investors to "earn without having to trade" and that "no experience is needed."

369.     The Packages were publicly available to investors in California via NovaTech's website: www.NovaTechFX.com.

370.     In addition to its purported trading activities, NovaTech claimed to generate additional revenue through the operation of Bitcoin ATMs by an affiliated entity, Smart Bit, Inc. NovaTech told investors that the profits from its Bitcoin ATM business would be included in the distributions it made to investors who had purchased Packages.

371.     After investors created their accounts on the NovaTech website, investors could log into their account using their username and password to monitor their purported balance and returns,deposit funds, and request withdrawals.

372.     NovaTech facilitated deposits and withdrawals using crypto assets, including Tether (USDT), Bitcoin (BTC), Ether (ETH), and Litecoin (LTC).

373.     NovaTech did not provide financial statements to investors or potential investors.  Instead, NovaTech provided a simple line chart showing NovaTech's purported weekly profits and losses over time and a bar graph showing NovaTech's purported monthly profits over time. According to the charts, NovaTech averaged nearly 3% returns for investors per week and had never incurred a weekly loss.

374.     As part of its solicitation efforts, NovaTech used a multi-level marketing scheme that would reward investors for inducing others to send money to NovaTech. According to this program, investors would be paid a referral bonus based on the amount of funds deposited by the investors that they recruited. Investors would also be paid additional referral bonuses when the investors that they recruited, in turn, recruited new investors.

375.     Investors seeking to take advantage of NovaTech's referral program created and posted videos to YouTube and posted content on other social media websites to recruit others to invest in NovaTech.

376.     In fact, NovaTech was luring investors into what is known as a High Yield Investment Program (HYIP). HYIPs are unregistered investments typically run by unlicensed individuals and are often frauds. The hallmark of an HYIP scam is the promise of high returns on an annual (or even monthly, weekly, or daily) basis at little or no risk to the investor. Another key element of most HYIPs is a referral program, in which the HYIP offers referral commissions or bonuses to investors to recruit new investors. This usually leads to investors sharing information about the HYIP with their friends and family and promoting HYIPs on social media.

377.     The Packages offered by NovaTech, Cynthia Petion, and Eddy Petion were securities that were neither qualified nor exempt from the qualification requirement under the CSL. The Department has not issued a permit or other form of qualification authorizing NovaTech, Cynthia Petion, or Eddy Petion to sell these securities in California.

378.     In connection with the offer or sale of these securities, NovaTech, Cynthia Petion, and Eddy Petion made, or caused to be made, untrue statements of material fact and material omissions to investors and potential investors, including but not limited to the following:

a.      falsely representing that NovaTech is a registered hedge fund in the United States;

b.      falsely representing that NovaTech is a registered investment adviser;

c.      falsely representing that NovaTech is a registered broker;

d.      failing to disclose that the offer or sale of NovaTech's securities was not qualified in California.

e.      failing to provide any qualifications to substantiate claims that investors' funds are managed and traded by experienced traders.

379.    Based on the foregoing findings, the securities offered or sold by Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC, NovaTrading OÜ, Cynthia Petion, and Eddy Petion were subject to qualification under the CSL and have been or are being offered or sold without first being qualified in violation of Corporations Code section 25110.

380.    Pursuant to California Corporations Code section 25532, Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC, NovaTrading OÜ, Cynthia Petion, and Eddy Petion were ordered to desist and refrain from the further offer or sale of securities in California, including but not limited to investment contracts known as Packages, unless and until the qualification requirements of the CSL have been met.

381.    Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC NovaTrading OÜ, Cynthia Petion, and Eddy Petion offered or sold securities in California by means of oral or written communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Corporations Code section 25401.

382.     Pursuant to Corporations Code section 25532, Nova Tech Ltd. a/k/a NovaTech, Ltd., NovaTech Advisors, LLC, NovaPay, LLC, NovaTrading OÜ, Cynthia Petion, and Eddy Petion were ordered to desist and refrain from offering or selling or buying or offering to buy any security in California, including but not limited to investment contracts known as Packages, by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

383.     Pursuant to Corporations Code section 25403, any person who controls or induces another person to violate a provision of the Corporate Securities Law of 1968, or any person who provides substantial assistance to another person in violation of the Corporate Securities Law of 1968, shall be liable for the violations.

## IV.    ADDITIONAL DEFENDANT-SPECIFIC ALLEGATIONS

### A.    Defendants Jean Martin Zizi, Bob Saint Louis and Frantz Ciceron

384.     Defendant Jean Martin Zizi is a medical doctor residing in Long Island, New York who joined the Ponzi Scheme in 2019 knowing that NovaTech was a Ponzi Scheme designed to defraud investors.

385.     The Defendant joined the Scheme for the sole purpose of making money defrauding members of the class.

386.     At all relevant times, Defendant held public meetings in Long Island via Zoom and in person via his organization Trinity of Success to recruit members of the Class.

387.     In return for his fraudulent work, Defendant was compensated 10% of the money collected under false pretenses.

388.    Defendant Bob Saint Louis is a Christian pastor, a Baptist minister who resides in Long Island, New York.

389.    At all relevant times to this action, Saint Louis and his wife Sophia Saint Louis joined the NovaTech Ponzi Scheme for the sole purpose of defrauding investors. The husband-and-wife pair worked together with other Defendants to recruit investors under them.

390.    In or about 2022, both Saint Louis became senior directors of NovaTech, having recruited more than a thousand people.

391.    In promoting the NovaTech Ponzi Scheme, Defendants made fraudulent statements, as detailed in the Factual Allegations section, supra, knowing that those statements were false, and they made those false statements for the sole purpose of inducing members of the class to invest in the Ponzi scheme.

392.    Defendant Frantz Ciceron resides in Brooklyn, New York and owns a Frantz Ciceron and Associates, Inc.

393.    At all relevant times to this action, Ciceron joined the Ponzi scheme, knowing that NovaTech was a Ponzi scheme designed to defraud investors who knew very little about crypton currency.

394.    Defendants use his influence in the Haitian American community in Brooklyn to recruit local investors, lying to them about the investment and the source of the return they will receive.

395.    Defendant joined other Defendants (Jean Martin Zizi, and Bob Saint Louis) in several zoom calls and public meetings in Brooklyn, Long Island and other places to recruit members of the class to invest. Defendant intentionally lied to the investors about guaranteed return of 3%, the source of the investment, and that NovaTech never sustained a loss.

396.    The Defendant failed to tell the members of the class the truth about NovaTech. In exchange for his participation in the Ponzi Scheme, the Defendant received 10% of all the money he raised from local investors.

**B.    Defendant Deborah Brazil and Roy Ricardo**

397.    Defendant Deborah Brazil resides in Miami, Florida, and serves as President of NovaTech, LTD.

398.    In or about 2021, Defendant joined NovaTech knowing it was a Ponzi scheme. Since then, the Defendant has served as Cynthia Petion advisor.

399.    Between 2022 and 2023 Defendant participated in several zoom meetings with members of the class and other in person meetings promoting the Ponzi scheme.

400.    Brazil has recruited several hundreds of people to invest in the Ponzi scheme, but for her participation members of the class would not have sustain such economic loss.

401.    Defendant Ricardo Roy Sr. is the brother of Cynthia Petion. From 2019 to present, the Defendant has served as the architect of the Ponzi scheme, designing the computer system that reports the fake returns.

402.    Defendant Ricardo Roy has been an integral part of the Ponzi Scheme in charge of the directors and the Senior directors of NovaTech.

**C.    Defendants: Paul J. DeRenzo, John Garofano, James Corbett**

403.    Defendant Paul J. DeRenzo, is a senior director of NovaTech, in charge of recruitment of members in the class in Pennsylvania.

404.    From or about 2021 Defendant has recruited many members of the class for NovaTech using Craigslist and other social media for that recruitment.

405.    On or about November 2022, Defendant recruited MK who is a resident of Wisconsin, after MK responded to an advertisement about NovaTech. During that telephone conversation between Defendant and MK, Defendant consistently lied to MK about the nature of the investment; misrepresented material facts as outline in the Factual Allegations section, supra, and lied about the return on investment.

406.    The Defendant knew that NovaTech was a Ponzi scheme and participated in the scheme because he received a percentage of the money invested.

407.    Defendant John Garofano joined NovaTech in or about July 2021, and for the last two years, Defendant has used Youtube to promote the Ponzi Scheme. In a YouTube posted on November 10, 2022, Defendant claimed that "while every crypto platform lost money, NovaTech was up 40%".

408.    Defendant knew that statement was false, and that NovaTech never invested any of the class members' money, and that the promised 3% returns were not from profits but other investors' money.

409.    The Defendant recruited hundreds of class members to invest in the Ponzi Scheme. In exchange for his work, Defendant received a percentage of the money invested.

410.    The Defendant knew that NovaTech was a fraudulent company and agreed to be part of the criminal enterprise.

411.    Defendant James Gorbett is a citizen of the United States, whose residence is unknown. At all relevant times, Defendant, he has been a senior director of NovaTech.

412.    From 2022 to present, Defendant has recruited hundreds of class members to invest in the Ponzi scheme.  During the course of the recruitment, he consistently lied to members of the class about NovaTech's licenses as a seller of securities, profits, investment, and a guaranteed 3 percent weekly.

413.    Defendant knew that NovaTech was a Ponzi scheme designed to defraud investors of their money, that none of the money collected was actually invested in crypto, that NovaTech never held a license to sell securities, and that NovaTech had received several cease and desist orders from various jurisdictions which had found NovaTech's scheme to be a fraud.

414.    Defendants 1-500 are John Does who served as ambassadors for NovaTech. NovaTech maintains a list of all its ambassadors around the world and with discovery, the Plaintiff will be able to identify those ambassadors who assisted in the recruitment of over a million people and the fraudulent collection of over $50.3 billion dollars.

415.    The scam would not have been nearly as successful without the participation of each named Defendant, including the John Does.

**D.    Defendant:  Allen Mullins, J. Scott Whitney and Dwayne Eddings.**

416.    Defendant Allen Mullins has been a serial promoter of Ponzi schemes having been involved several, including NovaTechFX.

417.    At all relevant times, Defendant organized many zooms call, recorded videos supporting and promoting what he knew was a Ponzi Scheme designed to defraud people who knew very little to nothing about investing in Crypto Currency or Forex.

418.    Between 2019 and 2023, Defendant personally recruited investors under false pretense and caused those investors to lose money.

419.    Defendant, J. Scott Whitney has been a serial promoter of Ponzi schemes, having participated in at least two. Between 2020 and 2024, he participated in several videos, zoom calls for the purpose of recruiting members of the class to invest in the Ponzi scheme. He knew NovaTechFX was designed to defraud investors, he knowingly participated in the fraudulent enterprise and as a result of the is participation received a percentage of the money invested from the people he recruited.

420.     Defendant, Dwayne Eddings is a serial promoter of Ponzi schemes, including the NovaTechFX ponzi scheme. Between 2019 and 2024, he promoted NovaTech knowing it was a Ponzi scheme, and held weekly video training for Novatech on Vimeo, a video platform to teach people how to purchase and forward bitcoin to NovaTech.[13]

421.     In addition to holding weekly video training, he served as an ambassador, trainer, and senior director of NovaTech engaging in day-to-day operation of the criminal enterprise.

## E.    Defendants: Stan Richards, Andrelle Calixte, Dennis O. Cunningham

422.     Defendant Stan Richards, at all relevant times, has been a serial promoter of Ponzi schemes. From 2019 to present, he actively promoted NovaTech knowing it was a scam, and as a result of his promoting he recruited over three thousand members of the class to invest in the Ponzi scheme.

423.     Defendant Andrelle Calixte, at all relevant times, has knowingly participated in the Ponzi Scheme with the knowledge that it was a fraud. Between 2021 and 2023, he recruited hundreds of investors and made tens of thousands of dollars.

424.     Defendant Dennis O. Cunnighman, at all relevant times, served as a promoter of Novatech, recruiting others to invest knowing that NovaTech was a Ponzi Scheme.

## F.    Defendants: James Simeon, Steve Bliznicenko, Larry Golden, Steven Greene

425.     Defendant James Simeon, at all relevant times, commencing in the year 2019, Defendant served as serial promoter for NovaTech, having participated in prior similar ponzi schemes previously.  He that NovaTech was a Ponzi scheme.

---

[13]    https://vimeo.com/700658622 - How to Set up your Cash App and Fund your NovaTech Account by Dwayne Eddings.

426.    Defendant Steve Bliznicenko, at all relevant times, was a promoter of NovaTech. Between 2020 and 2023, he used social media to promote NovaTech knowing it was a ponzi scheme, and he participated in prior similar schemes.

427.    Defendant Larry Golden, at all relevant times, served as an ambassador and promoter of NovaTech. Between 2019 and 2023, he promoted NovaTech on social media, holding regular zoom calls knowing that NovaTech was a ponzi scheme. He is a serial promoter of Ponzi schemes having participated in other prior similar schemes.

428.    Defendant Steven Greene is serial promoter of Ponzi schemes. Between 2015 and 2020, he promoted several Ponzi schemes including NovaTech. Between 2019 and 2020, he used his social media platform to promote NovaTech recruiting hundreds of people to invest money in NovaTech knowing it was a Ponzi scheme.

## G.    Defendants: Shirely Xavier, David Schomberg, Bob Bearden, Corrie Sympson and George C. Fraser

429.    Defendant Shirley Xavier, at all relevant times, served as an ambassador to NovaTech. Between 2019 and 2023, she used her social media platform to recruit hundreds of people to invest in the criminal enterprise knowing it was a scam.  She is a serial promoter of Ponzi scheme having participated in similar schemes that caused millions of dollars of losses.

430.    Defendant David Schomberg, at all relevant times, served as a promoter of NovaTech. Between 2016 and 2023, he held multiple zoom meetings and used his social media platforms, including YouTube to promote what he knew was a Ponzi scheme. He received a percentage of the money invested in the Ponzi scheme by those he recruited.

431.    Defendant Bob Bearden, at all relevant times, was a serial promoter of Ponzi schemes. Between 2015 and 2023, he promoted several Ponzi schemes, including NovaTech. He promoted NovaTech using his social media platform knowing it was a scam and he recruit thousands of people who invested millions of dollars in the Ponzi scheme.

432.    Defendant Corrie Sympson, at all relevant times, served as a senior director for NovaTech. Between 2019 and 2023, she promoted NovaTech using her social media platform. Defendant is a serial promoter of Ponzi schemes, having promoted similar schemes before where investors lost millions of dollars. She is currently being investigated by the Federal Trade Commission. She promoted NovaTech knowing it was a criminal enterprise because NovaTech paid her a percentage of the money invested by the people he recruited.

433.    Defendant George C. Fraser at all relevant times, served as a senior advisor and promoter of NovaTech. He participated in several YouTube interviews praising the Ponzi Scheme and Defendant Cynthia Petion for helping people. He was a recipient of the Barack Obama Presidential Lifetime Achievement Award and used his influence to convince hundreds of thousands of people to invest in NovaTech with the knowledge that it was a scam. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

## H.    Defendants: Newman Batayani Madzika, Kyle Farma, Shena M. Chenry

434.    Defendant Newman Batayani Madzika, at all relevant times, served as an ambassador and promoter of NovaTech. Between 2020 and 2023, he used his social media platform to promote NovaTech knowing it was a scam. He is a serial promoter of Ponzi schemes, having participated in similar schemes before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

435.    Defendant Kyle Farma, at all relevant times, served as an ambassador and promoter of NovaTech. Between 2021 and 2023, he used his social media platform to promote NovaTech knowing it was a scam. Defendant is a serial promoter of Ponzi schemes having participated in similar schemes before. He promoted NovaTech knowing it was a criminal

enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

436.    Defendant Shena M. Chenry, at all relevant times, served as a director and promoter of NovaTech. Between 2021 and 2023, he used his social media platform to promote NovaTech knowing it was a scam. He is a serial promoter of Ponzi schemes having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

I.    **DefendantS Jems Moise, Heinz P. Dubini, Michele McNeeley, Rosie Hammond**

437.    Defendant Jems Moise, at all relevant times, served as an ambassador and promoter of NovaTech. Between 2020 and 2023, he used his social media platform to promote NovaTech knowing it was a scam. He is a serial promoter of Ponzi schemes having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

438.    Heinz P. Dubini,  at all relevant times, served as an ambassador and promoter of NovaTech. Between 2019 and 2023 Defendant used his social media platform to promote NovaTech knowing it was a scam. He is a serial promoter of Ponzi schemes, having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

439.    Defendant Michele McNeeley, at all relevant times, served as an ambassador and promoter of NovaTech. Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam. He is a serial promoter of Ponzi schemes, having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

440.    Defendant Rosie Hammond, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023 she used her social media platform to promote NovaTech knowing it was a scam.  She is a serial promoter of Ponzi schemes, having participated in similar ones before.  She promoted NovaTech knowing it was a criminal enterprise because NovaTech paid her a percentage of the money invested by the people she recruited.

**J.    Defendants Owens Brown, Ranulfo Neto, Samantha Zizi, Bruno Mazali**

441.    Defendant Owens Brown, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.  He is a serial promoter of Ponzi schemes having participated in similar ones before.  He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

442.    Defendant Ranulfo Neto, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.  He is a serial promoter of Ponzi schemes having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

443.    Defendant Samantha Zizi, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, she used her social media platform to promote NovaTech knowing it was a scam.  She is a serial promoter of Ponzi schemes, having participated in similar ones before with his brother, Defendant Zizi.  She promoted NovaTech knowing it was a criminal enterprise because NovaTech paid her a percentage of the money invested by the people he recruited.

444.    Defendant Bruno Mazali, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.   He is a serial promoter of Ponzi schemes, having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

**K.    Defendants: Peral Saint Jean, Harris Des Ormeaux, Mary Graig-Brown**

445.    Defendant Peral Saint Jean, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.   He is a serial promoter of Ponzi schemes, having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

446.    Defendant Harris Des Ormeaux, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.  He is a serial promoter of Ponzi schemes, having participated in similar ones before.   He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

447.    Defendant Mary Graig-Brown, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, she used her social media platform to promote NovaTech knowing it was a Ponzi scheme.  She is a serial promoter of Ponzi schemes, having participated in similar ones before.  She promoted NovaTech knowing it was a criminal

enterprise because NovaTech paid her a percentage of the money invested by the people he recruited.

**L.    Defendants: Antonio Arnold, Anthony Deloath, Albertson Jules**

448.    Defendant Antonio Arnold, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.  He is a serial promoter of Ponzi scheme having participated in similar ones before.  He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

449.    Defendant Anthony Deloath, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.   He is a serial promoter of Ponzi schemes, having participated in similar scams before.   He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

450.    Defendant Albertson Jules, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam.   He is a serial promoter of Ponzi schemes, having participated in similar ones before.   He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

**M.    Defendants: Desmond Bwala, Gwenda Clark, Roni Jose Dos Santos**

451.    Defendant Desmond Bwala, at all relevant times, served as an ambassador and promoter of NovaTech.  Between 2019 and 2023, he used his social media platform to promote

NovaTech knowing it was a scam. He is a serial promoter of Ponzi schemes, having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

452. Defendant Gwenda Clark, at all relevant times, served as an ambassador and promoter of NovaTech. Between 2019 and 2023, he used his social media platform to promote NovaTech knowing it was a scam. Defendant is a serial promoter of Ponzi schemes, having participated in similar ones before. He promoted NovaTech knowing it was a criminal enterprise because NovaTech paid him a percentage of the money invested by the people he recruited.

453. Defendant Roni Jose Dos Santos, is a Brazilian American, and from 2019 to 2023, he served as the country representative for NovaTech. He recruited thousands of people from the United, States, Brazil, Colombia, Panama to join the Ponzi scheme. Defendant is a serial promoter of Ponzi schemes, having participated in similar ones before.

## N.    Each Individual and Corporate Defendant

454. Each Individual and Corporate Defendant directly participated in the management of NovaTechFX and was directly involved in the day-to-day operations of the Company at the highest levels.

455. Each Individual and Corporate Defendant was privy to confidential proprietary information concerning the Company and its business and operations:

456. Each Individual and Corporate Defendant was directly or indirectly involved in drafting, producing, reviewing and/or disseminating false and misleading statements and information alleged herein;

457. Each Individual and Corporate Defendant was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

458.    Each Individual and Corporate Defendant was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

459.    Each Individual and Corporate Defendant approved or ratified these statements in violation of the federal securities laws.

460.    Each Individual and Corporate Defendant knew NovaTech was a fraud and intentionally participated in it.

461.    Each Individual and Corporate Defendant knew that NovaTech was a Ponzi Scheme, and that the money paid to investors were not from investment in crypto currency, but money from new investors.

462.    Each Individual and Corporate Defendant knew that neither Cynthia Petion nor Eddy Petion had a license from any relevant authority to sale securities.

463.    Each Individual and Corporate Defendant, in connection with the acts, conduct and other wrongs alleged in this Complaint, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the Internet via zoom and other social media platforms, to facilitate their fraud and criminal activities.

## V:    PLAINTIFF'S CLASS ACTION ALLEGATIONS

464.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who transmitted or forwarded cryptocurrency, money or property to NovaTech between January 2019 and December 2023 the Class Period (the "Class"); and were financially damaged when NovaTechFX blocked Plaintiff's accounts and refused to return the cryptocurrency, money and/or property.

465.    Excluded from the Class are Defendants herein, the officers and directors of NovaTechFX, NovaTech, LTD, NovaPay, NovaTech Advisors, LLC, Novatrading OU, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

466.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in similar class action lawsuit.

467.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal law complained of herein.

468.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

469.    Plaintiff has no interests antagonistic to or in conflict with those of the Class.

470.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- Whether the Defendants engaged in a pattern of Racketeering in violation of the Federal and New York State Civil Racketeering Acts;
- Whether the Defendants' statements to the investing public misrepresented material facts about the conditions of the investment, business, operations, and management of NovaTech;
- Whether Defendants' public statements to the investing public during omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- Whether the Defendants caused NovaTechFX to issue false and misleading statements to the public;
- Whether Defendants acted knowingly or recklessly in issuing false and misleading public statements;
- Whether the Defendants engaged in a Ponzi Scheme using the money of new investors to pay old investors;
- Whether or not Defendants use commerce and communication such as mail, Internet, email and other form of wire to communicate the fraudulent statements to the public; and
- Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages?

471.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

472.    Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

473.    There will be no difficulty in the management of this action as a class action.

## VI.    CAUSES OF ACTION AND REQUESTED RELIEF

**COUNT 1**
**CONDUCT OR PARTICIPATION IN A RICO ENTERPRISE**
**THROUGH A PATTERN OF RACKETEERING ACTIVITY**
**UNDER 18 U.S.C. §§ 1961(5), 1964(C)**

474.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

475.    Each of the Defendants, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1096 (c).

A.      **The Enterprise**

476.    At all relevant times, the Corporate Defendants collectively constitutes a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise-the NovaTech Enterprise Ponzi Scheme – within the meaning of 18 U.S.C. §§ 1961(4) and 1096 (c).

477.    The NovaTech Enterprise Ponzi Scheme was formed on or about January 2019 and is an organization that functioned as a continuing unit.

478.    The purpose of NovaTech Enterprise Ponzi Scheme was to defraud the members of Class of billions of dollars in investments under false pretense, to illegally funnel the vast portion of the proceeds of their unlawful activity into the Defendants' personal accounts, assets, and property, to conduct financial transactions with the remaining proceeds to promote their Ponzi scheme, and to conceal their ongoing fraud from the members of the Class.

479.    Each of the individual corporations listed in the above paragraphs are distinct persons for the purposes of 18 U.S.C. § 1962(c), and distinct from the association constituting the enterprise Ponzi Scheme.

480.    Thus, the collective group of Corporate Defendants constitute an entity distinct from each individual corporate defendant and is an "enterprise" within the meaning 18 U.S.C. § 1962(c).

481.    The individual corporations were incorporated in numerous different states, had different customer and/or membership bases and ongoing businesses or organizations, and could act independently to advance their own interests.

482.    The individual corporations performed different roles within the enterprise and/or used their separate legal incorporations to facilitate the racketeering activity.

483.    For instance, Defendants working together and in concert utilized the corporate defendant NovaTech Advisors, LLC, one of the NovaTech Enterprise Ponzi Scheme members, to:

a.    Launch a crypto platform that allowed investors to invest their money in the NovaTech Enterprise Ponzi Scheme;

b.    Operate a website which made several claims and promises, among them that the investors would receive a weekly profit of 3% percent on their investment;

c.    falsely claim that NovaTech was a licensed hedge fund manager;

d.    falsely claim that NovaTech was a registered investment adviser; and

e.    falsely claim that NovaTech was a registered broker.

484.    Similarly, Defendants working together and in concert utilized the numerous distinct corporate defendants, also NovaTech Enterprise Ponzi Scheme members, to: Solicit members of the public to participate in the weekly investor zoom meetings, invest in the NovaTech Enterprise Ponzi Scheme, and persuade their family, friends and associates to also invest in the NovaTech Enterprise Ponzi Scheme;

485.    The Defendants used the mail and interstate wire communications facilities to facilitate and execute the NovaTech Enterprise Ponzi Scheme.

486.    At all relevant times, the NovaTech Enterprise Ponzi Scheme was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. §1962(c).

**B.    Defendants' Pattern of Racketeering Activity Through the Enterprise**

487.    At all relevant times, beginning on or around January 2019 and continuing through the Present, the Defendants knowingly and wilfully conducted or participated, directly or indirectly, in the conduct of the affairs of the NovaTech Enterprise Ponzi Scheme and did so through a pattern of racketeering activity, i.e., mail fraud (18 U.S.C. § 1341), wire fraud (18

U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

488.    To effectuate the illegal objectives of the NovaTechEnterprise Ponzi Scheme and in furtherance of the scheme to defraud, the Defendants committed numerous acts affecting thousands of investors in violation of in violation of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

489.    These predicate acts constitute a pattern of criminal racketeering activity because (1) at least two of the acts had the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents; (2) as described throughout this Complaint, this series of related acts extended over a substantial period of time; and (3) the last of such related acts occurred within 5 years after a prior incident of criminal activity.

**C.    Predicate Acts**

490.    In violation of those laws, from about January 2019 through January 2024, all Defendants cooperated jointly and severally in the commission of the following acts: (a) wilfully and knowingly devised, and intending to devise, a scheme and artifice to defraud to obtain money and property by means of false and fraudulent pretenses, that is they created and implemented the NovaTech Enterprise Ponzi Scheme to solicit investments in a cryptocurrency exchange platform by false and fraudulent pretenses and promises to current and prospective investors about, among other things, the manner in which their funds would be invested and the performance of their investments, and misappropriated investor funds for uses inconsistent with their representations to investors and for their own benefit; (b) acted with intent to defraud Plaintiffs; (c) mailed something or caused other people to mail something through the United States Postal Services or private or commercial interstate carriers for the purpose of carrying

out their scheme; (d) used interstate wire communication facilities, and caused others to use interstate and foreign wire communication facilities, for the purpose of carrying out their scheme and to conceal their ongoing fraudulent activity.

491.    To achieve their common goals, Defendants knowingly and wilfully concealed from the public, and Plaintiffs the unlawfulness of Defendants' conduct, which was committed at the instruction of, and through the directions of the individual Defendants: Cynthia Petion, Eddy Petion, Deborah Brasil, Ricardo Roy, Martin Zizi, Frantz Ciceron and Paul J. DeRenzo and John Doe 1-500.

492.    During the period from at least January 2019 through and including January 2024, all Defendants cooperated jointly and severally in the commission of two or more of the RICO predicate acts under 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(b). 228. Such predicate acts included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957). These acts constitute a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(a).

**D.    Continuity**

493.    The Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(b).

494.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

495.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

## E.    Damages and Causation

496.    As a direct and proximate result of the Defendants' orchestration and operation of then NovaTech Enterprise Ponzi Scheme, Plaintiffs have been injured in their property, causing Plaintiffs to suffer monetary losses in the amount of not less than 50 billion dollars with said damages to be proven at trial.

497.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

498.    Pursuant to 18 U.S.C. § 1962(c), the Plaintiffs are entitled to three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest

in the maximum amount allowed by law, and all other relief to which Plaintiff may be entitled at law or in equity.

**COUNT 2**
**ACQUISITION AND MAINTENANCE OF AN INTEREST**
**IN AND CONTROL OF**
**AN ENTERPRISE ENGAGED IN A**
**PATTERN OF RACKETEERING ACTIVITY**
**UNDER 18 U.S.C. §§ 1961(5), 1964(B)**

499.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

500.    Each of the Defendants, at all relevant times, is and has been a "person" within the meaning of 18 U.S..C. § 1962(a)-(d) as defined by 18 U.S..C. § 1961(3).

501.    Each of the Defendants, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control of an enterprise (specifically the NovaTech Enterprise Ponzi Scheme) which was engaged in, or the activities of which affected interstate or foreign commerce.

**A.    The Enterprise**

502.    Plaintiff incorporates the allegations of paragraphs 476-486, supra, as if fully stated herein.

503.    At all relevant times, the Corporate Defendants as listed in paragraphs 77-91, supra, collectively constituted an enterprise (the NovaTech Enterprise Ponzi Scheme) as defined in 18 U.S.C. § 1961(4), engaged in and whose activities affected interstate and foreign commerce.

**B.    The Defendants' Pattern of Racketeering**

504.    Plaintiff incorporates the allegations of paragraphs 487-489, supra, as if fully stated herein.

505.    At all relevant times, the Defendants individually were agents of, employed by or associated with the NovaTech Enterprise Ponzi Scheme and were persons within the meaning of 18 U.S.C. § 1961(3).

506.    In committing the acts plead herein, the Defendants received income derived from a pattern of racketeering activity.

507.    Each of the Defendants used the income or proceeds therefrom in their operation and maintenance of NovaTech Enterprise Ponzi Scheme, an enterprise which operates in and affects interstate and foreign commerce.

## C.    Predicate Acts

508.    Plaintiff incorporates the allegations of paragraphs 490-492, supra, as if fully stated herein.

509.    At various times and places detailed in this complaint and in the accompanying exhibits, Defendants acquired and/or maintained, directly or indirectly, an interest in or control of a RICO enterprise-in-fact composed of persons who were associated in fact and who engaged in, and whose activities affected, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

510.    During the period from at least January 2019 through present, all Defendants cooperated jointly and severally in the commission of two or more of the RICO predicate acts under 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(b). Such predicate acts included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

## D.    Continuity

511.    The Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(b).

512.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

513.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

## E.    Damages and Causation

514.    The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

515.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in her property, causing Plaintiff to suffer monetary losses in the amount of not less than $ 50 billion dollars, with said damages to be proven at trial.

516.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors

would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

517.    Pursuant to 18 U.S.C. § 1962(c), the Plaintiff is entitled to three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and all other relief to which Plaintiff may be entitled at law or in equity.

### COUNT 3
### USE OF INCOME DERIVED FROM A PATTERN OF RACKETEERING ACTIVITY IN THE OPERATION OF AN ENTERPRISE ENGAGED IN ACTIVITIES WHICH AFFECT INTERSTATE OR FOREIGN COMMERCE UNDER 18 U.S.C. §§ 1961(5), 1964(A)

518.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

519.    Each of the Defendants, at all relevant times, is and has been a "person" within the meaning of 18 U.S..C. § 1962(a)-(d) as defined by 18 U.S..C. § 1961(3).

520.    Each of the Defendants, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control of an enterprise (specifically the NovaTech Enterprise Ponzi Scheme) which was engaged in, or the activities of which affected interstate or foreign commerce.

## A.    The Enterprise

521.    A Plaintiff incorporates the allegations of paragraphs 476-486, supra, as if fully stated herein.

522.    At all relevant times, the Corporate Defendants as listed in paragraphs 77-91, supra, collectively constituted an enterprise (the NovaTech Enterprise Ponzi Scheme) as defined in 18 U.S.C. § 1961(4), engaged in and whose activities affected interstate and foreign commerce.

## B.    The Defendants' Pattern of Racketeering

523.    Plaintiff incorporates the allegations of paragraphs 487-489, supra, as if fully stated herein.

524.    At all relevant times, the Defendants individually were agents of, employed by or associated with the NovaTech Enterprise Ponzi Scheme and were persons within the meaning of 18 U.S.C. § 1961(3).

525.    In committing the acts plead herein, the Defendants received income derived from a pattern of racketeering activity.

526.    At all relevant times hereto, all Defendants agreed to and did use income or proceeds received from a pattern of racketeering activity to form, control, establish, and operate the NovaTech Enterprise Ponzi scheme, which was formed for the purpose of defrauding Plaintiffs, and which was engaged in and affected interstate and foreign commerce.

## C.    Predicate Acts

527.    Plaintiff incorporates the allegations of paragraphs 490-492, supra, as if fully stated herein.

528.    Such predicate acts included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

## D.    Continuity

529.    The Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(b).

530.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

531.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

## E.    Damages and Causation

532.    The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

533.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in her property, causing Plaintiff

to suffer monetary losses in the amount of not less than $ 50 billion dollars, with said damages to be proven at trial.

534.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

535.    Pursuant to 18 U.S.C. § 1962(c), the Plaintiff is entitled to three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 4
## CONSPIRACY TO ENGAGE IN A PATTERN
## OF RACKETEERING ACTIVITY
## UNDER 18 U.S.C. §§ 1961(5), 1964(D)

536.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

537.    Upon information and belief, the Defendants knew that they were engaging in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.

538.    At all relevant times, beginning in or around January 2019 and continuing at least through present, the Defendants unlawfully, knowingly, and wilfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(a) and (c) as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d).

539.    Upon information and belief, the Defendants agreed to the overall objectives of the conspiracy - to defraud the class of Plaintiff of millions of dollars in investments under false pretenses, to illegally funnel the vast portion of the proceeds of their unlawful activity into their personal accounts, assets and property, to conduct financial transactions with the remaining proceeds to promote their Ponzi scheme, and to conceal their ongoing fraud from the Class of Plaintiffs.

540.    Defendants agreed to the commission of at least two predicate acts. Specifically, they agreed to engage in to engage in: (i) a scheme to defraud by transmitting or causing to be transmitted writings, signs, signals, pictures, or sounds in interstate or foreign commerce through the use of the mails and wires, as proscribed by 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1349; (ii) a financial transaction that they knew involved funds that were the proceeds of some unlawful activity and that those funds were in fact the proceeds of that unlawful activity, in violation of 18 U.S.C. § 1956 and (iii) a financial transaction that they knew involved funds that were the proceeds of some unlawful activity and was designed in whole or in part to disguise or conceal the source, ownership, or control of the proceeds, and that those funds were in fact the proceeds of that unlawful activity, in violation of 18 U.S.C. §

1956. These acts constitute a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(a).

541.    Defendants have knowingly, willfully, and intentionally conspired and agreed on multiple occasions to receive income derived from a pattern of racketeering activity (mail fraud and wire fraud) and launder the proceeds of the illegal acts to promote the continued operation of the NovaTechFX Enterprise Ponzi Scheme, and to disguise or conceal the source, ownership, or control of the proceeds.

542.    Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

543.    Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

## A.    The Enterprise

544.    A Plaintiff incorporates the allegations of paragraphs 476-486, supra, as if fully stated herein.

545.    At all relevant times, the Corporate Defendants as listed in paragraphs 77-91, supra, collectively constituted an enterprise (the NovaTech Enterprise Ponzi Scheme) as defined in 18 U.S.C. § 1961(4), engaged in and whose activities affected interstate and foreign commerce.

## B.    Defendants' Pattern of Racketeering Activity

546.    Plaintiff incorporates the allegations of paragraphs 487-489, supra, as if fully stated herein.

**C.      Predicate Acts**

547.    Plaintiff incorporates the allegations of paragraphs 490-492, supra, as if fully stated herein.

548.    Such predicate acts included, inter alia, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956), and improper use of proceeds derived from racketeering activities (18 U.S.C. § 1957).

**D.      Continuity**

549.    The Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(b).

550.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

551.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

**E.      Damages and Causation**

552.    The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

553.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in her property, causing Plaintiff to suffer monetary losses in the amount of not less than $ 50 billion dollars, with said damages to be proven at trial.

554.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

555.    Pursuant to 18 U.S.C. § 1962(c), the Plaintiff is entitled to recover at least three times the actual damages caused by the Defendants plus the cost of the suit, including reasonable attorney's fees, and pre-judgement and post-judgment interest.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 5
## BREACH OF CONTRACT

556.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

557.     As set forth above, the Defendants solicited and entered into an implied contract by which the members of the Class agreed to entrust, pay, transmit, turn over and/or wire not less than $ 50 billion dollars in investment property and funds to the Defendants, and the Defendants agreed to invest that property and funds in cryptocurrency through an automated investment trading platform which the Defendants guaranteed to earn at least 3% each week.

558.     The members of the Class did entrust, pay, transmit, turn over and/or wire not less than $ 50 billion dollars in investment property and funds to the Defendants as agreed, and fully performed all terms and conditions of the implied contract.

559.     Defendants materially breached the express and implied terms of the contract by failing to invest the property and funds as agreed.

560.     The Defendants made demands to Defendants that Defendants refund their investment funds and property. Despite those demands, Defendants have refused and continue to refuse to refund the investment funds and property to the members of the Class.

561.     Defendants, through their actions described above, breached their contract with the members of the Class in several other material respects, including, but not limited to, engaging in a Ponzi scheme and defrauding and embezzling millions of dollars from the members of the Class as well as taking from them for Defendants' own benefit investment opportunities.

562.     As a direct and proximate result of the Defendants' breaches, the members of the Class have suffered substantial damages in the amount of not less than $ 50 billion and said damages to be proven at trial.

563.     The Plaintiffs have also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendants' conduct.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's damages for Defendants' breach of contract, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

**COUNT 6**
**BREACH OF IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

564.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

565.    As set forth above, the Defendants solicited and entered into an implied contract by which the members of the Class agreed to entrust, pay, transmit, turn over and/or wire not less than $ 50 billion in investment property and funds to the Defendants, and the Defendants agreed to invest that property and funds in cryptocurrency through an automated investment trading platform which the Defendants guaranteed to earn at least 3% each week**.**

566.    The members of the Class did entrust, pay, transmit, turn over and/or wire not less than $ 50 billion in investment property and funds to the Defendants as agreed, and fully performed all terms and conditions of the implied contract.

567.    Defendants materially breached the express and implied terms of the contract by failing to invest the property and funds as agreed.

568.    The Defendants made demands to Defendants that Defendants refund their investment funds and property.  Despite those demands, Defendants have refused and continue to refuse to refund the investment funds and property to the members of the Class.

569.    Defendants, through their actions described above, breached their contract with the members of the Class in several other material respects, including, but not limited to, engaging in a Ponzi scheme and defrauding and embezzling billions of dollars from the

members of the Class as well as taking from them for Defendants' own benefit investment opportunities.

570.    The above-referenced implied contract, as with all contracts, contains an implied covenant of good faith and fair dealing.

571.    The implied covenant of good faith and fair dealing applies to the parties' performance and rights under the contract.

572.    Through the conduct described above, Defendants denied the members of the Class the benefit of the bargain originally intended by the parties and provided by the contract.

573.    Through the conduct described above, Defendants acted in bad faith and have breached their implied covenant of good faith and fair dealing.

574.    As a direct and proximate result of Defendants' violations of their implied covenant of good faith and fair dealing, the members of the Class have and will suffer significant financial harm, including consequential and other damages, in the amount not less than $50 billion said damages to be proven at trial.

575.    The Plaintiffs have also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendants' conduct.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's damages for Defendants' breach of implied covenant of good faith and fair dealing, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

**COUNT 7**
**UNJUST ENRICHMENT**

576.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

577.    At Defendants' request, and in reliance on their promises -- that (i) investor moneys would be invested in cryptocurrency through an automated investment trading platform (ii) potential investors would earn a 3% weekly return on their investment and would double their money within five months using the "Bots Assisted account" to conduct trading (iii) NovaTechFX would guarantee 3% weekly return on their investments and (iv) actual investors had earned, and were continuing to earn, at least 3% each week on their investments -- the members of the Class entrusted, paid, transmitted, turned over and/or wire not less than $ 50 billion in investment funds to the Defendants.

578.    Only a portion of the investment funds provided to the Defendants were actually invested by the Defendants, and none were invested as represented, and the vast portion of the funds were stolen or converted by the Defendants for the Defendants' own benefit to the great detriment of the members of the Class.

579.    Defendants failed to invest the vast portion of the investment funds provided to them by the members of the Class as set forth above.

580.    Defendants received and retained the benefit of the Plaintiff's performance, including their money and property, in direct violation of Defendants' obligations to the Plaintiffs and without performing in accordance with the Defendants' promises and pretences.

581.    Defendants must be required to return to the members of the Class all of their money Defendants wrongfully retained.

582.    Defendants have been unjustly enriched, and the Plaintiffs are entitled to be compensated for the benefit they have conferred on the Defendants.

583.    The value of the money and property unjustly retained by Defendants is in excess of $50 billion dollars, the exact amount of which will be proven at trial.

584.    The Plaintiff has also suffered additional damages in the form of lost profits on their investment and attorneys' fees and costs as a proximate and foreseeable result of Defendants' conduct.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's damages for the money and property unjustly retained by the Defendants, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 8
## CONVERSION / THEFT / EMBEZZLEMENT

585.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

586.    The Defendants received the above-referenced investment funds from the members of the Class, to be invested in accordance with the Defendants' promises and representations.

587.    The Defendants did not invest the investment funds as promised and have failed and refused to return the investment funds provided to them by the members of the Class, despite demand, therefore.

588.    Instead, the Defendants knowingly obtained or used, or endeavored to obtain or to use, the Plaintiffs' property (i.e., the investment funds) with intent to permanently appropriate the property for the Defendants' own use and benefit through fraud and deceit.

589.    As a direct and proximate result of this theft, conversion and/or embezzlement of the Plaintiffs' investment funds, the Plaintiffs have suffered substantial damages in the amount of at least $ 50 billion plus consequential damages consisting of, among other things, attorneys' fees and costs of investigating and discovering Defendants' fraud and pursuing this action.

590.    The Defendants' actions have been willful and outrageous and undertaken with reckless indifference to the rights of the Plaintiffs. Such conduct warrants an award to the Plaintiff of punitive or exemplary damages in an amount sufficient to punish the Defendants and deter similar wrongdoing by others.

**WHEREFORE**, the Plaintiff request that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's damages for the money and property unjustly stolen, converted and/or embezzled by the Defendants, lost profits on their investment, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 9
## COMMON LAW FRAUD

591.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

592.    From January 2019 through January 2024, the Defendants promised and represented to the members of the Class that their money would be, and/or had been invested in cryptocurrency through an automated investment trading platform.

593.    From January 2019 through January 2024, the Defendants committed fraud when they intentionally and falsely represented to the members of the Class that (a) their money would be, and/or had been invested in cryptocurrency (b) they would earn, and in fact did earn,

3% weekly return on their investment (c) Novatech was a registered hedge fund (d) Novatech was a registered investment advisor and (e) NovaTech was a registered broker.

594.    The Defendants' above promises and representations were false, and Defendants knew they were false when made, and they made the false promises and representations specifically intending for the members of the Class to rely upon the false promises and representations, and to induce them to invest, to send them money and property, and to stay invested, as part of a scheme to defraud the members of the Class.

595.    The Defendants purposely and intentionally did not invest, as promised, or represented, or at all, the moneys and property provided to them by the members of the Class.

596.    The Defendants did not intend to invest, at promised or represented, the moneys and property provided to them by the members of the Class.

597.    The members of the Class justifiably relied on the Defendants' representations, and based on this reliance, entrusted, paid, transmitted, turned over and/or wire not less than $50 billion in investment funds to the Defendants.

598.    The members of the Class have been substantially harmed by the Defendants' conduct.

599.    As a direct and proximate result of Defendants' deliberate, intentional and vile conduct, all done with malice, fraud and/or oppression, the members of the Class have incurred and will continue to incur damages in the amount of at least $ 50 billion said damages to be proven at trial, plus consequential damages consisting of, among other things, attorneys' fees and costs of investigating and discovering Defendants' fraud and pursuing this action.

600.    Such conduct was done in furtherance of their own private interests, and was wilful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm, and therefore further warrants an award to

the members of the Class of punitive or exemplary damages in an amount to be proven at trial and sufficient to punish the Defendants and deter similar wrongdoing by others.

WHEREFORE, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 10
## INTENTIONAL MISREPRESENTATION

601.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

602.    The Defendants did not perform as promised and at all times did not intend to perform.

603.    The Defendants intended to enrich themselves at the expense of the members of the Class, and to defraud them by falsely claiming that (a) investor moneys would be invested in cryptocurrency through an automated investment trading platform (b) potential investors would earn a 3% weekly return on their investment (c) NovaTechFX would guarantee 3% weekly return on their investments (d) actual investors had earned, and were continuing to earn, at least 3% each week on their investments (e) NovaTech was a registered hedge fund (f) Novatech was a registered investment adviser and (g) NovaTecvh was a registered broker.

604.    The Defendants false promises and representations were designed to deceive investors such as the members of the Class and cause them to send large sums of money to Defendants for investments.

605.    The members of the Class did reasonably rely on those representations and they entrusted, paid, transmitted, turned over and/or wire not less than $ 50 billion in investment funds to the Defendants.

606.    The reliance by the members of the Class on the promises of the Defendants was reasonable and a substantial factor in the harm the members sustained

607.    The Defendants did not invest the investment funds as promised and have failed and refused to return the investment funds provided to them by the members of the Class, despite demands therefore.

608.    Instead, the Defendants knowingly obtained or used, or endeavored to obtain or to use, the Plaintiff's property (i.e., the investment funds) with intent to permanently appropriate the property for the Defendants' own use and benefit through misrepresentations, deceit and fraud.

609.    As a result of the intentional misrepresentations and fraud by the Defendants, the members of the Class suffered damages in the amount of at least $ 50 billion dollars, plus consequential damages consisting of, among other things, attorneys' fees and costs of investigating and discovering Defendants' fraud and pursuing this action.

610.    Defendants' misconduct was wilful, intentional, malicious and fraudulent, entitling the Plaintiffs to an award of exemplary or punitive damages in an amount sufficient to punish the Defendants and deter similar wrongdoing by others.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 11
## CIVIL CONSPIRACY

611.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

612.    Upon information and belief, the Defendants agreed, combined and acted with a common plan and purpose to defraud and embezzle money from the members of the Class, and convert the Plaintiff's property to themselves and for their own benefit, by engaging in the unlawful acts described above.

613.    Upon information and belief, the Defendants agreed, combined and acted with a common plan to breach their fiduciary and common law duties owed to the members of the Class by engaging in the unlawful acts described above.

614.    At all relevant times, the Defendants committed overt acts, as described above, including, but not limited to, engaging in a Ponzi scheme and defrauding and embezzling millions of dollars from the members of the Class for their own benefit in pursuance of the common purpose described above.

615.    As a direct and proximate result of the Defendants' acts done in furtherance of the conspiracy, the members of the Class have been damaged in their businesses and properties, causing Plaintiffs to suffer monetary damages in an amount not less than $ 50 billion said damages are to be proven at time of trial. The Plaintiffs have suffered, and will continue to suffer, these injuries.

616.    The Defendants' actions have been wilful, malicious, wanton, and oppressive, and done with conscious and reckless indifference to the rights of the Plaintiffs and to the consequences and with specific intent to harm the Plaintiffs, warranting an award of exemplary or punitive damages in an amount sufficient to be proven at trial to punish the Defendants and deter similar wrongdoing by others.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest

in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 12
## USE OF INCOME DERIVED FROM A
## PATTERN OF RACKETEERING ACTIVITY IN THE
## OPERATION OF AN ENTERPRISE UNDER
## NEW YORK ORGANIZED CRIME CONTROL ACT ARTICLE 460

617.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

### A.  The Enterprise

618.    Plaintiff incorporates the allegations of paragraphs 476-486, supra, as if fully stated herein.

619.    At all relevant times, the Corporate Defendants as listed in paragraphs 77-91, supra, collectively constituted an enterprise (the NovaTech Enterprise Ponzi Scheme) that functioned as a continuing unit, and which engaged in and whose activities affected interstate and foreign commerce.

620.    The NovaTech Enterprise Ponzi Scheme constituted an illegal scheme that was organized for the purpose of inducing investors to invest moneys by means of untrue statements of material fact and the omission to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading, including the false material representations as detailed supra.

621.    The NovaTech Enterprise Ponzi Scheme was comprised of separate entities (the Corporate Defendants) associated with each other in fact by shared personal and/or agreements, for the common of carrying out an ongoing criminal enterprise to defraud investors and their family and friends.

622.    Each of the Defendants conducted or participated, directly or indirectly, in the Enterprise through a pattern of criminal activity, consisting of numerous and repeated uses of the interstate mails and wire communications, and acts of money laundering, all with the purpose of executing a scheme to defraud.

**B.    Defendants' Pattern of Racketeering Activity and Predicate Acts**

623.    At least three of the following incidents occurred, creating a pattern of racketeering.

a.    In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security in NOVATECH as defined by article 460, directly or indirectly, the Defendants employed devices, schemes, or artifices to defraud, in violation of Article 460. The Defendants operated the NovaTech Enterprise Ponzi Scheme beginning on or about January 2019 to present.

b.    The NovaTech Enterprise Ponzi Scheme, as alleged above, was structured to give the appearance to potential/existing investors that was positioned to reap large weekly profits from investment in Crypto Currency.

c.    The Defendants employed false material representations to perpetrate their scheme and conceal their ongoing fraudulent activity; to wit, at all relevant times, Cynthia Petion together with the named Defendants, held virtual weekly investor meetings ("weekly meetings), to induce investors to invest and stay invested, by falsely representing via wires.

624.    In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security of NovaTech as defined by Chapter 460, directly or indirectly, the Defendants obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Article 460.

625.    From January 2019 to the present, the Defendants knowingly and willfully concealed or covered up, by their scheme, a material fact that there were operating a scheme in violation of New York Article 460.

626.    The incidents described above occurred every Friday of the month between January 2019 and January 2024, during video zoom calls, calls "Investors' meeting). All of these meetings had the same or similar intents (repeatedly encouraging people to invest money or money based on lies, misrepresentations), resulting in members of the Class invested billions of dollars based on those intentional misrepresentations.

627.    Defendants, with intent to defraud members of the class received proceeds derived, directly or indirectly, from the pattern of racketeering activity, from investors.

628.    Defendants used or invested, directly or indirectly, such proceeds or the proceeds derived from the investment or use thereof, in the establishment and operation of the NovaTech Enterprise Ponzi Scheme in violation of article 460, including but not limited to creating accounts with financial institutions, paying salaries, creating investor documents, creating business plans, travelling, etc., the further descriptions of which cannot be ascertained by Plaintiffs at the time of filing this Complaint.

629.    At all relevant times hereto, all Defendants agreed to and did use income or proceeds received from a pattern of racketeering activity to form, control, establish, and operate the NovaTech Enterprise Ponzi Scheme, which was formed for the purpose of defrauding Plaintiffs, and which was engaged in and affected interstate and foreign commerce.

630.    All of the Defendants acted on behalf of NovaTech Enterprise Ponzi Scheme and each other in conducting the affairs of the businesses, have engaged in conduct in violation of article 460.

C.    **Continuity**

631.    The NovaTech Enterprise Ponzi Scheme was an ongoing organization, formal or informal, and functioned both as a continuing unit and has a common purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their monies, and hiding their conduct.

632.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

633.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

D.    **Damages and Causation**

634.    The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

635.    As a direct and proximate result of the Defendants' racketeering activities and violations of New York Organized Crime Control Act Article 460, Plaintiff has been injured in her property, causing Plaintiff to suffer monetary losses in the amount of not less than $ 50 billion dollars, with said damages to be proven at trial.

636.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors

would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

637.   As a proximate result of the Defendants' fraudulent actions, the Class suffer damages in the amount of $ 50 billion dollars, for which each of the Defendant, individually or severally liable to class members.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 13
### CONDUCT OR PARTICIPATION IN AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY UNDER THE NEW YORK CRIME CONTROLLED (RICO)ACT, ARTICLE 460

638.   Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

**A.     The Enterprise**

639.   Plaintiff incorporates the allegations of paragraphs 476-486, supra, as if fully stated herein.

640.   At all relevant times, the Corporate Defendants as listed in paragraphs 77-91, supra, collectively constituted an enterprise (the NovaTech Enterprise Ponzi Scheme) that

functioned as a continuing unit and which engaged in and whose activities affected interstate and foreign commerce.

641.   The NovaTech Enterprise Ponzi Scheme constituted an illegal scheme that was organized for the purpose of inducing investors to invest moneys by means of untrue statements of material fact and the omission to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading, including the false material representations as detailed supra.

642.   The NovaTech Enterprise Ponzi Scheme was comprised of separate entities (the Corporate Defendants) associated with each other in fact by shared personal and/or agreements, for the common of carrying out an ongoing criminal enterprise to defraud investors and their family and friends.

643.   Each of the Defendants conducted or participated, directly or indirectly, in the Enterprise through a pattern of criminal activity, consisting of numerous and repeated uses of the interstate mails and wire communications, and acts of money laundering, all with the purpose of executing a scheme to defraud.

## B.   Defendants' Pattern of Racketeering Activity and Predicate Acts

644.   At least three of the following incidents occurred, creating a pattern of racketeering.

a.   In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security in NovaTech as defined by article 460, directly or indirectly, the Defendants employed devices, schemes, or artifices to defraud, in violation of Article 460. The Defendants operated the NovaTech Enterprise Ponzi Scheme beginning on or about January 2019 to present.

b.     The NovaTech Enterprise Ponzi Scheme, as alleged above, was structured to give the appearance to potential/existing investors that was positioned to reap large weekly profits from investment in Crypto Currency.

c.     The Defendants employed false material representations to perpetrate their scheme and conceal their ongoing fraudulent activity; to wit, at all relevant times, Cynthia Petion together with the named Defendants, held virtual weekly investor meetings ("weekly meetings), to induce investors to invest and stay invested, by falsely representing via wires.

645.    In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security of NovaTech as defined by Chapter 460, directly or indirectly, the Defendants obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Article 460.

646.    From January 2019 to the present, the Defendants knowingly and willfully concealed or covered up, by their scheme, a material fact that there were operating a scheme in violation of New York Article 460.

647.    The incidents described above occurred every Friday of the month between January 2019 and January 2024, during video zoom calls, calls "Investors' meeting). All of these meetings had the same or similar intents (repeatedly encouraging people to invest money or money based on lies, misrepresentations), resulting in members of the Class invested billions of dollars based on those intentional misrepresentations.

648.    Defendants, with intent to defraud members of the class received proceeds derived, directly or indirectly, from the pattern of racketeering activity, from investors.

649.    Defendants used or invested, directly or indirectly, such proceeds or the proceeds derived from the investment or use thereof, in the establishment and operation of the

NovaTech Enterprise Ponzi Scheme in violation of article 460, including but not limited to creating accounts with financial institutions, paying salaries, creating investor documents, creating business plans, travelling, etc., the further descriptions of which cannot be ascertained by Plaintiffs at the time of filing this Complaint.

650.    At all relevant times hereto, all Defendants agreed to and did use income or proceeds received from a pattern of racketeering activity to form, control, establish, and operate the NovaTech Enterprise Ponzi Scheme, which was formed for the purpose of defrauding Plaintiffs, and which was engaged in and affected interstate and foreign commerce.

651.    All of the Defendants acted on behalf of NovaTech Enterprise Ponzi Scheme and each other in conducting the affairs of the businesses, have engaged in conduct in violation of article 460.

652.    The above -named Defendants were employed by and/or associated with the NovaTech Enterprise Ponzi Scheme.

653.    At all relevant times, the Defendants conducted, participated in, directly or indirectly in such enterprise by engaging in all the incidents and predicate acts alleged above.

654.    Each incident described above had the same or similar intents (repeatedly lying, and misleading investors for the purpose of getting them to invest in the Ponzi Scheme).

655.    All the Defendants worked together as accomplices of each other and developed methods of commission that compensate them for each investor they brought into NovaTech

## C.    Continuity

656.    The NovaTech Enterprise Ponzi Scheme was an ongoing organization, formal or informal, and functioned both as a continuing unit and has a common purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their monies, and hiding their conduct.

657.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

658.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

## E.    Damages and Causation

659.    The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

660.    As a direct and proximate result of the Defendants' racketeering activities and violations of New York Organized Crime Control Act Article 460, Plaintiff has been injured in her property, causing Plaintiff to suffer monetary losses in the amount of not less than $ 50 billion dollars, with said damages to be proven at trial.

661.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

662.    As a proximate result of the Defendants' fraudulent actions, the Class suffer damages in the amount of $ 50 billion dollars, for which each of the Defendant, individually or severally liable to class members.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 14
## ACQUISITION AND MAINTENANCE OF AN INTEREST IN OR CONTROL OVER ANY ENTERPRISE UNDER NEW YORK CRIME CONTROLLED ACT OF 1986 – ARTICLE 460 SECTION 20.00

663.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

**D.    The Enterprise**

664.    Plaintiff incorporates the allegations of paragraphs 476-486, supra, as if fully stated herein.

665.    At all relevant times, the Corporate Defendants as listed in paragraphs 77-91, supra, collectively constituted an enterprise (the NovaTech Enterprise Ponzi Scheme) that functioned as a continuing unit and which engaged in and whose activities affected interstate and foreign commerce.

666.    The NovaTech Enterprise Ponzi Scheme constituted an illegal scheme that was organized for the purpose of inducing investors to invest moneys by means of untrue statements of material fact and the omission to state material facts necessary in order to make the

statements made, in light of the circumstances in which they were made, not misleading, including the false material representations as detailed supra.

667.    The NovaTech Enterprise Ponzi Scheme was comprised of separate entities (the Corporate Defendants) associated with each other in fact by shared personal and/or agreements, for the common of carrying out an ongoing criminal enterprise to defraud investors and their family and friends.

668.    Each of the Defendants conducted or participated, directly or indirectly, in the Enterprise through a pattern of criminal activity, consisting of numerous and repeated uses of the interstate mails and wire communications, and acts of money laundering, all with the purpose of executing a scheme to defraud.

## E.    Defendants' Pattern of Racketeering Activity and Predicate Acts

669.    At least three of the following incidents occurred, creating a pattern of racketeering.

a.    In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security in NOVATECH as defined by article 460, directly or indirectly, the Defendants employed devices, schemes, or artifices to defraud, in violation of Article 460. The Defendants operated the NovaTech Enterprise Ponzi Scheme beginning on or about January 2019 to present.

b.    The NovaTech Enterprise Ponzi Scheme, as alleged above, was structured to give the appearance to potential/existing investors that was positioned to reap large weekly profits from investment in Crypto Currency.

c.    The Defendants employed false material representations to perpetrate their scheme and conceal their ongoing fraudulent activity; to wit, at all relevant times, Cynthia Petion together with the named Defendants, held virtual weekly investor meetings ("weekly meetings), to induce investors to invest and stay invested, by falsely representing via wires.

121

670.    In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security of NovaTech as defined by Chapter 460, directly or indirectly, the Defendants obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Article 460.

671.    From January 2019 to the present, the Defendants knowingly and willfully concealed or covered up, by their scheme, a material fact that there were operating a scheme in violation of New York Article 460.

672.    The incidents described above occurred every Friday of the month between January 2019 and January 2024, during video zoom calls, calls "Investors' meeting). All of these meetings had the same or similar intents (repeatedly encouraging people to invest money or money based on lies, misrepresentations), resulting in members of the Class invested billions of dollars based on those intentional misrepresentations.

673.    Defendants, with intent to defraud members of the class received proceeds derived, directly or indirectly, from the pattern of racketeering activity, from investors.

674.    Defendants used or invested, directly or indirectly, such proceeds or the proceeds derived from the investment or use thereof, in the establishment and operation of the NovaTech Enterprise Ponzi Scheme in violation of article 460, including but not limited to creating accounts with financial institutions, paying salaries, creating investor documents, creating business plans, travelling, etc., the further descriptions of which cannot be ascertained by Plaintiffs at the time of filing this Complaint.

675.    At all relevant times hereto, all Defendants agreed to and did use income or proceeds received from a pattern of racketeering activity to form, acquire, control, establish, maintain, and operate the NovaTech Enterprise Ponzi Scheme, which was formed for the

purpose of defrauding Plaintiffs, and which was engaged in and affected interstate and foreign commerce.

676.    All of the Defendants acted on behalf of NovaTech Enterprise Ponzi Scheme and each other in conducting the affairs of the businesses, have engaged in conduct in violation of article 460.

677.    The above -named Defendants were employed by and/or associated with the NovaTech Enterprise Ponzi Scheme.

678.    At all relevant times, the Defendants conducted, participated in, directly or indirectly in such enterprise by engaging in all the incidents and predicate acts alleged above.

679.    Each incident described above had the same or similar intents (repeatedly lying, and misleading investors for the purpose of getting them to invest in the Ponzi Scheme).

680.    All the Defendants worked together as accomplices of each other and developed methods of commission that compensate them for each investor they brought into No.

681.    At all relevant times, the Defendants individually were agents of, employed by or associated with the NovaTech Enterprise Ponzi Scheme.

682.    In committing the acts plead herein, the Defendants received income derived from the NovaTech Enterprise Ponzi Scheme.

683.    Defendants used the income or proceeds therefrom in their acquisition, operation and maintenance of NovaTech Enterprise Ponzi Scheme, an enterprise which operates in and affects interstate and foreign commerce.

684.    At various times and places detailed in this complaint and in the accompanying exhibits, Defendants acquired and/or maintained, directly or indirectly, an interest in or control of the NovaTech Enterprise Ponzi Scheme.

685.    During the period from at least January 2019 through and including January 2024, all Defendants cooperated jointly and severally in the commission of two or more of the RICO predicate acts.

686.    Defendants committed two or more of the offenses referred to above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e., a continuing threat of their respective racketeering activities.

## F.    Continuity

687.    The NovaTech Enterprise Ponzi Scheme was an ongoing organization, formal or informal, and functioned both as a continuing unit and has a common purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their monies, and hiding their conduct.

688.    The NovaTech Enterprise Ponzi Scheme was "close-ended" in that the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, which were the mechanism employed by the Defendants to orchestrate the scheme, were executed from at least 2020 through May 22, 2022.

689.    The NovaTech Enterprise Ponzi Scheme is "open-ended" because the thousands of predicate acts of related mail fraud, wire fraud, money laundering, and improper use of proceeds derived from racketeering activities, were part of the scheme's regular way of doing business, and because the Defendants have continued to engage in related predicate acts through the present day.

## E.    Damages and Causation

690.    The Plaintiff is a person who have been injured by the fraudulent and racketeering activities of the Defendants.

691.    As a direct and proximate result of the Defendants' racketeering activities and violations of New York Organized Crime Control Act Article 460, Plaintiff has been injured in her property, causing Plaintiff to suffer monetary losses in the amount of not less than $ 50 billion dollars, with said damages to be proven at trial.

692.    There is a direct relation between the Defendants' conduct and the Plaintiffs' injury. Defendants' fraudulent representations that investor moneys would be invested in cryptocurrency through an automated investment trading platform, that potential investors would double their money within five months of investing by earning 3% weekly return, and that actual investors had earned, and were continuing to earn, at least 3% each week on their investments, together with their fraudulent omissions listed supra, was a substantial factor in each Plaintiff's decision to invest in the NovaTech Enterprise Ponzi Scheme. The direct victims of the Defendants' RICO violations were the Plaintiffs.

693.    As a proximate result of the Defendants' fraudulent actions, the Class suffer damages in the amount of $ 50 billion dollars, for which each of the Defendant, individually or severally liable to class members.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

### COUNT 15
### CONSPIRACY TO VIOLATE THE PROVISIONS
### OF ARTICLE 460 ET SEQ.,
### OF NEW YORK CRIME CONTROL ACT.

694.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

695.    The above Defendants in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, namely, to engage in a pattern of racketeering activity described above.

696.    The Defendants knowingly and wilfully became members of such conspiracy. At the time they joined the conspiracy, they did so with the specific intent to participate in the affairs of the criminal enterprise with the knowledge and intent that Cynthia and Eddie Petion or their agents would engage in many incidents of racketeering described in paragraph above, as part of a pattern of racketeering activity. The following Defendants: Cynthia Petition, Martin Zizi, Frantz Ciceron, Eddy Petion, Paul J DeRenzo, Deborah Brasil participated in the affairs of NOVATECH.

697.    From January 2019 to about January 2024 by the above Defendants invited several investors to weekly investors' meeting. The purpose of the meetings was to discuss the performance of NOVATECH. The Defendants told investors that the company had bots to assist in investment and that the rate of returns was between five to ten percent weekly, and that their money was earning interest daily when the Defendants knew this was not true.

698.    The above Defendants participated in the Fraudulent Scheme, executing documents they knew to be false, including fake reports on return on investment.

699.    As a proximate result of the Defendants' wilful participation in the fraudulent scheme, and recruiting investors, members of the class sustained economic damages for which the Defendants are severally and individually liable to the Plaintiffs.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's compensatory damages, treble damages, reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

**COUNT 16**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

700. Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

701. Defendants' actions toward the Plaintiffs and other members of the Class constituted extreme and outrageous conduct and was done intentionally.

702. Defendants fraudulently coerced members of the class to invest their entire life saving with a false promise of earning more than 3% weekly returns on their investments.

703. Most of the members of class are not rich and are every-day immigrant who works very hard to save a little bit of money.

704. The defendants recklessly with total disregard for their wellbeing took their money for their own personal use.

705. Defendants' extreme and outrageous conduct subjected the class members to emotional trauma, humiliation, severe emotional and physical distress.

706. Defendants' actions and the ensuing damages to class members were foreseeable. Upon information and believe some class members have committed suicide upon finding out that NOVATECH was a Ponzi Scheme.

707. As a result of Defendants' intentional actions, the Plaintiffs sustained injuries and damages for which each Defendant is individually and severally liable to Plaintiffs.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's damages caused to them by the Defendant's intentional infliction of emotional distress, including reasonable attorney's

fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

**COUNT 17**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

708.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

709.    Plaintiffs owe a duty of care to the members of the class, that duty is an affirmative duty to tell the truth with regard to the nature of the investment in the NovaTech.

710.    Defendants working together and in concert breach that affirmative duty by repeatedly lying to the Plaintiffs about the nature of the business, the company, the platform, its functionality, and the return on investment.

711.    These lies were material because without them, members of the class would not have invested in NovaTech.

712.    Plaintiffs sustained emotional and economic damages because of the Defendants' actions.

713.    Those damages were foreseeable, and they are the direct result of Defendants' actions.

714.    Defendants' actions are the proximate cause of Plaintiff's injuries, "but for" Defendants actions Plaintiff would not have sustained the damages.

715.    Each named Defendant is individually and severally liable to Plaintiffs for all their damages.

**WHEREFORE**, the Plaintiff requests that the Court enter judgment in favor of them and jointly and severally against the Defendants awarding Plaintiff's damages caused to them by the Defendant's intentional infliction of emotional distress, including reasonable attorney's fees and costs, pre-judgment and post-judgment interest in the maximum amount allowed by law, and any and all other relief to which Plaintiff may be entitled at law or in equity.

## COUNT 18
## EXEMPLARY PUNITIVE DAMAGES

716.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

717.    Defendants' actions alleged above were malicious, wilful and wanton, and were made with specific intent to harm Plaintiffs.

718.    Defendants' actions alleged above violated 18 U.S.C. § 1343 and New York Crime Controlled Act of 1986 – (New York Rico)

719.    Defendants' actions alleged above constitute fraud and conspiracy to commit fraud.

720.    In order to deter such conduct in the future, Plaintiff should be awarded exemplary punitive damages in an amount of not less than $ 50 billion.

721.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable that are raised herein, or which hereinafter may be raised in this action.

## COUNT 19
## STATUTORY CLAIM FOR FRAUDULENT CONVEYANCE

722.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

723.    Upon information and belief, Defendants developed and implemented a scheme to transfer assets to each other and others to place them outside of the reach of their creditors, including each member of the Class.

724.    The aforesaid transfers were made with actual intent to hinder, delay, or defraud the members of the Class and without receiving a reasonable equivalent value in exchange for the transfer or obligation.

**COUNT 20**
**VIOLATION OF NEW YORK**
**GENERAL BUSINESS LAW §§ 352 AND 353**

725.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

726.    The Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

727.    The acts and practices of the Defendants alleged herein violated Article 23-A of the GBL §§ 352 and 353 in that they constituted fraudulent practices, including a scheme to defraud, as defined in GBL § 352 et seq.

**COUNT 21**
**COMMODITIES FRAUD**
**GENERAL BUSINESS LAW § 352-C**

728.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

729.    The Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

730.    The acts and practices of the Defendants alleged herein violated GBL § 352-c(1)(a), in that they involved the use or employment of a fraud, deception, concealment, suppression, or false pretense, where said uses or employments were engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation, or purchase within or from this state of any securities or commodities.

731.    The acts and practices of the Defendants alleged herein violated GBL § 352-c(1)(b), in that they involved illegal and prohibited acts or practices in the making of promises or representations as to the future which were beyond reasonable expectation or unwarranted by existing circumstances where said promises or representations were made to induce or

promote the issuance, distribution, exchange, sale, negotiation, or purchase within or from this State of any securities or commodities.

732.    The acts and practices of the Defendants alleged herein violated GBL § 352-c(1)(c), in that they involved illegal and prohibited acts or practices in the making of representations or statements which are false, where Defendant (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made, where said representations were made to induce or promote the issuance, distribution, exchange, sale, negotiation, or purchase within or from this State of any securities or commodities.

733.    The acts and practices of the Defendants alleged herein violated GBL § 352-c(2), in that Defendants engaged in a device or scheme to obtain money, profit or property by prohibited means.

## COUNT 22
## FAILURE TO REGISTER
## -GENERAL BUSINESS LAW § 359-E

734.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

735.    The Plaintiff repeats and re-alleges the paragraphs above as if fully stated herein.

736.    The acts and practices of the Defendants alleged herein violated GBL § 359-e, insofar as such acts and practices constitute Defendants acting as dealers or salespeople in the issuance, sale or purchase of, or offer to sell or purchase, securities from or to the public within or from the state of New York without filing a registration statement with the OAG, also known as the Department of Law.

## COUNT 23
## INJUNCTIVE RELIEF

737.    Plaintiff incorporates the allegations of paragraphs 1 - 474 as if stated fully herein.

738.    Unless Defendants are temporarily, preliminarily, and permanently enjoined from improperly and unlawfully depriving the members of the Class of their rights under the above-referenced implied contract, and from transferring assets to each other and others to place them outside of the reach of their creditors, the members of the Class will be immediately and irreparably harmed by present and/or future economic loss, which is presently incalculable.

739.    The members of the Class have no complete or adequate remedy at law.

740.    The members of the Class will suffer greater injury if an injunction is not granted than Defendants will incur if the injunction is granted.

741.    The public interest will be served by an injunction against Defendants by the enforcement of the requirements of the contract.

742.    By virtue of the foregoing, the Plaintiff has demonstrated a likelihood of success on the merits and that the balancing of equity favors issuance of an injunction against Defendants.

## COUNT 24
## ACCOUNTING AND INSURANCE

743.    Plaintiff incorporates the allegations of paragraphs 97 - 474 as if stated fully herein.

744.    Defendants must account for all transactions regarding their fraudulent scheme.

745.    Defendants must also provide the names, policy numbers, and contact information for their insurance companies, including but not limited to policies providing for general liability, professional liability, and errors and omissions, so the members of the Class can submit claims against the Defendants.

132

746.    The members of the Class demand that Defendants be required to produce a full and complete accounting of all transactions regarding their fraudulent scheme, including, but not limited to, all transfers of funds to accounts and/or third parties wherever they may be, as well as their insurance companies, insurance contact information, policy numbers, and coverage.

## VII.    JURY DEMAND

747.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable that are raised herein, or which hereinafter may be raised in this action.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as the Class representative.

2.    Finding that all defendants are jointly and severally liable for all damage caused to Plaintiffs.

3.    Awarding Plaintiffs monetary damages in an amount not less than $ 50 billion said amount to be proven at trial.

4.    Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c) and New York Article 460).

5.    Awarding Plaintiffs its litigation expenses, including reasonable attorneys' fees, costs, and disbursements.

6.     Awarding Plaintiffs punitive damages in the sum of not less than $ 150 billion or an amount otherwise to be decided by a jury.

7.    Granting such other relief as the case may require or as may be deemed proper and equitable.

**Dated**: this 25th Day of July 2024

Respectfully submitted,

**/s/ Wil Morris,**
MORRIS LEGAL, PC
2800 Biscayne Blvd, Suite 530
Miami, Florida 33137