**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Avis Mullins, et al.,

                          Plaintiffs,

              -against-

Novatech, et al.,

                          Defendants.

1:24-cv-00824 (VSB) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE:**

Plaintiffs Avis Mullins ("Mullins") and United Investor Community, Inc. (collectively, the "Plaintiffs") brought this action alleging federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and the federal securities law, as well as under state law, arising out of allegedly fraudulent investment schemes, and later amended their pleading to drop the federal securities law claims. Pending before the Court are the following motions: (1) a motion by Kyle Farman ("Farman") and Sera Orion, LLC ("Sera") (collectively, the "Sera Defendants"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") (Sera Defs.' Not. of Mot., ECF No. 247); (2) a motion by twenty-two Defendants, *i.e.*, Dapilinu Dunbar ("Dunbar"),[1] Corrie J. Sampson ("Sampson"), John Garofano ("Garofano"), Bob Bearden ("Bearden"), Steven Greene ("Greene"), Stanley Richards ("Richards"), Devey Dejong ("Dejong"),

---

[1] The SAC misspells Dunbar's first name as Dapinulu. (*See* SAC, ECF No. 37, ¶ 72.)

Bob St. Louis ("B. St. Louis"), Sophia St. Louis ("S. St. Louis"), Heather Belanger ("Belanger"),[2] Goldentastic Consulting LLC ("Goldentastic"), Marsha Hadley ("Hadley"), Micheline Thomas ("M. Thomas"), Jose Bart ("Bart"),[3] Atukuzwe Nyirenda ("Nyirenda"), Andrelle Calixte ("Calixte"), George Fraser ("Fraser"), Yvonne Murren ("Murren"), Martin Jean Zizi ("M. Zizi"), Trinity of Success Club, Inc. ("Trinity"), Positive Vision Marketing, LLC ("Positive Vision") and Samantha Zizi ("S. Zizi") (collectively, the "22 Movants") to dismiss the SAC (22 Movants' Am. Mem., ECF No. 250); (3) a motion by Defendant Ricardo Roy ("Roy"), pursuant to Rule 12(b)(6), to dismiss the SAC (Roy Not. of Mot., ECF No. 257); (4) a motion by Defendant Antonio Arnold ("Arnold"), pursuant to Rules 12(b)(1) and 12(b)(6), to dismiss the SAC (Arnold Not. of Mot., ECF No. 274); and (5) motions by Defendant Troy Rejda ("Rejda"), pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6), to dismiss the SAC. (Rejda Mots., ECF Nos. 285 & 286.)

For the reasons set forth below, it is respectfully recommended that the motions of the Sera Defendants, the 22 Movants, Roy and Arnold be GRANTED, that the motion of Rejda be GRANTED IN PART and DENIED IN PART, and that Plaintiffs be given leave to replead their claims against the Sera Defendants, the 22 Movants, Roy, Arnold and Rejda.

## PROCEDURAL HISTORY

On February 5, 2024, Plaintiff commenced this action by filing a Complaint (Compl., ECF No. 1), which was followed by the filing of a First Amended Complaint ("FAC") two days later. (FAC, ECF No. 2.) The FAC asserts claims against a company referred to as NOVATECHFX

---

[2] Belanger is referred to in the caption of the SAC as "Heather Belanger" and in the body of the SAC as "Heather J. BELANGER-JOHANNESSEN." (SAC ¶ 59.)

[3] Bart is listed in the caption of the SAC as "MARIE JOSEE JEAN-BART," but as set forth in footnote 5, *infra*, is not specifically referenced in the body of the SAC.

("NovatechFx") and 17 other identified persons and entities, as well as numerous John Does, alleging three federal law claims (*i.e.*, under RICO, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Section 20(a) of the Exchange Act), claims under the New York Organized Crime Control Act, a "Statutory Claim for Fraudulent Conveyance" and multiple common law claims (*i.e.*, for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion/theft/embezzlement, fraud, intentional misrepresentation, civil conspiracy, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED")). (*Id.* ¶¶ 10-22, 147-307.)

On August 9, 2024, Plaintiffs filed the 756-paragraph SAC, which added dozens of defendants, but dropped numerous others. (*See* SAC.) The SAC expanded the RICO claims (*id.* ¶¶ 483-564), added claims under the New York General Business Law (*id.* ¶¶ 734-45) and dropped the Securities Exchange Act claims.

On September 6, 2024, Defendants Frantz Ciceron, Kings Multi Services Agency, LLC, Ciceron Frantz & Associates, Inc. and Bertha Ciceron filed an Answer to the SAC. (9/6/24 Answer, ECF No. 209.) On September 13, 2024, Defendant James Corbett filed an Answer to the SAC. (9/13/24 Answer, ECF No. 211.) On October 7, 2024, Defendant Anthony Deloatch filed an Answer to the SAC. (10/7/24 Answer, ECF No. 230.) On November 20, 2024, Defendant Bwalya Desmond filed an Answer to the SAC. (11/20/24 Answer, ECF No. 246.)

On November 20, 2024, the Sera Defendants filed their motion to dismiss that now is before the Court. (*See* Sera Defs.' Not. of Mot.) On November 21, 2024, the 22 Movants filed their motion to dismiss that now is before the Court. (*See* 22 Movants' Am. Mot.) On January 6, 2025, Roy filed his motion to dismiss that now is before the Court. (*See* Roy Not. of Mot.) On

March 5, 2025, Arnold filed his motion to dismiss that now is before the Court. (*See* Arnold Not. of Mot.) On July 28 and 30, 2025, Rejda filed two identical motions to dismiss that now are before the Court. (*See* Rejda Mots.) On December 18, 2025, after all the foregoing motions to dismiss were fully briefed, the motions were referred to the undersigned for a report and recommendation. (Am. Order of Ref., ECF No. 290.)

**<u>SAC ALLEGATIONS</u>**

I.      **<u>The Fraudulent Investment Schemes</u>**

The SAC asserts claims against NovatechFx, AWS Mining PTY LTD ("AWS Mining), and various individuals and entities, alleging fraudulent investment schemes. The SAC pleads two fraudulent schemes founded by Defendants Cynthia Petion ("C. Petion") and her husband Eddy Petion ("E. Petion"): (A) AWS Mining, which operated as a pyramid scheme from 2017 to 2019, and (B) NovatechFx, which began in 2019 and also functioned as a pyramid scheme under the guise of a cryptocurrency and Forex trading platform. (*See* SAC, Preliminary Stmt., at pp. 3-4.)

The Defendants are accused of using affinity fraud to target specific communities, such as the Haitian community in New York, by exploiting cultural and religious ties. (*See* SAC, Preliminary Stmt., at p. 5.) They allegedly employed misleading marketing tactics, including false claims of regulatory compliance and trading success, to attract investors. (*See*, *e.g.*, *id*. ¶¶ 18, 203.)

A.      **<u>AWS Mining</u>**

AWS Mining was a pyramid scheme which guaranteed a 200% return on investment ("ROI") from mining cryptocurrency. (SAC ¶ 1.) AWS Mining promised investors 15-20% monthly returns and 200% ROI in 13-15 months. (*Id*. ¶ 2.) AWS Mining rewarded its participants for recruiting new investors (or "downlines"), by awarding them 10% of amounts invested by their

downlines, additional bonuses and ceremonial titles. (*Id*. ¶ 3.) Investors were required to purchase mining contracts to be eligible to receive recruitment bonuses. (*Id*.)

AWS Mining's promises of guaranteed 200% returns were fraudulent and its scheme was unsustainable. (SAC ¶ 4.) AWS Mining did not generate sufficient returns from mining to pay the promised monthly profits and lucrative recruitment commissions. (*Id*. ¶ 5.) By April 2019, the scheme had collapsed, with the majority of investors losing most of their investments, and by August 2019 AWS Mining ceased to exist. (*Id*. ¶ 6.)

B.    **NovatechFx**

In August 2019, C. Petion and E. Petion founded NovatechFx, which also was a pyramid scheme. (SAC ¶¶ 7, 9.) NovatechFx promised to generate profits primarily from trading cryptocurrency and currency pairs on the foreign exchange (Forex) using NovatechFx's own trading platform. (*Id*. ¶ 9.) NovatechFx paid lucrative bonuses to promoters for recruiting new investors. (*Id*.)

NovatechFx offered and sold securities in the form of investment contracts in the United States through general solicitations on its website: www.NovaTechFX.com. (SAC ¶¶ 338, 342.) NovatechFx referred to these investment contracts as "Packages." (*Id*. ¶ 338.) NovatechFx held itself out as a crypto asset and Forex trading platform. (*Id*. ¶ 339.) The purported purpose of the securities offerings was for NovatechFx to use investor funds to engage in crypto asset and Forex trading, which in turn would generate returns for investors who purchased Packages. (*Id*.)

NovatechFx targeted investors with little to no experience in trading crypto assets and Forex, telling investors and prospective investors that NovatechFx's "fully automated"

investment products allowed investors to "earn without having to trade" and that "no experience is needed." (SAC ¶ 341.) Meanwhile, very little of the money collected was invested. (*Id*.)

Investors were encouraged to recruit others as a way to make money. (SAC ¶ 341.) Investors were paid a referral bonus based on the amount of funds deposited by the investors who they recruited. (*Id*. ¶ 346.) Investors also were paid additional referral bonuses when the investors who they recruited, in turn, recruited new investors. (*Id*.) Investors seeking to take advantage of NovatechFx's referral program created and posted videos to YouTube, Facebook, Instagram and TikTok, and posted content on other social media websites to recruit others to invest in NovatechFx. (*Id*. ¶ 347.)

NovatechFx was falsely marketed as "a registered hedge fund broker" and a financial advisor. (SAC ¶ 15.) It was fraudulently misrepresented that NovatechFx was licensed to trade cryptocurrency in the United States and in Forex abroad, that it maintained consistent profits from trading of 2-4% per week (*i.e.*, over 140% per year), and that investors could withdraw their capital and profits at any time. (*Id*. ¶ 16.) Investors were promised "easy" income with weekly ROI. (*Id*. ¶ 17.) NovatechFx was not licensed by any regulatory entity in the United States or abroad and did not generate profits from trading sufficient to pay the announced weekly ROI or recruitment bonuses. (*Id*. ¶ 18.)

Investors worldwide deposited over $50 billion worth of cryptocurrency with NovatechFx from August 2019 through April 2023, but only a fraction, *i.e.*, less than $26 million, ever was traded on NovatechFx's trading platform. (SAC ¶ 19.) Yet, NovatechFx announced and paid investors positive weekly ROI, even when cryptocurrency markets around the world uniformly plunged in the spring of 2022. (*Id*. ¶ 20.)

In the fall of 2022, Canadian and United States securities regulators served cease and desist orders on NovatechFx for selling and promoting unregistered securities and for fraud. (SAC ¶ 24.) By December 2022, a growing number of investors requested to withdraw their funds from NovatechFx. (*Id*. ¶ 25.) Unable to keep up with payments to investors, in February 2023, Defendants halted all withdrawals from investors' "trading" accounts in NovatechFx, and in May 2023, NovatechFx was shut down. (*Id*. ¶ 26.) NovatechFx failed to return cryptocurrency deposited by investors and tens of thousands of investors were left with hundreds of millions of dollars in losses. (*Id*. ¶ 27.)

## II.    Plaintiffs And The Purported Class

Plaintiff Mullins was an investor in both AWS Mining and NovatechFx. (SAC ¶ 36.) Plaintiff United Investor Community Inc. (hereinafter, "UIC") is alleged to be "a not-for-profit membership organization duly incorporated in the State of Florida that represents the interest of its members who collectively invested hundreds of millions of dollars with NovaTech and AWS Mining."[4] (*Id*. ¶ 37.)

Plaintiff Mullins purports to bring this action on behalf of a class "of all those who transmitted or forwarded cryptocurrency, money or property to NovaTech between January 2019 and December 2023 . . . and were financially damaged when NovaTechFX blocked Plaintiff's accounts and refused to return the cryptocurrency, money and/or property." (SAC ¶ 473.) Excluded from the class are Defendants and officers and directors of NovatechFx-related entities,

---

[4] Based upon the Court's search of the Florida Department of State, Division of Corporations, website (https://search.sunbiz.org/Inquiry/CorporationSearch/ByName), there is no Florida corporation with the name "United Investor Community Inc." There is a corporation with the name "United Investors Community Inc." that is an inactive Florida Not for Profit Corporation. (*See* https://perma.cc/QDK9-CPFK (accessed Dec. 21, 2025).)

members of their immediate families and legal representatives, as well as any entities in which Defendants have or had a controlling interest. (*Id*. ¶ 474.)

### III.    SAC Allegations Against Moving Defendants

The following allegations are made with respect to the Defendants who have pending motions to dismiss:

#### A.    Sera Defendants

Farma served as a promoter, recruiter and senior director of NovatechFx. (SAC ¶ 58.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there would never be any profit. (*Id*.) Sera was controlled and operated by Farman. (*Id*. ¶ 96.) Sera recruited thousands of people to invest in NovatechFx. (*Id*.)

#### B.    22 Movants[5]

Dunbar served as an advisor to C. Petion, the co-founder and Chief Executive Officer of NovatechFx.  (SAC ¶¶ 38, 72.) Dunbar knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*. ¶ 72.)

Sampson served as a promoter, ambassador and advisor to NovatechFx. (SAC ¶ 55.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when she knew that there never would be be any profit. (*Id*.)

---

[5] Although, among the 22 Movants, Defendants Goldentastic, Hadley, M. Thomas, Bart and Murren are listed in the caption of the SAC as defendants, there are no specific allegations referencing them in the body of the SAC.

Garofano joined NovatechFx in or about July 2021, and used YouTube to promote the Ponzi scheme. (SAC ¶ 416.) In a YouTube video posted on November 10, 2022, he claimed that "while every crypto platform lost money, NovaTech was up 40%." (*Id*.)

Bearden promoted NovatechFx using his social media platform knowing it was a scam. (SAC ¶ 440.) He recruited thousands of people who invested millions of dollars. (*Id*.)

Greene between 2019 and 2020 used his social media platform to promote NovatechFx. (SAC ¶ 437.) He recruited hundreds of people to invest money in NovatechFx knowing it was a Ponzi scheme. (*Id*.) Greene recruited others by lying to them about how much money they would make by investing when the Defendant knew that there never would be any profit. (*Id*. ¶ 68.)

Richards commencing in 2019 actively promoted NovatechFx knowing that it was a scam. (SAC ¶ 431.) He recruited over three thousand persons to invest in NovatechFx. (*Id*.) He lied to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*. ¶ 47.)

Dejong was paid hundreds of thousands of dollars to recruit others to invest in NovatechFx. (SAC ¶ 84.) He knew NovatechFx was a Ponzi scheme and lied to investors about how much money they would make by investing when he knew that there never would be any profit. (*Id*.)

B. St. Louis and S. St. Louis are husband and wife and, in or about 2022, they recruited more than a thousand people to invest in NovatechFx under them. (SAC ¶¶ 397-99.) B. St. Louis posted several videos and other statements supporting and promoting the NovatechFx Ponzi scheme. (*Id*. ¶ 347.)

9

Belanger served as a promoter and director of NovatechFx. (SAC ¶ 59.) She recruited thousands of people to invest in NovatechFx. (*Id*.) Belanger knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*.)

Nyirenda used her position as a Catholic nun to recruit thousands of victims to NovatechFx, knowing that it was a Ponzi scheme. (SAC ¶ 66.) She recruited others by lying to them about how much money they would make by investing when she knew that there never would be any profit. (*Id*.)

Calixte was a senior director of NovatechFx and recruited hundreds of people to invest in NovatechFx. (SAC ¶¶ 48, 432.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*. ¶ 48.)

Fraser received payments in the form of recruitment bonuses for offering for sale to investors mining contracts for AWS Mining. (SAC ¶ 332.) Fraser also served as a high-profile promoter for NovatechFx. (SAC ¶ 76.) He used his influence and political contacts to lure thousands of people to invest in NovatechFx. (*Id*.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*.)

M. Zizi[6] was a promoter of AWS Mining and NovatechFx. (SAC ¶ 42.) From approximately 2017 to 2019, he promoted AWS Mining by promising 15-20% monthly returns and 200% returns

---

[6] M. Zizi is referred to in the SAC by his correct name, *i.e.*, Martin Jean Zizi (*see* SAC caption & ¶ 77 (third & fourth lines)), but also is referred to as Martin Zizi (*see id*. ¶¶ 2, 42, 64, 347), and erroneously referred to as Jean Martin Zizi (*see id*. ¶¶ 75, 77 (second line), 350, 393, 404) and Jean Zizi. (*See id*. ¶ 94.) In addition,

on investment in 13-15 months. (*Id*. ¶¶ 2, 131.). He recruited at least ten to fifteen investors into AWS Mining directly and those investors recruited additional investors. (*Id*. ¶ 131.) M. Zizi knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*. ¶ 42.)

S. Zizi, who is the sister of M. Zizi, served as an ambassador and promoter of NovatechFx. (SAC ¶ 452.) Between 2019 and 2023, she used her social media platform to promote NovatechFx knowing it was a scam. (*Id*.) NovatechFx paid S. Zizi a percentage of the money invested by the people she recruited. (*Id*.)

Trinity, which is an entity that was controlled by M. Zizi, had an account with NovatechFx and held the highest ceremonial title of Two-Star Ambassador to reflect M. Zizi's level of success in recruiting new investors to sign up under the account of Trinity. (SAC ¶¶ 77, 99.) Trinity participated in the Ponzi scheme by recruiting its members at the direction of M. Zizi to invest in NovatechFx. (*Id*. ¶ 77.)

Positive Vision, which is an entity owned by M. Zizi, had an account with NovatechFx and held the ceremonial title of One-Star Ambassador to reflect M. Zizi's level of success in recruiting new investors to sign up under the account of Positive Vision. (SAC ¶ 100.) Positive Vision received funds from NovatechFx for the benefit of M. Zizi. (*Id*.)

### C.    Roy

Roy (who is C. Petion's brother) served as the technology officer for NovatechFx. (SAC ¶¶ 73, 154, 410.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them

---

in some cases, the SAC merely refers to the identified defendant as "Zizi" (*see*, *e.g.*, *id*. ¶¶ 8, 11, 13, 14, 99, 131), which is confusing, since there are two defendants with the surname Zizi, *i.e.*, M. Zizi and his sister, S. Zizi. (*See id*. ¶ 452.)

about how much money they would make by investing when he knew that there never would be any profit. (*Id*. ¶ 73.) Roy falsely stated in an interview posted on YouTube that NovatechFx was licensed to trade cryptocurrency in the United States. (*Id*. ¶ 210.)

### D.    Arnold

Arnold was a trainer, master distributor and ambassador representing NovatechFx. (SAC ¶ 49.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*.) Arnold used his social media platform to promote NovatechFx knowing it was a scam. (*Id*. ¶ 457.) NovatechFx paid him a percentage of the money invested by the people he recruited. (*Id*.)

### E.    Rejda

Rejda was paid hundreds of thousands of dollars to recruit others to invest in NovatechFx. (SAC ¶ 83.) He knew NovatechFx was a Ponzi scheme and recruited others by lying to them about how much money they would make by investing when he knew that there never would be any profit. (*Id*.)

## DISCUSSION

### I.    Plaintiffs' Lack Of Standing

As a threshold matter, the moving defendants argue that Plaintiffs lack standing to pursue the claims asserted against them. (*See* Sera Defs.' 11/20/24 Mem., ECF No. 248, at 7-9; Roy 1/6/25 Mem., ECF No. 258, at 5-7; Arnold 3/5/25 Mem., ECF No. 275, at 11-12; *see also* 22 Movants' Am. Mem. at 2 ("Plaintiffs' role and relationship to the . . . the [22] Movants . . . was

12

not plead"); Rejda Mots. at 3 ("Allegations are conclusory and use improper group pleading.").)[7]

The Court agrees.

### A. Legal Standards

"Standing is 'the threshold question in every federal case,' and implicates the Court's subject matter jurisdiction."[8] *Cohan v. Movtady*, 751 F. Supp. 2d 436, 439 (E.D.N.Y. 2010) (quoting *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008)). To establish standing under Article III of the Constitution, a plaintiff must show that the injury-in-fact is: (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the defendant's conduct; and (3) redressable by a favorable court decision. *Liberty Global Logistics LLC v. U.S. Mar. Admin.*, No. 13-CV-00399 (ENV) (JMA), 2014 WL 4388587, at *3 (E.D.N.Y. Sept. 5, 2014) (citing *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

---

[7] Even though the 22 Movants and Rejda did not refer to the lack of standing in their motion papers, their arguments suggest a lack of standing. In any event, since (as set forth below) standing implicates the Court's subject matter jurisdiction, it is appropriate for the Court to consider *sua sponte* whether Plaintiffs have standing with respect to the 22 Movants and Rejda. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." (citations omitted)).

[8] "A case is properly dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Equan Yunus, Sr. v. J. Lewis Robinson et al.*, No. 17-CV-05839 (AJN), 2019 WL 168544, at *3 (S.D.N.Y. Jan. 11, 2019) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

In the class action context, plaintiffs "must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis supplied). In a class action, "for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (citing and quoting from 1 A. Conte & H. Newberg, Newberg on Class Actions § 2:6 n.3 (4th ed. 2002)); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class" (citations omitted)).

### B.    Analysis

In the present case, the SAC does not contain any allegations of interactions between Plaintiff Mullins or any member of Plaintiff UIC,[9] on the one hand, and any of the moving

---

[9] Insofar as UIC seeks money damages on behalf of its members (*see* SAC at p. 139), it has no standing to do so. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."). Insofar as the SAC seeks injunctive relief (*see* SAC ¶¶ 35, 746-51), an organization, like UIC, "may have standing . . . by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members . . .." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). However, the law requires that the organization show that at least one of its members has standing. In that regard, Supreme Court cases "have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Thus, for example, in *Lujan*, 504 U.S. at 563, the Supreme Court "held that the organization lacked standing because it failed to submit affidavits . . . showing, through specific facts . . . that one or more of [its] members would . . . be directly affected by the allegedly illegal activity." *Summers*, 555 U.S. at 498 (internal quotation marks omitted). In the SAC, there are no allegations made regarding any identified member of UIC.

14

defendants, on the other. Thus, there is no conduct alleged by any moving defendant that is fairly traceable to Plaintiffs' injuries and Plaintiffs lack standing against the moving defendants. *See Liberty Global*, 2014 WL 4388587, at *3.

Plaintiffs argue that standing exists based upon the SAC's conspiracy allegations. (*See, e.g.*, Pls.' 1/10/25 Mem., ECF No. 261, at 2-3.) "Conspiracy allegations represent a limited exception to the general rule of standing requiring a direct nexus between the defendant's actions and the plaintiff's injuries." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 468-69 (S.D.N.Y. 2009). "If a conspiracy is properly alleged, then injuries suffered at the hand of any particular defendant are imputed to all other conspiracy participants, and a plaintiff can overcome the otherwise absolute bar to standing." *Id*. (citation omitted). Here, however, neither Plaintiff Mullins nor any member of Plaintiff UIC has alleged the circumstances under which he or she came to invest in AWS Mining and/or NovatechFx, or conduct by any of the Defendants directed towards Plaintiffs.[10] Thus, no conspiracy against Plaintiffs has been properly alleged. Nor have Plaintiffs pled an injury suffered by them at the hand of any Defendant. Thus, based on the allegations of the SAC, there is no standing based upon a conspiracy theory.[11]

---

[10] For example, did Plaintiff Mullins and/or any member of UIC invest directly and solely through NovatechFx's website, or were they solicited or recruited by any of the Defendants? If they were solicited or recruited, which Defendants were involved in such efforts and what was done? Were any of the moving Defendants downlines to Plaintiff Mullins and/or any member of UIC, such that these Defendants were victims of the scheme and not co-conspirators?

[11] Plaintiff's citation to *Laumann v. National Hockey League*, 56 F. Supp. 3d 280, 307 (S.D.N.Y. 2014) (*see* Pls.' 1/10/25 Mem. at 2; Pls.' 2/19/25 Mem., ECF No. 269, at 2) is inapt. *Laumann* addressed the issue of antitrust standing, 56 F. Supp. 3d at 294, which is separate and distinct from Article III standing. "A court proceeds to an antitrust standing analysis only after Article III standing has been established." *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 222 n.1 (2d Cir. 2008).

Because Plaintiffs do not have standing based upon the allegations of the SAC, the Court "lack[s] jurisdiction to adjudicate [the moving defendants'] alternative motion[s] to dismiss for failure to state a claim." *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d Cir. 2011) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

Accordingly, it is respectfully recommended that the SAC be dismissed without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing . . . that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*." (emphasis in original)).

## II.    Leave To Amend

Because it is plausible that Plaintiffs may be able to assert allegations sufficient to establish standing as to one or more of the moving defendants, and because any dismissal based upon this Court's recommendation will be without prejudice, it is recommended that Plaintiffs be granted leave to amend by filing a Third Amended Complaint. *See Warth*, 422 U.S. at 501 ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.").

If Plaintiffs choose to file a Third Amended Complaint, they should be mindful of the following:

First, Plaintiffs' RICO claims set forth in Counts 1, 2, 3 and 4 of the SAC, which are based upon what they refer to as "NovaTech Enterprise Ponzi Scheme" (SAC ¶¶ 483-564), appear to be

barred by statute.[12] *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 280 (2d Cir. 2011) "[W]e conclude that the PSLRA's RICO Amendment, 18 U.S.C. § 1964(c), bars a plaintiff from asserting a civil RICO claim premised upon predicate acts of securities fraud, including mail or wire fraud, even where the plaintiff could not bring a private securities law claim against the same defendant.") (decided in connection with Madoff Ponzi scheme).

Second, if Plaintiffs choose to replead fraud-based claims (*i.e.*, Counts 9 and 10 (SAC ¶¶ 600-19)), they should be mindful of the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. "When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." *Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99-CV-11541 (DLC), 2000 WL 1036034, at *3 (S.D.N.Y. July 27, 2000) (internal quotations and citation omitted). "A complaint may not simply 'clump[ ] defendants together in vague allegations' to meet the pleading requirements of Rule 9(b)." *Rich v. Maidstone Fin., Inc.*, No. 98-CV-02569 (DAB), 2002 WL 31867724, at *10 (S.D.N.Y. Dec. 20, 2002) (quoting *In re Blech Securities Litigation*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996)). Thus,

---

[12] Plaintiffs' argument that "the RICO claims are not barred because the Complaint[']s allegations do not constitute 'investment contracts' and are therefore not actionable under the securities laws" (Pls.' 1/10/25 Mem. at 9 (referring to "*Howey* test" for investment contracts)) is contradicted by Plaintiffs' own allegations in the SAC (*see* SAC ¶¶ 338, 374 ("NovaTech offered and sold securities in the form of investment contracts")), and by case law. *See Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-04650 (ER), 2022 WL 912965, at *11 (S.D.N.Y. Mar. 29, 2022) ("Recently, courts in this district have applied the *Howey* test to determine that similar cryptocurrency tokens intended to be sold on a blockchain or in the general market were securities within the meaning of the Securities Act." (citing cases)). The alleged NovatechFx cryptocurrency scheme involved the sale of securities (*see* SAC ¶ 24 ("In the fall of 2022, Canadian and United States' securities regulators served cease and desist orders on NovaTech for selling and promoting unregistered securities and for fraud."); ¶ 349 ("Packages offered by NovaTech, Cynthia Petion, and Eddy Petion were securities")), such that 18 U.S.C. § 1964(c) bars Plaintiffs from asserting civil RICO claims.

the SAC's allegations regarding fraudulent conduct by the "Defendants" (for example, conduct referred to in Plaintiffs' 8/13/25 Memorandum, ECF No. 288, at 10-11) are insufficient.

Third, "a claim for civil conspiracy [Count 11 of the SAC (¶¶ 620-25)] is not an independent tort, but rather, a derivative claim of an underlying substantive tort." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001); *see also Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, No. 24-CV-09305 (VM), 2025 WL 1827274, at *17 (S.D.N.Y. July 2, 2025) ("there is no independent tort for civil conspiracy").

Fourth, Counts 12 through 15 of the SAC (¶¶ 626-708) purport to allege claims under the New York Penal Code (*i.e.*, the New York Organized Crime Control Act, which is contained in Article 460 of the Penal Code). However, "private individuals . . . cannot bring a claim under state criminal law." *Wilson v. Neighborhood Restore Dev.*, No. 18-CV-01172 (MKB), 2019 WL 4393662, at *7 (E.D.N.Y. Sept. 13, 2019) (finding no private right of action under Article 460 of the New York Penal Code).

Fifth, Count 18 (labelled "Exemplary Punitive Damages" (SAC ¶¶ 725-29)) and Count 23 (labelled "Injunctive Relief" (SAC ¶¶ 746-51)) are types of relief and do not constitute separate claims. *See Win Spark Trading Co. v. Century Bus. Credit Corp.*, No. 01-CV-06603 (JSR), 2002 WL 1343763, at *1 (S.D.N.Y. June 18, 2002) (no independent cause of action for punitive damages), *aff'd*, 62 F. App'x 401 (2d Cir. 2003); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667 (S.D.N.Y. 2021) (request for injunctive relief not independent cause of action; rather, injunction is remedy sought for egal wrongs alleged in substantive counts).

Sixth, Counts 20 through 22 of the SAC (¶¶ 734-45) purport to alleges claims under sections contained in Article 23-A of the New York General Business Law ("GBL") (*i.e.*, GBL §§ 352,

18

352-C, 353 & 359-E). GBL Article 23-A is commonly referred to as the Martin Act, named after its sponsor, New York Assemblyman Louis M. Martin. *See* Daniel J. Fetterman and Mark P. Goodman, *The Martin Act—History, Defending Corp. & Indiv. in Gov. Invest*. § 11:9 (May 2025). "New York courts have held that the Martin Act vests in the New York Attorney General the sole authority for prosecuting state law securities violations sounding in fraud, and contains no implied right of action." *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 760 (S.D.N.Y. 2011) (citation omitted).

Seventh, in any Third Amended Complaint, Plaintiffs should take care to cull from the current 756-paragraph SAC the many repetitive allegations that are contained therein.

## III.    Rejda Personal Jurisdiction And Service Of Process Motions

In his motion, in addition to seeking dismissal under Rule 12(b)(6), Rejda also seeks dismissal, pursuant to Rule 12(b)(2), for lack of personal jurisdiction, and pursuant to Rule 12(b)(5), for insufficiency of service of process. (*See* Rejda Mots. at 1-3.)

With respect to insufficiency of service of process, subsequent to Rejda filing his motion, Rejda was personally served. (*See* Am. Return of Service, ECF No. 287.) Thus, that aspect of Rejda's motion should be denied as moot.

With respect to personal jurisdiction, Rejda states that "he has no ties to the forum state" and that he "has no business, residence, or conduct in New York." (Rejda Mots. at 3.) In response to Rejda's motion, Plaintiffs rely upon RICO's nationwide service of process as a basis for personal jurisdiction. (Pls.' 8/13/25 Mem. at 6.)

If this Court's recommendation is adopted, the SAC will be dismissed without prejudice as to Rejda. If Plaintiffs choose to replead, they may decide not to include RICO claims (for the

reasons set forth above), in which case they will need to consider whether this Court has personal jurisdiction over Rejda, and therefore whether or not to assert claims against Rejda. If Plaintiffs do assert claims against Rejda, he may renew his motion to dismiss for lack of personal jurisdiction. Accordingly, it is recommended that Rejda's motion to dismiss for lack of personal jurisdiction be denied without prejudice.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motions of the Sera Defendants, the 22 Movants, Roy and Arnold be GRANTED, that the motion of Rejda to dismiss be GRANTED insofar as Plaintiffs lack standing to assert the claims in the SAC against him, that Rejda's motion to dismiss for insufficient of service of process be DENIED AS MOOT and that his motion to dismiss for lack of personal jurisdiction be DENIED WITHOUT PREJUDICE. It is further recommended that the claims against the Sera Defendants, the 22 Movants, Roy, Arnold and Rejda be dismissed without prejudice and that Plaintiffs be given leave to replead those claims.

Dated:      New York, New York
            December 23, 2025

_____
**STEWART D. AARON**
**United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's

objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).